JOHN C. MANLY, Esq. (State Bar No. 149080)
VINCE W. FINALDI, Esq. (State Bar No. 238279)
ALEX E. CUNNY (State Bar No. 291567)
JANE E. REILLEY (State Bar No. 314766)
**MANLY, STEWART & FINALDI**
19100 Von Karman Ave., Suite 800
Irvine, CA 92612
Telephone: (949) 252-9990
Fax: (949) 252-9991

Attorneys for Plaintiff, MCKAYLA MARONEY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MCKAYLA MARONEY, an individual.<br><br>Plaintiff,<br><br>v.<br><br>MICHIGAN STATE UNIVERSITY, a Michigan Entity of Form Unknown; and UNITED STATES OLYMPIC COMMITTEE, a Business Entity of form unknown; USA GYMNASTICS, an Indiana Business Entity of Form Unknown; LARRY NASSAR, an individual and DOES 1 through 500.<br><br>Defendants. | Civil Case No. 2:18:cv-03461-JLS-KESx<br><br>[The Honorable Josephine L Staton]<br><br>**DECLARATION OF ALEX E. CUNNY IN SUPPORT OF PLAINTIFF MCKAYLA MARONEY'S OPPOSITION TO DEFENDANT UNITED STATES OLYMPIC COMMITTEE'S *EX PARTE* APPLICATION FOR PROTECTIVE ORDER PROHIBITING PREMATURE DISCOVERY BY PLAINTIFF AND QUASHING EARLY DISCOVERY PROPOUNDED BY PLAINTIFF**<br><br>Complaint filed: December 20, 2017<br>Judge:     Honorable Karen E. Scott<br>Courtroom: 6D |

///

///

///

///

MANLY, STEWART & FINALDI<br>ATTORNEYS AT LAW<br>19100 Von Karman Ave., Suite 800<br>Irvine, California 92612<br>Telephone: (949) 252-9990

**1**
**DECLARATION OF ALEX E. CUNNY IN SUPPORT OF PLAINTIFF MCKAYLA MARONEY'S OPPOSITION TO DEFENDANT USOC'S *EX PARTE* APPLICATION FOR PROTECTIVE ORDER**

### DECLARATION OF ALEX E. CUNNY

I, ALEX E. CUNNY, hereby declare:

1.     I am an attorney duly licensed to practice law in the State of California. I am an attorney with Manly, Stewart & Finaldi, attorneys of record for MCKAYLA MARONEY (hereinafter, the "Plaintiff"), in the above-entitled matter. I am personally familiar with the facts of this case and the contents of this Declaration, and if called upon, could and would competently testify as to its contents.

2.     This Declaration is made in support of the Plaintiff's Opposition to Defendant USOC's *Ex Parte* Application for Protective Order Prohibiting Premature Discovery by Plaintiff and Quashing Early Discovery Propounded by Plaintiff.

3.     Currently, discovery in the *Jane AJ Doe* matter that is remaining in the Superior Court Coordinated Action, has begun as to jurisdictional issues raised in those Motions. In an effort to not be forced to re-depose the same individuals in the removed Federal Actions Plaintiff's counsel cross-noticed those depositions that were noticed from the Coordinated Action.

4.     Prior to the instant case being removed, it was proceeding in the Superior Court of California, in and for the County of Los Angeles, though not in the "Coordination" Proceeding under *California Code of Civil Procedure* §404, *et seq.* in the department of the Honorable Judge Randal Sherman.

5.     In the *Jane AJ Doe* matter that is proceeding in the Coordinated Proceeding in Orange County Superior Court, jurisdictional discovery has been permitted to continue by the Court, and is, in fact, proceeding, considering that written discovery has been served and several depositions have been noticed.

6.     Prior to the granting of Coordination of these cases by the California Superior Court, Judge Carolyn Kuhl, jurisdictional discovery was proceeding in both the *Jane LM Doe* matter, as well as the *Jane JD Doe*, in the Superior Court of

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

**DECLARATION OF ALEX E. CUNNY IN SUPPORT OF PLAINTIFF MCKAYLA MARONEY'S OPPOSITION TO DEFENDANT USOC'S *EX PARTE* APPLICATION FOR PROTECTIVE ORDER**

California. Jurisdictional discovery was halted when Judge Kuhl issued a stay, based upon the creation of the Coordinated Proceeding (JCCP No. 4993).

7.     Despite discovery having proceeded in those actions, no discovery was ever conducted as to USOC's contacts with the State of California, as they were not joined and served as a defendant, until later on. In fact, the Plaintiff's counsel previously agreed with USOC's former counsel, Mr. Brent Rychener of Bryan Cave, to have two (2) individuals produced from USOC, for their depositions, as it pertained to the jurisdictional issues in the Coordinated Action, prior to USOC being named as a defendant. These individuals were believed to have been relevant to the jurisdictional analysis of USA Gymnastics ("USAG") at that time, and are imminently relevant to USOC's contacts with California.

8.     Attached hereto as Exhibit "A" is a true and correct copy of the Plaintiff's Second Amended Complaint.

9.     Attached hereto as Exhibit "B" is a true and correct copy of the website printout from the Chula Vista, California Elite Athlete Training Center, also referred to as the Olympic Training Center of Chula Vista in San Diego. I accessed this document on August 1, 2018 at the following website on the world wide web:

"https://trainatchulavista.com/"

10.     Attached hereto as Exhibit "C" is a true and correct copy of the website printout from the VELO Sports Center Website, regarding the USOC training center in Carson, California. This website was accessed on August 1, 2018 at the following world wide web location:

"http://www.stubhubcenter.com/velo"

11.     Attached hereto as Exhibit "D" is a true and correct copy of the website printout of the Team USA "Career" tab located on what is believed to be USOC's website. This webpage was accessed on the world wide web on August 1, 2018 at the following link:

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

**DECLARATION OF ALEX E. CUNNY IN SUPPORT OF PLAINTIFF MCKAYLA MARONEY'S OPPOSITION TO DEFENDANT USOC'S *EX PARTE* APPLICATION FOR PROTECTIVE ORDER**

1  "https://www.teamusa.org/careers"

2      12.   Attached hereto as Exhibit "E" is a true and correct copy of the Notice

3  of Removal of the instant Action.

4      13.   Attached hereto as Exhibit "F" is a true and correct copy of the e-mail

5  correspondence between Plaintiff's counsel (including Mr. Finaldi and myself, Mr.

6  Cunny), and Mr. Jolley. This correspondence occurred between July 25, 2018 and

7  July 30, 2018, and discussed several issues regarding discovery. Specifically, I

8  requested dates for the deposition of ten (10) different individuals who my office

9  has identified as individuals whose testimony would be helpful in discovering

10  jurisdictional facts pertaining to USOC.

11      14.   Attached hereto as Exhibit "G" is a true and correct copy of the e-mail

12  sent to Plaintiff's counsel regarding the e-service of the instant Application papers

13  at approximately 7:47 p.m. on July 31, 2018.

14

15  I hereby declare under penalty of perjury under the laws of the state of

16  California that the foregoing is true and correct.

17

18  Executed this August 2, 2018 at Irvine, California.

19

20  By:

21  ALEX E. CUNNY, Esq.,
       Declarant

22

23

24

25

26

27

28

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

**DECLARATION OF ALEX E. CUNNY IN SUPPORT OF PLAINTIFF
MCKAYLA MARONEY'S OPPOSITION TO DEFENDANT USOC'S *EX
PARTE* APPLICATION FOR PROTECTIVE ORDER**

# EXHIBIT "A"

1  JOHN C. MANLY, Esq. (State Bar No. 149080)
   VINCE W. FINALDI, Esq. (State Bar No. 238279)
2  ALEX CUNNY (State Bar No. 291567)
   **MANLY, STEWART & FINALDI**
3  19100 Von Karman Ave., Suite 800
   Irvine, CA 92612
4  Telephone: (949) 252-9990
   Fax: (949) 252-9991
5
6  Attorneys of Record for Plaintiff, MCKAYLA MARONEY, an
   individual

7

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

**DEC 20 2017**

Sherri R. Carter, Executive Officer/Clerk

By Shaunya Bolden, Deputy

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 IN AND FOR THE COUNTY OF LOS ANGELES

10

11  MCKAYLA MARONEY, an individual.

12              Plaintiff,

13          v.

14  MICHIGAN STATE UNIVERSITY, a
    Michigan Entity of Form Unknown; and
15  UNITED STATES OLYMPIC COMMITTEE,
    a Business Entity of form unknown; USA
16  GYMNASTICS, an Indiana Business Entity of
    Form Unknown; LARRY NASSAR, an
17  individual and DOES 1 through 500.

18              Defendants.

19

Case No.: _____  **BC 6 8 7 3 9 6**

Judge: _____
Department: _____

**COMPLAINT FOR DAMAGES FOR:**

1) **SEXUAL HARASSMENT** (_C.C._ §
   51.9);
2) **MASHA'S LAW** (18 _U.S.C._ §§2255,
   2423(b), 2423(c))
3) **INTENTIONAL INFLICTION OF
   EMOTIONAL DISTRESS;**
4) **UNFAIR BUSINESS PRACTICES**
   (_CAL. BUS. & PROF. CODE_ §17200);
5) **BREACH OF FIDUCIARY DUTY;**
6) **CONSTRUCTIVE FRAUD;**
7) **NEGLIGENCE;**
8) **NEGLIGENT SUPERVISION**
9) **NEGLIGENT RETENTION/
   HIRING;**
10) **NEGLIGENT FAILURE TO
    WARN.**
11) **DECLARATORY RELIEF**

[Filed pursuant to _C.C.P._ §340.1]

**DEMAND FOR JURY TRIAL.**

20

21

22

23

24

25

26       **COMES NOW**, Plaintiff MCKAYLA MARONEY (hereinafter referred to as "Plaintiff"

27  or "MCKAYLA MARONEY") who complains and alleges as follows:

28  ///

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-1-
**COMPLAINT FOR DAMAGES**

MANLY, STEWART & FINALDI
19100 Von Karman Ave, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

## GENERAL ALLEGATIONS AS TO THE PARTIES

1.      The instant case arises from the depraved, repeated, and serial sexual abuse and molestations of Plaintiff MCKAYLA MARONEY by former Olympic Team Dr. Lawrence "Larry" Gerard Nassar ("NASSAR"), while the Plaintiff MCKAYLA MARONEY was competing at the highest level of the gymnastics' sport, across the Nation and throughout the World. These repeated sexual molestations and assaults of the Plaintiff occurred across three (3) continents, many of the assaults and molestations occurring at the most prestigious gymnastics competitions in the World. MCKAYLA MARONEY, began gymnastics as young girl, sacrificing a normal childhood, in order to represent her country and compete at the highest level of gymnastics competition. Starting at the tender age of nine (9) years old, MCKAYLA MARONEY began competing as a gymnast, in order to pursue the most elite levels of the sport. At the age of 13 years old, MCKAYLA MARONEY began her Junior National Team career with the National Governing Body ("NGB"), and by the age of sixteen (16) years old, MCKAYLA MARONEY had reached the pinnacle of gymnastics' achievement by winning Gold and Silver medals for the United States at the 2012 London Olympics. Despite her overwhelming drive and talent, which promogulated her success, MCKAYLA MARONEY was being serially molested by NASSAR before, during and after trainings and competitions, all the while NASSAR was a known sexual predator by MICHIGAN STATE UNIVERSITY ("MSU") and in direct violation of all policies, rules, and procedures set forth by the UNITED STATES OLYMPIC COMMITTEE ("USOC"). These severe molests, under the guise of medical treatment, occurred on dozens of occasions. While the molestations of MCKAYLA MARONEY began under the guise of legitimate medical treatment, with NASSAR inserting his bare, ungloved hand into her vagina (claiming that he was performing medical treatment), they soon took an even more depraved and sadomasochistic turn. Before one of the biggest competitions in MCKAYLA MARONEY's career in Japan, NASSAR closed the "treatment room" door, his face went blank, and he then proceeded to insert his hand into the vagina and anus of MCKAYLA MARONEY. In recounting this horrific incident, MCKAYLA MARONEY described it publicly through her social media account:

///

---

-2-
**COMPLAINT FOR DAMAGES**

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

"For me, the scariest night of my life happened when I was 15 years old. I had flown all day and night with the team to get to Tokyo. He'd given me a sleeping pill for the flight, and the next thing I know, I was all alone with him in his hotel room getting a 'treatment.' I thought I was going to die that night."

2.     Despite having the power, authority, and mandate to do so, the Defendants USOC and MSU never intervened to discipline NASSAR, ensure that USAG and NASSAR were following USOC rules and mandates, never called law enforcement for allegations made against NASSAR, and through the express disregard for the safety of minors, allowed NASSAR to continue in his position of trust, power and access to MCKAYLA MARONEY, as well as numerous other elite minor athletes who competed with MCKAYLA MARONEY. NASSAR was only finally removed from his position years later, after the cessation of MCKAYLA MARONEY's abuse.

3.     To this day MCKAYLA MARONEY is petrified of NASSAR and does not trust medical providers, and suffers from intrusive, repeated thoughts and memories of the horrific abuse she suffered as a minor gymnast competing for her country. His abuse even occurred the evening before her Olympic competitions.

4.     MCKAYLA MARONEY is the daughter of the Plaintiffs JANE PCNE DOE and JOHN PCNM DOE, filed with the Superior Court of Los Angeles, Case No. BC667053 on or around June 30, 2017.

## THE PLAINTIFF

## MCKAYLA MARONEY

5.     The Plaintiff MCKAYLA MARONEY is now a young adult female who currently resides in the State of California, in the County of Los Angeles. The Plaintiff MCKAYLA MARONEY was formerly an elite minor gymnast who was sexually abused by NASSAR believing this was medical treatment, while competing in National and International Competitions, including but not limited to competitions in California, the Karolyi Ranch in Huntsville, Texas (and other locations across the United States and internationally, including in Europe and Asia) that were hosted, sanctioned, supervised, and/or endorsed by, under the supervision of, chartered,

**COMPLAINT FOR DAMAGES**

and/or under the mandate of Defendant USOC. During many of these events, the Defendants USOC and DOES 1 through 500, took care, custody and control of Plaintiff MCKAYLA MARONEY and stood *in loco parentis* with her and her parents. Defendants USOC and MSU had a duty to protect MCKAYLA MARONEY from known or foreseeable dangers, such as NASSAR, and to promptly investigate, censure, discipline, and/or remove NASSAR; remedial actions they never took until years after the cessation of MCKAYLA MARONEY's abuse.

6.      The Plaintiff was an elite level gymnast and member of Team USA who competed in National and International competitions on behalf of the United States. These National and International competitions occurred in places including, but not limited to: California, the Karolyi Ranch in Huntsville, Texas and other locations across the United States and internationally, including the most elite competitions occurred in Asia and Europe. During many of these competitions, the Plaintiff was subjected to sexual harassment, sexual assault, sexual abuse and molestation by NASSAR, including but not limited to competitions and trainings that occurred in California, at the Karolyi Ranch in Huntsville, Texas and other locations across the United States and internationally, including Europe and Asia. The Plaintiff was sexually abused on numerous occasions and at numerous locations in or around 2009 through in or around 2013. This sexual abuse of the Plaintiff occurred at events where USAG, Defendant USOC, Defendant MSU and DOES 1 through 500 were responsible to supervise the Plaintiff, ensure proper medical procedures and protocols were followed, warn the Plaintiff of known dangers, and to provide for her safety.

7.      This action is brought pursuant to *Code of Civil Procedure* §340.1, which governs the statutes of limitations arising from childhood sexual abuse. As a victim of childhood sexual abuse, and a young adult under the age of 26 years old, thus, MCKAYLA MARONEY's action is timely.

### DEFENDANTS

### DEFENDANT, UNITED STATES OLYMPIC COMMITTEE ("USOC")

8.      Defendant USOC, at all times mentioned herein, was and is a business entity of form unknown, having its principal place of business in the State of Colorado and is headquartered in Colorado Springs, Colorado. The USOC is a federally chartered nonprofit corporation, which

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-4-

was reorganized by the Ted Stevens Amateur Sports Act, originally enacted in 1978. As advertised on its website, "[t]he USOC has two primary responsibilities in its oversight of Olympic and Paralympic sport in the United States. The first is to generate resources in support of its mission, which is to help American athletes achieve sustained competitive excellence. The second is to ensure organizational resources are wisely and effectively used to that end." Furthermore, Defendant "…**USOC is committed to creating a safe and positive environment for athletes' physical, emotional and social development and to ensuring that it promotes an environment free of misconduct**." Under the Ted Stevens Amateur Sports Act, 36 *U.S.C.* §§220501, *et seq.* (hereinafter, "Ted Stevens Act") Defendant USOC had a mandatory obligation to ensure that before granting NGBs, including USAG, a sanction to host National or International events, that they provide "**proper medical supervision will be provided for athletes who will participate in the competition**." 36 *U.S.C.* §§220525(b)(4)(E).

9.     During all relevant times during MCKAYLA MARONEY's abuse, USOC was responsible for ensuring that the Karolyi Ranch, provided adequate supervision for the minors competing thereat, reasonable safety protocols ensuring the safety of those minors, and reasonable supervision, training, and oversight procedures for all medical care provided to gymnasts at the Karolyi Ranch, including training of staff on identification of sexual abuse, proper procedures, use of proper medical care, and staffing of ample medical personnel to ensure proper care of all minor gymnasts, including the Plaintiff MCKAYLA MARONEY. Despite these duties under the law, Defendant USOC implemented virtually no safety protocols or procedures at the Karolyi Ranch, and failed to provide any supervision for minor gymnasts training at the Karolyi Ranch.

10.     At all times relevant to the Plaintiff's sexual abuse at the hands of NASSAR, Defendant USOC was responsible for her supervision while competing at Olympic and the World Artistic Gymnastics Championships, in which she competed. Despite being the body responsible for the Plaintiff's safety during these events, including, being responsible for her supervision, medical care, and well-being, Defendant USOC provided no adequate or effective measures to ensure her protection from the risk of sexual abuse, either at the events or in her living quarters, where sexual abuse by NASSAR occurred. Despite competing in Japan, the United Kingdom and

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-5-
**COMPLAINT FOR DAMAGES**

Belgium (among other international sites), the Plaintiff MCKAYLA MARONEY was provided no supervision while medical treatment was performed in her living quarters by NASSAR. This is how and why NASSAR was allowed solitary access to these minors, including the Plaintiff MCKAYLA MARONEY.

11.     In 2010, during the Plaintiff MCKAYLA MARONEY's sexual abuse at the hands of NASSAR, Defendant USOC convened what it termed the "Working Group for Safe Training Environments" in order to address, among many things, physical and sexual abuse of amateur athletes in NGB. It was not until 2011, after this commission met, that Defendant USOC hired an individual to head its "SafeSport" program and not until 2012 that a "SafeSport" Handbook was adopted and promulgated safeguards and safety protections for minor athletes, from the ravages of sexual abuse. Despite only instituting these SafeSport policies in 2012, Defendant USOC was acutely aware of the ravages of sexual abuse posed to minors in amateur sports, **for at least a decade prior to this SafeSport program being created; as discussed further at Paragraph 50.**

12.     As a requirement for NGBs, such as USAG, to remain in "good standing" with USOC, USOC policies require that USAG "…l) comply with the safe sport policies of the corporation and with the policies and procedures of the independent safe sport organization designated by the corporation to enhance safe sport practices and to investigate and resolve safe sport violations (no exceptions to this requirement shall be allowed unless granted by the CEO, or his or her designee, after allowing the [NGB] or PSO to present the reasons for such exception)…" The Plaintiff is informed and believes, and on that basis alleges, that the Safe Sport program was introduced in or around 2011, and that such policies have become more stringent over the years. Nevertheless, the USOC continued to fail to adequately enforce these policies against NASSAR, and has continually failed to uphold said policies through proper reporting, supervision, mandates on NGBs (including USAG), and other preventative procedures. Even as the SafeSport policies state today herein, Defendant USOC still failed to uphold these policies and procedures, had they been in-place at the commencement of MCKAYLA MARONEY's sexual abuse. Defendant USOC has and had a culture and atmosphere that conceals known and suspected sexual abusers, which transcends all policies and procedures that are set in-place. For this reason, Defendant

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-6-
**COMPLAINT FOR DAMAGES**

USOC has a practice and culture of ignoring its own internal rules and mandates for NGBs, in order to protect its reputation and blind itself to known abusers within the ranks of NGBs for which it is responsible.

13.     Moreover, the USOC currently promulgates the SafeSport policies that prevent "…USOC employees, coaches, contracted staff, volunteers, board members, committee and task force members, and other individuals working with athletes or other sport participants while at an OTC, whether or not they are employees of the USOC" and "…[a]thletes training and/or residing at a USOC Olympic Training Center" from engaging in sexually abusive misconduct, including "child sexual abuse" and "sexual misconduct." *See* USOC Safe Sport Policies, Section II(c). SafeSport policy also has policies for identifying "grooming" behaviors, which it defines as, "…the most common strategy used by offenders to seduce their victims."

14.     Subsequent to sometime in 2012, Plaintiff is informed and believes and on that basis, alleges these policies (or prior versions that were similar or less restrictive) were in effect at USOC, and applied to USAG. Despite the existence of these policies after 2012, Defendant USOC allowed NASSAR to continue to participate with minor children at USAG, the NGB for Women's Gymnastics, and failed to adequately enforce these policies, or mandate that USAG enforce these policies. Due to its systemic and knowing failure to enforce these policies, the Plaintiff was sexually harassed, abused, and molested by NASSAR; an individual who was subject to these policies. Plaintiff is informed, and on that basis, believes that USAG was at all times in "good standing" with Defendant USOC, despite failing to adhere to, and enforce the SafeSport policies, which it violated by allowing NASSAR access to minor gymnasts, including the Plaintiff MCKAYLA MARONEY. Furthermore, in failing to report suspected child abuse of NASSAR and/or failing to enforce policies and procedures to prevent said sexual abuse of minors, the Defendant USOC prevented the Plaintiff and her parents from avoiding the sexual abuse of the Plaintiff and/or ceasing it sooner.

15.     Further, Defendant USOC was required to ensure that NGBs, including USAG, ensure that "**proper safety precautions have been taken to protect the personal welfare of the athletics and spectators at the competition**." 36 *U.S.C.* §§220525(b)(4)(F). Moreover, as part of

MANLY, STEWART & FINALDI
19100 Von Karman Ave Suite 800
Irvine, California 92612
Telephone (949) 252-9990

an NGB's mandate from the Defendant USOC, it was to, "**encourage and support research, development, and dissemination of information in the areas of sports medicine and sports safety.**" 36 *U.S.C.* §220524(9). Had Defendant USOC performed its mandate reasonably, diligently, and in accord with its duty to protect minor children under both Federal and California Law, NASSAR would have been investigated, sanctioned, and/or removed from USAG, Defendant MSU, and others, and never have been placed in solitary contact with the Plaintiff. Defendant USOC never adequately or reasonably enforced these policies, thus, the sexual abuse perpetrated by NASSAR on the Plaintiff, as well as hundreds of other minor girls, was a natural, probable and foreseeable outgrowth of Defendant USOC's dereliction of its duties. Defendant USOC willfully blinded itself and its officers, agents, employees, and servants, to ravages of sexual abuse that were rampant in amateur sports and in organizations for which it was responsible to supervise, including USAG.

16.     In March of 2017, under the United States Senate Judiciary Committee's inquiry into the failure of the USAG and USOC in protecting gymnasts from sexual assault, specifically centered around NASSAR, the USOC's president publicly admitted, "[t]he Olympic community failed the people it was supposed to protect."

17.     Plaintiff is informed, and believes, and on that basis alleges that Defendant USOC was aware, at the highest levels of its organization, that NASSAR had molested Olympian and National Team level gymnasts who participated with USAG, an NGB under Defendant USOC's charter, while NASSAR was permitted to return to his medical practice at Defendant MSU without Defendant MSU being warned, advised or otherwise contacted by Defendant USOC regarding Defendant USOC's knowledge of NASSAR's sexual abuse of elite, minor gymnasts. Plaintiff is informed and believes, and on that basis alleges that despite having actual knowledge of NASSAR's molestation of minor gymnasts as early as 2015, Defendant USOC concealed their involvement with USAG, concealed its knowledge of NASSAR's sexual misconduct with minor children, and ultimately, misdirected the United States Senate into believing that Defendant USOC had only failed to protect minor gymnasts through lack of oversight. Plaintiff is informed and believes and on that basis alleges that Defendant USOC knew that NASSAR had been removed

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-8-
**COMPLAINT FOR DAMAGES**

1  from Defendant USAG for allegations of child molestation as early as 2015, as it was Defendant

2  USOC's custom and practice to necessarily learn of reports of child molestation by a NGB

3  employee, like those made to Defendant USAG in 2015, given that USOC was responsible for the

4  supervision of Defendant USAG. Nonetheless, Defendant USOC had representatives present at

5  the March 2017 Senate Judiciary Committee Hearing and concealed their prior knowledge of

6  NASSAR being a pedophile and sexual abuser; leaving the Senators, those present, and the public

7  with the false impression that Defendant USOC simply failed to implement proper procedures to

8  prevent abuse. During this hearing, and as early as 2015, Defendant USOC had knowledge that

9  NASSAR was abused young girls, and that he continued to sexually abuse young girls for over

10  another year at Defendant MSU, without notifying, informing, or otherwise communicating this

11  knowledge of Defendant MSU.

12      18.    Under California *Penal Code* § 11165.7, USOC is an organization whose

13  employees, agents, and/or servants are legally "mandated reporters", considering that USOC is a

14  youth recreational program and USOC's employees' duties require direct contact and supervision

15  of children.

16      **DEFENDANT, MICHIGAN STATE UNIVERSITY ("MSU")**

17      19.    Defendant MSU, at all times mentioned herein, was and is a business entity of form

18  unknown, having its principal place of business in the State of Michigan. Plaintiff is informed and

19  believes MSU is a public land grant university, established in 1855, in East Lansing, Michigan.

20  Defendant MSU is a research university that proclaims itself to "…work every day to advance the

21  common good in uncommon ways. Together we tackle some of the world's toughest problems to

22  find solutions that make life better." In advertising, Defendant MSU claims "[o]ur three core,

23  interwoven values are quality, inclusiveness, and connectivity." Furthermore, Defendant MSU

24  proclaims itself to be on the Top 100 universities in the world, and that in 2014-2015, it received

25  $584 million in external funding for research and that it annually receives $50 million in

26  international funding. In 2015-2016, Defendant MSU had a general fund budget of over $1 billion.

27      20.    Defendant MSU further claims that it has amongst the best athletics programs in

28  the nation. As Defendant MSU's own website declares, its "dedication and excellence was

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-9-

recognized by CBSSports.com in its annual Best in College Sports Award, which rated [Defendant MSU]'s athletics program No. 2 in the nation across the board, noting it 'has become a model of consistency, and its teams have proven capable of winning big and graduating players.'"

21.     Through his ubiquity and perceived admiration in the National and International gymnastics community, NASSAR's history and reputation for providing care to Olympians and elite level gymnasts derived continuous and substantial economic benefit to MSU, its Sports Medicine Department and its athletics programs. MSU's reputation as the Olympic gymnastics doctor, created confidence, trust, and pedigree in the Defendant MSU's Sports Medicine program which furthered MSU's financial and athletics interests. Plaintiff is informed and believes and on that basis alleges that by having MSU, the Olympic doctor, employed at the MSU facilities, MSU benefitted financially by attracting better athletic recruits, and providing treatment to non-collegiate athletes seeking perceived elite medical care.

22.     From in or around 1996 until September 2016, NASSAR was a full-time employee of MSU, and a physician in its Sports Medicine Department. During this period, his written and contractually mandated job duties involved a vast allocation of his time (approximately 50%) being spent conducting what is described by MSU as "outreach". One of the organizations that he routinely provided outreach for, and that MSU and USOC knew NASSAR would routinely provide "outreach" for, was USAG, which can be found in NASSAR's employment documents. Thus, the work performed by NASSAR for USAG and Defendant USOC, was performed within the course and scope of NASSAR's employment with MSU, and MSU was responsible with USAG, Defendant USOC, (and other defendants), for supervising NASSAR, protecting the Plaintiff from NASSAR and warning the Plaintiff's parents of the risked posed by NASSAR to the Plaintiff and other minor girls in USAG, Defendant USOC, and Defendant MSU's care. As part of NASSAR's employment, MSU explicitly allowed and encouraged NASSAR to travel across the country with USAG, USOC, and travel to Texas to perform work for BELA KAROLYI and MARTA KAROLYI. Plaintiff is informed and believes, and on that basis alleges that MSU and USOC, at all times relevant to MCKAYLA MARONEY's abuse, knew that NASSAR was performing purported medical treatments on minor children including the Plaintiff, knew that NASSAR had

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-10-
**COMPLAINT FOR DAMAGES**

complaints pertaining to these purported medical treatments (which were disguised, sexually abusive acts), but nonetheless allowed NASSAR to continue working for USAG and Defendants USOC, and DOES 1 through 500, without any prior warning, protection, or remedial steps taken to limit his access to minor children.

23.     Defendant MSU purposely conducts substantial business activities in the State of California. Defendant MSU actively seeks and recruits minor athletes from California, specifically the Los Angeles and Southern California area, to attend schooling at MSU. The Defendant MSU further conducts business in the State of California by sending representatives to college fairs and recruitment events to lure potential students to attend Defendant MSU. Furthermore, MSU employed NASSAR and compensated NASSAR to provide medical treatment throughout the United States with USAG and Defendant USOC, and even throughout the world. Defendant MSU knowingly permitted NASSAR to travel the world performing his abusive procedures on minor gymnasts with USAG and Defendant USOC, including MCKAYLA MARONEY. Despite having numerous warning signs that NASSAR was sexually abusive towards minors and young women, MSU continued to employ NASSAR and continued to allow NASSAR to be associated with USAG and USOC. MSU knew that NASSAR travelled throughout the United States, including California, and employed him to do so. It was under these circumstances that NASSAR was given solitary and secluded access to minors, including the Plaintiff MCKAYLA MARONEY, where NASSAR sexually violated the Plaintiff both in California and outside California.

24.     Under the applicable laws, Defendant MSU and its Sports Medicine Department and athletics departments, are organizations whose employees, agents, and/or servants are legally "mandated reporters", considering that Defendant MSU operates a medical facility, and its employees' duties require providing direct medical care. Furthermore, Defendant MSU is governed by Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §1681 *et seq.*, and is required to investigate allegations of sexual assault, sexual abuse and sexual harassment. Defendant MSU systematically failed to uphold the duties and requirements under Title IX through a pattern, history and culture of willful disregard for allegations of sexual abuse.

///

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-11-
COMPLAINT FOR DAMAGES

25.     Because MSU is a public university organized and existing under the laws of the State of Michigan, and Michigan statutory law requires parties to file a Notice of Intention to File Claim in order to maintain any action against the state, in satisfaction of M.C.L. §600.6431 Plaintiff filed a Notice of Intent to File Claim with the Michigan Court of Claims on June 1, 2017, through the use of local counsel in Michigan, under the Doe Pseudonym of "JANE CN DOE". Until April of 2017, and as she had no way to discover prior thereto, MCKAYLA MARONEY was never informed and never knew, and for the first time realized, that NASSAR was employed by Defendant MSU to perform treatment for USAG, and Defendant USOC. The only way MCKAYLA MARONEY could have been aware of this connection was based upon a detailed file search of NASSAR's previous employment contracts with Defendant MSU which were not readily available to the public, and for which she had no reason to discover. Thus, within two months of making such a discovery, MCKAYLA MARONEY filed a Notice of Claim with the Michigan Court of Claims.

**DEFENDANT, USA GYMNASTICS ("USAG")**

26.     USAG, at all times mentioned herein, was and is a business entity of form unknown, having its principal place of business in the State of Indiana. Plaintiff is informed and believes, and on that basis alleges that USAG was incorporated in the state of Texas and/or Arizona. USAG is the NGB for gymnastics in the United States, as designated and permitted by Defendant USOC under the Ted Stevens Amateur Sports Act, and selects and trains the United States gymnastics teams for the Olympics and World Championships, promotes and develops gymnastics locally and nationally, and serves as a resource center for members, clubs, fans and gymnasts throughout the United States. USAG has more than 174,000 athletes and professional members, more than 148,000 athletes registered in competitive programs, as well as more than 25,000 professional, instructor and club members. Approximately 4,000 competitions and events throughout the United States are sanctioned annually by USAG. USAG was the primary entity owning, operating and controlling the activities and behavior of its employee agents, including, but not limited to NASSAR. USAG is also the entity that selects gymnasts for the US National and Olympic Teams.

///

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-12-
**COMPLAINT FOR DAMAGES**

27.     The bylaws of USAG, or similar bylaws previously enacted, were made in conformance and under the mandate of Defendant USOC, and were intentioned at protecting minor gymnasts, including MCKAYLA MARONEY from the ravages of sexual abuse, molestation and harassment; a known, foreseeable and palpable risk posed to minor athletes in amateur sports. Nevertheless, despite these bylaws, rules, policies and procedures purportedly being in effect at USAG, Defendant USOC never ensured, audited or checked to confirm that these policies were effective and being implemented properly, adequately and in conformance with the standard of care. Had Defendant USOC upheld its duties under Federal Law (specifically, the Ted Stevens Act) in ensuring National Team members, including the Plaintiff MCKAYLA MARONEY, were provided proper medical care and supervision, and that they were properly supervised at competitions and the National Training Center (the Karolyi Ranch in Huntsville, Texas), then the dozens of molestations suffered by MCKAYLA MARONEY and numerous other gymnasts could have been avoided.

28.     Under California *Penal Code* § 11165.7, USAG is an organization whose employees, agents, and/or servants are legally "mandated reporters", considering that USAG is a youth recreational program and USAG's employees' duties require direct contact and supervision of children.

29.     Defendant USAG is being sued solely for Declaratory Relief, as USAG is a released party within the terms of the Settlement Agreement, entered into by the Plaintiff and USAG.

### DEFENDANT, LARRY NASSAR

30.     NASSAR, the Perpetrator, at all times mentioned herein was and is an adult male individual, who lived in the State of Michigan during the period of time during which the sexual abuse, harassment, and molestation of the Plaintiff alleged herein took place and is currently a citizen of the State of Michigan. Plaintiff is informed and believes that the NASSAR was accepted onto the staff of USAG as a trainer in 1986 and then as the National Medical Director and the National Team Physician for the women's gymnastics team in 1996. NASSAR was also responsible for coordinating the care for USAG and for participants and members at every national and international competition, and would routinely travel to National and International

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-13-

**COMPLAINT FOR DAMAGES**

competitions. NASSAR continued to function in this capacity at USAG until in or around the middle of 2015. Moreover, it is upon information and belief, that as the National Team Doctor for USAG, which was chartered via Defendant USOC, NASSAR was the individual responsible for maintaining USAG's compliance with the medical requirements, policies and procedures set forth by Defendant USOC. Nevertheless, Defendant USOC failed to provide supervision, oversight, and any meaningful inhibition to limit NASSAR's access to minor children.

31.     At all times herein alleged, NASSAR was an employee, agent, and/or servant of USAG, Defendant USOC, Defendant MSU, and DOES 1 through 500, and/or was under their complete control and/or active supervision.

32.     NASSAR was retained by USAG, Defendant MSU, Defendant USOC and DOES 1 through 500, as an Osteopathic Physician and certified athletic trainer to provide care, treatment, and athletic training to the USAG and its participants, many of which were minors while in his care. It was through this position of trust and confidence, that the NASSAR exploited the Plaintiff, in perpetrating his sexual abuse, molestation and harassment upon the Plaintiff. All of the sexually abusive and harassing conduct alleged herein was done for the NASSAR's sexual gratification and was based upon the gender of the Plaintiff.

33.     It is on information and reasonable belief that NASSAR, using his apparent authority and position within USAG, Defendant MSU, Defendant USOC and DOES 1 through 500, over the minor participants in his charge, that the NASSAR sexually abused, molested, and harassed numerous gymnasts, over the nearly 30 years in which NASSAR has been affiliated with USAG, USOC, MSU and DOES 1 through 500.

34.     NASSAR is being sued solely for Declaratory Relief, as NASSAR is a released party within the terms of the Settlement Agreement, entered into by the Plaintiff and USAG.

**DEFENDANTS, DOE 1 THROUGH 500**

35.     Defendants DOES 1 through 500, inclusive, and each of them, are sued herein under said fictitious names. Plaintiff is ignorant as to the true names and capacities of DOES 1 through 500, whether individual, corporate, associate, or otherwise, and therefore sue said Defendants by such fictitious names. When their true names and capacities are ascertained,

Plaintiff will request leave of Court to amend this Complaint to state their true names and capacities herein.

36.     USOC, MSU, and DOES 1 through 500, inclusive, are sometimes collectively referred to herein as "Defendants" and/or as "All Defendants"; such collective reference refers to all specifically named Defendants as well as those fictitiously named herein.

37.     Plaintiff is informed and believe, and on that basis, allege that at all times mentioned herein, each Defendant was responsible in some manner or capacity for the occurrences herein alleged, and that Plaintiff's damages, as herein alleged, were proximately caused by all said Defendants.

38.     At all times mentioned herein, each and every Defendant NASSAR was an employee, agent, and/or servant of USAG, Defendant USOC, Defendant MSU and DOES 1 through 500, inclusive, and/or was under their complete control and/or active supervision. Defendants and each of them are individuals, corporations, partnerships and/or other entities that engaged in, joined in, and conspired with other Defendants and wrongdoers in carrying out the tortuous and unlawful activities described in this Complaint.

39.     Plaintiff is informed and believe, and on that basis, allege that at all times mentioned herein, there existed a unity of interest and ownership among Defendants and each of them such that any individuality and separateness between Defendants, and each of them, ceased to exist. Defendants and each of them were the successors-in-interest and/or alter egos of the other Defendants, and each of them, in that they purchased, controlled, dominated and operated each other without any separate identity, observation of formalities, or other manner of division.  To continue maintaining the facade of a separate and individual existence between and among Defendants, and each of them, would serve to perpetrate a fraud and injustice.

40.     Plaintiff is informed and believes, and on that basis, alleges that at all times mentioned herein, Defendant USOC, Defendant MSU, and DOES 1 through 500 were the agents, representatives and/or employees of each and other. In doing the things hereinafter alleged, Defendants and each of them were acting within the course and scope of said

///

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-15-

**COMPLAINT FOR DAMAGES**

alternative personality, capacity, identity, agency, representation and/or employment and were

within the scope of their authority, whether actual or apparent.

41.     Plaintiff is informed and believes, and on that basis alleges that at all times

mentioned herein, USOC, MSU, and DOES 1 through 500 were the trustees, partners, servants,

joint venturers, shareholders, contractors, and/or employees of each other, and the acts and

omissions herein alleged were done by them, acting individually, through such capacity and within

the scope of their authority, and with the permission and consent of each and every other Defendant

and that said conduct was thereafter ratified by each and every other Defendant, and that each of

them is jointly and severally liable to Plaintiff.

## SEXUAL ABUSE OF MCKAYLA MARONEY AND RESULTING LIFELONG DAMAGES

42.     By his position within the Defendants' institutions, Defendants and NASSAR

demanded and required that Plaintiff respect NASSAR, in his position as team physician for

USAG, authorized by USOC.

43.     NASSAR did sexually abuse, harass and molest the MCKAYLA MARONEY, who

was a minor child at the time of the acts at-issue.

44.     The sexual harassment and abuse of Plaintiff by the Perpetrator (NASSAR),

outlined below, took place while Defendant the Perpetrator (NASSAR) was the team physician of

USAG and under the control of Defendants USOC, MSU, and DOES 1 through 500. Plaintiff was

a participant and member of USAG and DOES 1 through 500, while the Perpetrator (NASSAR)

was serving as an agent and employee of Defendants in his capacity as team physician:

    a.    In his capacity as a team physician with USAG, Defendant USOC, Defendant MSU, and DOES 1 through 500, the Perpetrator (NASSAR) was given custody and supervision of minors, including Plaintiff. The Perpetrator (NASSAR) used this position to coerce children to concede to his sexual suggestions, using his authority and position of trust to exploit them physically, sexually, and emotionally;

    b.    Plaintiff became a member and participant of USAG, and a part of the Junior National Team for USAG in 2009. Plaintiff soon formed a relationship with the Perpetrator (NASSAR), USAG's team physician. At this time, in or around 2009, the Perpetrator (NASSAR) commenced the process of "grooming" Plaintiff for later physical, sexual and emotional abuse. Plaintiff is informed and believes the Perpetrator (NASSAR) would use the guise of care, athletic training, osteopathy, and kinesiology to normalize intimate, inappropriate, and sexually abusive contact with Plaintiff. Plaintiff is informed and believes the Perpetrator (NASSAR) would enter the living quarters of the Plaintiff MCKAYLA MARONEY and other gymnasts at the Karolyi Ranch, hotel rooms at meets, and at other locations, placing

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-16-

**COMPLAINT FOR DAMAGES**

MANLY, STEWART & FINALDI
19100 Von Karman Ave, Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

Plaintiff under the impression this inappropriate contact was part of treatment. During this period, Plaintiff was a patient under the Perpetrator's (NASSAR) direct supervision and control.

c.  Plaintiff is informed and believes the Perpetrator's (NASSAR) physical and sexual abuse of Plaintiff commenced after the grooming of Plaintiff began, and occurred numerous times while the team was traveling and before and after competitive meets up until in and around 2013. Specifically, the Plaintiff was sexually abused by NASSAR in Texas at the Karolyi Ranch, in California, and at numerous locations around the country, as well as internationally in Japan, in the United Kingdom and in Belgium. During this period, Plaintiff was a participant, member, and patient under the Perpetrator's (NASSAR) and Defendants' direct supervision and control. Using his position as team physician, the Perpetrator (NASSAR) would interact with Plaintiff under the guise of providing her care and treatments necessary for her to compete as a world-class, Olympic medal-winning gymnast. Under these circumstances, the Perpetrator (NASSAR) placed his bare hand in Plaintiff's vagina and anus, on multiple occasions, in Plaintiff's assigned living quarters, without any supervision or a chaperone. Further, NASSAR, on at least one occasion, disrobed Plaintiff, mounted the Plaintiff while performing a medical treatment, placed his fingers into her anus and vagina, and had an erection. Plaintiff is informed and believes that the Perpetrator's (NASSAR) sexual abuse, molestation, and harassment of Plaintiff occurred on the premises of USAG, in hotels around the world, and various other locations including in living quarters, in training facilities, in gyms, et cetera.

d.  In addition to the sexual acts engaged in hereinabove, NASSAR would continuously, obsessively and compulsively photograph MCKAYLA MARONEY and is believed to possessed thousands of photographs of MCKAYLA MARONEY competing in gymnastics events, training, in everyday situations, and it is upon information and belief, therefore the Plaintiff MCKAYLA MARONEY alleges, that she believes photographs were taken of her while NASSAR was sexually abusing her under the guise of treatment. MCKAYLA MARONEY is further informed and believes, and on that basis alleges that these photographs were shared by NASSAR with other pedophiles for their sexual gratification.

45.  Plaintiff is informed and believes, and on that basis alleges, that such conduct by NASSAR was based upon Plaintiff's gender, and was done for NASSAR's sexual gratification. These actions upon MCKAYLA MARONEY were performed by NASSAR without the free consent of Plaintiff, as MCKAYLA MARONEY was a young child, and could therefore not give valid legal consent.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS BY PLAINTIFF

46.  At all times material hereto, Plaintiff was a minor participant and member of USAG, and was under their complete control, dominion, and supervision. NASSAR worked for, was employed by, and an agent/servant of USAG, Defendant USOC and DOES 1 through 500 when NASSAR came into contact with MCKAYLA MARONEY.

///

-17-

47.    At all times material hereto, NASSAR was under the direct supervision, management, agency and control of Defendants USOC, MSU, and DOES 1 through 500, inclusive. NASSAR was the team physician of USAG. While a team physician at USAG, NASSAR's employment duties included coordinating the care for USAG at every national and international competition, providing individual care and providing for the physical needs and well-being of participants and members of USAG (and in accord with Defendant USOC policies, procedures, and mandates), and care including but not limited to osteopathic adjustments and kinesiology treatment to participants and members of USAG, which included MCKAYLA MARONEY. MCKAYLA MARONEY was a participant and member of USAG, and it is under these circumstances that MCKAYLA MARONEY came to be under the direction and control of NASSAR, who used his position of authority and trust to molest and sexually abuse MCKAYLA MARONEY.

48.    As a member and participant of USAG while NASSAR was a team physician, the MCKAYLA MARONEY was under NASSAR's direct supervision, control and care, which created a special, confidential, and fiduciary relationship between MCKAYLA MARONEY, her parents, and NASSAR. Because of such relationship, NASSAR owed Plaintiff a special duty of care. Additionally, as the employers and supervisors of NASSAR, with knowledge that he was in contact with and providing care to children, USAG, Defendant USOC, Defendant MSU, and DOES 1 through 500 were also in a special, confidential, and fiduciary relationship with Plaintiff, owing her a duty of care.

49.    By assigning NASSAR as team physician of USAG under the mandated and control of Defendants USOC and MSU, USOC and MSU represented to the community and participants and members of USAG that NASSAR was safe, trustworthy, and of high moral and ethical repute, such that parents of participants and members need not worry about having NASSAR interact with, and provide care to their minor children. Defendants did so in order to preserve their own public image and reputation, so they could retain past participants and members and recruit new participants and members, thus allowing donations and other financial support to continue flowing into their coffers for financial gain.

**COMPLAINT FOR DAMAGES**

50.     Plaintiff is informed and believes, and on that basis, alleges that Defendants MSU, USOC and DOES 1 through 500 knew or should have known that NASSAR had engaged in unlawful sexually-related conduct in the past, and/or was continuing to engage in such conduct. Defendants had a duty to disclose these facts to MCKAYLA MARONEY and her parents, but negligently and/or intentionally suppressed, concealed or failed to disclose this information. The duty to disclose this information arose by the special, trusting, confidential, fiduciary relationship between Defendants and Plaintiff.

51.     Plaintiff is informed and believes, and on that basis, alleges that Defendants knew or should have known that sexually abusive staff, such as NASSAR, were violating USOC and USAG policies, without enforcement or abatement, and were continually allowed to be in contact with minor children, such as MCKAYLA MARONEY. As early as 1999, USOC was placed on notice by former USAG president Robert Colarossi, who wrote a letter to the USOC, explaining that the safety procedures and policies that USOC required USAG to follow, were part of a "…fundamentally flawed process…" and that at USOC there was an "…**apparent indifference to the welfare of young children manifest in the Committee's actions.**" *See* Exhibit A as the Letter from Robert Colarossi to USOC. It was not until 11 years later, that Defendant USOC created the SafeSport program and issued a handbook detailing specific procedures for preventing sexual abuse of minors, and access to minors by sexual abusers. Despite instituting this handbook and program, Defendant USOC maintained its course and culture of ignoring abuse, ignoring its internal policies and procedures, and placing minors in the way of danger.

52.     Plaintiff is informed and believes and on that basis, alleges Defendants knew of, or should have known of, NASSAR's propensity and disposition to engage in sexual misconduct with minors before he sexually abused and molested MCKAYLA MARONEY, and knew of the probability that NASSAR would molest minors with whom he came into contact, such as MCKAYLA MARONEY.

53.     Defendant failed to implement reasonable safeguards to avoid acts of unlawful sexual conduct by NASSAR in the future, including avoiding placement of NASSAR in a position where contact and interaction with children is an inherent function. Defendants ignored and

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-19-
**COMPLAINT FOR DAMAGES**

1   suppressed the past sexual misconduct NASSAR had engaged in, and concealed that information

2   from MCKAYLA MARONEY and her family.

3       54.     Plaintiff is informed and believes, and on that basis alleges, that Defendants were

4   apprised, knew or should have known of and/or were put on notice of NASSAR's past sexual

5   abuse of children, past claims and/or investigations, and his propensity and disposition to engage

6   in such unlawful activity and unlawful sexual activity with minor participants and members such

7   that Defendants knew or should have known that NASSAR would commit wrongful sexual acts

8   with participants and members, including MCKAYLA MARONEY. Plaintiff is informed and

9   believes, and on that basis alleges that personnel and/or employment records and other records of

10  Defendants' reflect numerous incidents of inappropriate sexual contact and conduct with minor

11  participants and members by NASSAR and other professionals, employees, assistants, agents,

12  supervisors and others, including incidents occurring both on and off the physical premises of such

13  Defendants and at national and international meets. Based on these records, Defendants knew

14  and/or should have known of NASSAR's history of sexual abuse, past claims and/or past

15  investigations, and his propensity and disposition to engage in unlawful activity and unlawful

16  sexual activity with participants and members such that Defendants knew or should have known

17  that NASSAR would commit wrongful sexual acts with those minor participants and members,

18  including MCKAYLA MARONEY.

19      55.     Plaintiff is informed and believes, and on that basis alleges, that NASSAR was

20  repeatedly informally censured, disciplined and/or reprimanded by USAG for taking an inordinate

21  number of photographs of young girls, who were gymnasts. This conduct by NASSAR was in

22  direct contravention of his duties set forth by the USAG, Defendant USOC, and was not

23  communicated to the Plaintiff or her family. This conduct was not further investigated, was not

24  reported to law enforcement or child welfare authorities, and was never communicated to the

25  Plaintiff, her parents or other gymnasts, in direct violation of USAG's mandate under the

26  Defendant USOC's policies, procedures and rules. Subsequent to NASSAR's initial arrest in 2016,

27  thousands of images of child pornography were located by Federal law enforcement on his

28  electronic devices, and NASSAR pleaded guilty to such possession of child pornography in July

MANLY, STEWART & FINALDI
19100 Von Karman Ave Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-20-

**COMPLAINT FOR DAMAGES**

of 2017. Had Defendants USOC and MSU effectively implemented their safety policies and procedures, damage to the Plaintiff could have been minimized, but was not. Instead, the photographs taken of MCKAYLA MARONEY could be anywhere on the internet, or possessed by any number of pedophiles or sexual deviants.

56.     Because of the relationship between Plaintiff and Defendants, Defendants had an obligation and duty under the law not to hide material facts and information about NASSAR's past, and his deviant sexual behavior and propensities. Additionally, Defendants had an affirmative duty to inform, warn, and institute appropriate protective measures to safeguard minors who were reasonably likely to come in contact with NASSAR, including MCKAYLA MARONEY at the time. Defendants willfully refused to notify, give adequate warning and implement appropriate safeguards, thereby creating the peril that ultimately damaged MCKAYLA MARONEY.

57.     Plaintiff is informed and believes, and on that basis alleges, that prior to MCKAYLA MARONEY's sexual abuse by NASSAR, Defendants engaged in a pattern and practice of employing sexual abusers. Defendants concealed these facts from participants and members, their parents, the Los Angeles County community, the gymnastics community, the public at large, other NGB's, the United States government, various local governments, and law enforcement agencies.

58.     As is set forth herein, Defendants and each of them have failed to uphold numerous mandatory duties required of them by state and federal law, as well as their own internal written policies and procedures, including:

- Duty to use reasonable care to protect participants and members from known or foreseeable dangers

- Duty to inform the Plaintiff MCKAYLA MARONEY and her parents of the known risks to the health and well-being of their daughter while in USAG and/or USOC sponsored, authorized, and supervised programs, events and trainings;

- Duty to enact policies and procedures that are not in contravention of the Federal Civil Rights Act, section 1983 and the 14th amendment of the United States Constitution;

- Duty to protect participants and members and staff, and provide adequate supervision;

- Duty to ensure that any direction given to participants and members is lawful, and that adults act fairly, responsible and respectfully towards participants and members;

MANLY, STEWART & FINALDI
19100 Von Karman Ave, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

-21-
**COMPLAINT FOR DAMAGES**

- Duty to properly train staff so that they are aware of their individual responsibility for creating and maintaining a safe environment;

- Duty to review the criminal history of applicants and current employees;

- Duty to provide diligent supervision over minors;

- Duty to act promptly and diligently and not ignore or minimize problems.

- Duty to report suspected incidents of child abuse and more specifically childhood sexual abuse (*Penal Code* sections 11166, 11167).

- Duty to provide adequate and safe medical care pursuant to 36 U.S.C. §§220525(b)(4)(E).

59.     Defendants and each of them had and have a duty to protect participants and members, including MCKAYLA MARONEY. Defendants were required to, and failed, to provide adequate supervision, and failed to be properly vigilant in seeing that supervision was sufficient at USAG and USOC to ensure the safety of MCKAYLA MARONEY and others.

60.     Despite having a duty to do so, Defendants failed to adequately train and supervise all staff to create a positive and safe environment, specifically including training to perceive, report and stop inappropriate sexual conduct by other members of the staff, specifically including NASSAR with children.

61.     Defendants failed to enforce their own rules and regulations designed to protect the health and safety of the participants and members. Further, they failed to adopt and implement safety measures, policies and procedures designed to protect minor children such as Plaintiff's child from the sexually exploitive and abusive acts of their agents and employees such as NASSAR.

62.     Plaintiff is informed and believes and on that basis alleges that as part of Defendants' conspiratorial and fraudulent attempt to hide NASSAR's propensity to sexually abuse children, and prior sexual misconduct with children, from public scrutiny and criminal investigation, Defendants implemented various measures designed to make NASSAR's conduct harder to detect and ensure minors with whom he came into contact, such as MCKAYLA MARONEY, would be sexually abused, including:

a.     Permitting NASSAR to remain in a position of authority and trust after Defendants knew or should have known that he was a molester of children;

MANLY, STEWART & FINALDI
19100 Von Karman Ave, Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-22-

**COMPLAINT FOR DAMAGES**

b.  Placing NASSAR in a separate and secluded environment, at USAG and USOC authorized camps and events, including assigning him unfettered access and control over minor participants and members that included individual and private examinations, private osteopathic adjustments without a chaperone, and allowing NASSAR to physically and sexually interact with the children, including MCKAYLA MARONEY;

c.  Failing to disclose NASSAR's prior record of misconduct, sexual abuse, harassment and molestation and his propensity to commit such acts towards participants and members in USAG's and USOC's program, the public at large, and law enforcement;

d.  Allowing NASSAR's unsupervised and un-controlled access to minors, including MCKAYLA MARONEY;

e.  Holding out NASSAR to MCKAYLA MARONEY, other participants and members of USAG and USOC, and the public at large as a trustworthy and honest person of high ethical and moral repute who was capable and worthy of being granted unsupervised access to the children of USAG;

f.  Failing to investigate or otherwise confirm or deny such facts about NASSAR including prior arrests, charges, claims and investigations for sexual abuse;

g.  Failing to inform, or concealing from Plaintiff and law enforcement officials the fact that MCKAYLA MARONEY and others were or may have been sexually abused, harassed and molested, after Defendants knew or should have known that NASSAR may have sexually abused MCKAYLA MARONEY or others, thereby enabling MCKAYLA MARONEY to continue to be endangered and sexually abused, harassed, molested, and/or creating the circumstance where MCKAYLA MARONEY and others were less likely to receive proper medical treatment, thus exacerbating the harm to MCKAYLA MARONEY;

h.  Holding out NASSAR to Plaintiff and to the community as being in good standing and trustworthy;

i.  Cloaking NASSAR's prior sexual misconduct with children within the facade of normalcy, thereby disguising the nature of his sexual abuse and contact with minors;

j.  Failing to take reasonable steps and to implement reasonable safeguards to avoid acts of unlawful sexual conduct by NASSAR such as avoiding placement of NASSAR in functions or environments in which his solitary contact with children was inherent;

k.  Failing to put in place a system or procedure to supervise or monitor physicians, athletic trainers, and agents to insure they do not molest or abuse minors in Defendants' care;

l.  Failing to investigate Nassar's background adequately.

m.  Allowing NASSAR to practice medicine without a Texas medical license at the National Training Center.

n.  Failing to implement any reasonable, meaningful, or adequate supervision policies, practices or procedures at the National Training Center, which would have prevented NASSAR solitary access to minors, including the Plaintiff.

MANLY, STEWART & FINALDI
19100 Von Karman Ave, Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-23-

**COMPLAINT FOR DAMAGES**

63.     By his position within the Defendants' institutions, NASSAR attained a position of influence over MCKAYLA MARONEY, her parents, and others. Defendants' conduct created a situation of peril that was not, and could not be appreciated by MCKAYLA MARONEY. By virtue of Defendants' conspiratorial and fraudulent conduct, and in keeping with their intent to fail to disclose and hide NASSAR's past and present conduct from the community, the public at large and law enforcement, Defendants allowed NASSAR to remain in a position of influence where his unsupervised or negligently supervised conduct with minor participants and members made the molestation and abuse of minor participants and members possible.

64.     During the period MCKAYLA MARONEY was being sexually abused and harassed by NASSAR, Defendants had the authority and ability to prevent such abuse by removing NASSAR from his position as team physician at Team USA, USAG and in his status with the USOC. They failed to do so, allowing the abuse to occur and to continue unabated. Plaintiff is informed and believes and on that basis, alleges that this failure was a part of Defendants' conspiratorial plan and arrangement to conceal NASSAR's wrongful acts, to avoid and inhibit detection, to block public disclosure, to avoid scandal, to avoid the disclosure of their tolerance of child sexual molestation and abuse, to preserve a false appearance of propriety, and to avoid investigation and action by public authority including law enforcement. Such actions were motivated by a desire to protect the reputation of Defendants and protect the monetary support of Defendants, while fostering an environment where such abuse could continue to occur.

65.     As a direct result of the sexual harassment and abuse that MCKAYLA MARONEY suffered by NASSAR and USAG, Defendants USOC and DOES 1 through 500 failing to inform the MCKAYLA MARONEY (or her parents) of the danger posed to her by NASSAR, Plaintiff has had difficulty in meaningfully interacting with others, including those in positions of authority over Plaintiff including physicians, athletic supervisors, and agents. Plaintiff has been limited in her ability to meaningfully interact with others due to the trauma of childhood sexual abuse, and the upset of having known that they could have prevented such, had Defendants conveyed the appropriate information. This inability to interact creates conflict with Plaintiff's values of trust and confidence in others, and has caused Plaintiff substantial emotional distress, anxiety,

-24-
**COMPLAINT FOR DAMAGES**

nervousness and fear. As a direct result of this conduct, Plaintiff suffered immensely, including, but not limited to, encountering issues with a lack of trust, various negative psychological and emotional sequelae, depressive symptoms, anxiety, and nervousness. This psychological trauma and association of her abuse with gymnastics cut MCKAYLA MARONEY's gymnastics career short, as participating in gymnastics reminded her of the repeated sexual abuse that she suffered at the hands of NASSAR. Having been one of the most famous gymnasts in United States (and World) history, MCKAYLA MARONEY lost millions of dollars in economic damages, as a result of her sexual abuse at the hands of NASSAR, and continues to suffer from such loss.

66.     Moreover, MCKAYLA MARONEY continues to worry, distress, experience concern, anxiety, and depression over whether NASSAR's photographs of her are still circulating through the internet, and whether they are possessed by other pedophiles and sexual deviants, and whether she will ever know how widely these photographs have been shared or whether they will eventually surface later in her lifetime.

67.     As a direct and proximate result of Defendants' tortious acts, omissions, wrongful conduct and breaches of their duties, Plaintiff's employment and professional development has been adversely affected. Plaintiff has lost wages, endorsements, and many financial opportunities and will continue to lose wages in an amount to be determined at trial. Plaintiff has suffered substantial economic injury, all to Plaintiff's general, special and consequential damage in an amount to be proven at trial, but in no event less than the minimum jurisdictional amount of this Court.

68.     As a further direct and proximate result of Defendants' wrongful actions, as herein alleged, Plaintiff has been hurt in their health, strength and activity. Plaintiff has sustained permanent and continuing injury to their nervous system and person, which has caused and continues to cause great mental, physical and nervous pain, suffering, fright, upset, grief, worry and shock in an amount according to proof at trial but in no event less than the jurisdictional minimum requirements of this Court.

69.     In subjecting Plaintiff to the wrongful treatment herein described, Defendants USOC, MSU and DOES 1 through 500 acted willfully and maliciously with the intent to harm

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone (949) 252-9990

Plaintiff, and in conscious disregard of Plaintiff's rights, so as to constitute malice and/or oppression under California *Civil Code* section 3294. Plaintiff is informed and believes, and on that basis alleges, that specifically, the Defendants acted in concert, and under their authority as child care providers, with reckless disregard for the concern of the minor participants in its charge, in order to further financially benefit their respective business' growth. The Defendants acted intentionally in creating an environment that harbored molesters, put the vulnerable minor participants at-risk of harm, ignored clear warning signs and their duties to report sexual abusers and molesters in their ranks, to maintain a façade of normalcy, in order to maintain its funding and provide further financial growth of USAG and USOC, on the international level. The safety of the minor participants that were entrusted to USAG and represented as being protected through USOC procedures, was compromised due to Defendants desire to maintain the status quo of the USAG and USOC organizations, and avoid any public scrutiny for its misconduct. Plaintiff is informed, and on that basis alleges, that these willful, malicious, and/or oppressive acts, as alleged herein above, were ratified by the officers, directors, and/or managing agents of the Defendants. Plaintiff is therefore entitled to recover punitive damages, in an amount to be determined by the court, against Defendants USOC, MSU and DOES 1 through 500.

### SPECIFIC ALLEGATIONS PERTAINING TO DEFENDANT MSU

70.     During the time in which MCKAYLA MARONEY was sexually abused by NASSAR, NASSAR was the employee of Defendant MSU. Defendant MSU knowingly permitted NASSAR to travel the United States and Internationally with MCKAYLA MARONEY (as well as numerous other minor gymnasts) and USAG, providing purported medical treatment to MCKAYLA MARONEY and other National Team gymnasts. Despite knowing that NASSAR was sexually abusive towards minor patients and gymnasts, Defendant MSU allowed NASSAR to continue to provide purported medical treatment to minor gymnasts, including the Plaintiff. Specifically, Defendant MSU had received complaints about NASSAR touching athletes on their vagina, and inappropriately:

    a.  In or around 1998 through in or around 2001, a softball player at MSU was being sexually assaulted by Dr. Nassar. That softball player complained to trainers at MSU, including the head trainer for women's softball, about the invasive procedures conducted by Dr. Nassar. *See Tiffany Thomas Lopez v.*

MANLY, STEWART & FINALDI
19100 Von Karman Ave Suite 800
Irvine, California 92612
Telephone (949) 252-9990

*MSU* (California Superior Court, Case No. BC 44417). On three (3) separate occasions, Tiffany Thomas Lopez ("Ms. Lopez") complained MSU staff that Defendant NASSAR was penetrating her vagina. Upon speaking with the head trainer, Ms. Lopez was told to stop complaining about the treatments, that she was required to undergo treatment with Defendant NASSAR to maintain her position as a scholarship athlete, and intimidated from reporting.

b. In or around 1999 the MSU Defendants were also put on notice of Defendant NASSAR's conduct by Jane X. Doe[1], an MSU student athlete, after she complained to MSU employees, including trainers and her head coach, that Defendant NASSAR inappropriately touched her vaginal area although she was seeking treatment for an injured hamstring.

71.     Despite having full-knowledge of the above-stated facts, MSU permitted NASSAR to continue to perform "outreach" for USAG for many years, until 2016, and to be in contact with minor gymnasts and young women, as his patients. It was through this contact that NASSAR gained the trust of MCKAYLA MARONEY, and repeatedly sexually abused her.

## SETTLEMENT OF PRIOR CLAIMS AGAINST USAG AND NASSAR, BY THE PLAINTIFF MCKAYLA MARONEY

72.     In December of 2016, after suffering for years from psychological trauma of her sexual abuse at the hands of NASSAR, and in need of funds to pay for psychological treatment for her worsening psychological condition, the Plaintiff MCKAYLA MARONEY was forced to enter into a confidential a with Defendant USAG (which released NASSAR), which was offered, and ultimately entered into in violation of public policy and California Law (hereinafter, "The Settlement"). Specifically, at the time of The Settlement, *Code of Civil Procedure* §1002 (which was amended beginning January 1, 2017) read as follows:

"Notwithstanding any other provision of law, a confidential settlement agreement is prohibited in any civil action the factual foundation for which establishes a cause of action for civil damages for an act that may be prosecuted as a felony sex offense."

73.     This provision was subsequently amended on January 1, 2017, to provide, amongst other terms, potential discipline by the State Bar of California, for an attorney demanding confidential provisions of a settlement agreement involving a felony sex offense. This settlement agreement, negotiated and/or signed by counsel for USAG (attorney Margaret Holm), was done so in direct violation of California Law, and for the purpose of silencing a known victim of

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

---

[1] Jane X. Doe is another individual who was sexually abused by NASSAR and whose identity is protected from disclosure pursuant to her privacy rights ensured by the Federal Constitution. Her claim and case was filed in the State of Michigan.

-27-

**COMPLAINT FOR DAMAGES**

NASSAR. At the time of The Settlement, Plaintiff MCKAYLA MARONEY was unaware that NASSAR was employed with Defendant MSU and had no reason to know of this employment. Plaintiff is informed and believes, and on that basis alleges, that the Confidentiality Provision contained within The Settlement was forced upon the Plaintiff, (with the Plaintiff being in need of therapy and in a fragile mental state) such that Defendant USAG could further conceal and shield from public scrutiny, outside investigation, and law enforcement, the true nature of NASSAR's horrific sexual abuse of minors. It is on information and belief, that the Plaintiff alleges that Defendant USAG had a plan to keep the sexual abuse of NASSAR quiet, and allow NASSAR to quietly leave USAG; further silencing his victims.

74.     In light of her worsening condition, and desperate need for psychological intervention, the Plaintiff MCKAYLA MARONEY entered into this settlement agreement to obtain funds necessary to pay for lifesaving psychological treatment and care. It was under this coercion and pressure that MCKAYLA MARONEY was forced in to agreeing with this confidentiality provision and complying with this illegal provision. Further, MCKAYLA MARONEY was forced to agree to a non-disparagement clause and confidentiality provision, in the above-mentioned settlement agreement, that brought with it liquidated damages penalties of over $100,000, should she or other affiliated non-parties speak of her abuse or The Settlement.

75.     At all relevant times herein, Plaintiff is informed and believes, and on that basis alleges, that the Defendant USOC permits NGBs, such as USAG, to enter into confidential settlement agreements with non-disparagement clauses and/or confidentiality provisions, in violation of California Law, for claims of sexual abuse committed by the NGB members, in order to conceal and keep secret the true magnitude and prevalence of sexual abuse in amateur sports, under its watch. Defendant USOC permits these confidential settlements, in the NGBs it sanctions, including USAG, and in contravention of the safety and supervision standards for which it is responsible to implement.

76.     Despite attempting to silence MCKAYLA MARONEY through The Agreement and its confidentiality and non-disparagement clauses, Defendant USAG publicly provided the ///

MANLY, STEWART & FINALDI
19100 Von Karman Ave, Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-28-
**COMPLAINT FOR DAMAGES**

following statements regarding MCKAYLA MARONEY's disclosure of sexual abuse by NASSAR:

> "USA Gymnastics admires the courage of those, like McKayla Maroney, who have come forward to share their personal experiences with sexual abuse. Because of their strength in coming forward, predators can be held accountable for their actions. We, like so many others, are outraged and disgusted by the conduct of which Larry Nassar is accused. We are sorry that any athlete has been harmed during her or his gymnastics career."

77.     Additionally, on MCKAYLA MARONEY's birthday, Defendant USAG posted the following on its social media account:

> "On her birthday, we celebrate not only the talent it took to deliver the best vaults in the World but also McKayla's incredible bravery and strength to come forward."

78.     Despite coercing MCKAYLA MARONEY into signing a confidentiality provision, in violation of California Law, and holding a six-figure liquidated damages clause, over the head of MCKAYLA MARONEY and her parents, Defendant USAG publicly discussed the exact same subject matter it sought to conceal, only months prior, presumably, to divert the public from USAG's misdeeds and associate itself with disclosure by MCKAYLA MARONEY, which it clearly tried to prevent with this unlawful agreement.

**FIRST CAUSE OF ACTION**
**SEXUAL HARASSMENT: CIVIL CODE § 51.9**
**(Plaintiff MCKAYLA MARONEY Against Defendants MSU, USOC, and DOES 1 through 500)**

79.     The Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

80.     During the Plaintiff MCKAYLA MARONEY's time as a minor gymnast under the care, control and/or mandate of Defendants MSU, USOC, and DOES 1 through 500, NASSAR recklessly and wantonly made sexual advances, solicitations, requests, demands for sexual compliance of a hostile nature based on the Plaintiff MCKAYLA MARONEY's gender that were unwelcome, pervasive and severe. NASSAR intentionally, recklessly and wantonly did acts which resulted in harmful and offensive contact with intimate parts of the Plaintiff MCKAYLA

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-29-
**COMPLAINT FOR DAMAGES**

MARONEY's person, including but not limited to NASSAR using the authority and trust inherent in his position as an Olympic Doctor to exploit her physically, psychologically and emotionally. These acts were done for NASSAR's sexual gratification; all while NASSAR was acting in the course and scope of his agency/employment with Defendants MSU, USOC, and DOES 1 through 500.

81.    The incidents of abuse outlined herein above took place while the Plaintiff MCKAYLA MARONEY was under the care of NASSAR, in his capacity and position as an Olympic Doctor, while acting specifically on behalf of Defendants MSU, USOC, and DOES 1 through 500.

82.    Because of the Plaintiff MCKAYLA MARONEY's young age and relationship with NASSAR as a gymnast at USAG (under the control and authority of Defendants USOC and MSU), the Plaintiff MCKAYLA MARONEY was unable to easily terminate her doctor-patient relationship with NASSAR.

83.    Because of NASSAR's position of authority over Plaintiff MCKAYLA MARONEY, and the Plaintiff MCKAYLA MARONEY's mental and emotional state, and her young age under the age of consent, Plaintiff MCKAYLA MARONEY was unable to, and did not give meaningful consent to such acts.

84.    Even though Defendants MSU, USOC and DOES 1 through 500 knew or should have known of these activities by NASSAR, Defendants MSU, USOC and DOES 1 through 500 did nothing to investigate, supervise or monitor NASSAR to ensure the safety of Plaintiff MCKAYLA MARONEY. Defendants MSU, USOC and DOES 1 through 500 ratified the sexual misconduct of NASSAR by retaining him in employment after discovering, or ignoring the facts that would have led them to discover, his misconduct.

85.    Defendants MSU, USOC and DOES 1 through 500's conduct was a breach of their duties to the Plaintiff MCKAYLA MARONEY.

86.    As a result of the above-described conduct, Plaintiff MCKAYLA MARONEY suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation,

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone   (949) 252-9990

-30-

**COMPLAINT FOR DAMAGES**

and loss of enjoyment of life; have suffered and continue to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

87.     In subjecting Plaintiff to the wrongful treatment herein described, Defendants USOC, MSU, and DOES 1 through 500, acted willfully and maliciously with the intent to harm Plaintiff, and in conscious disregard of Plaintiff's rights, so as to constitute malice and/or oppression under California *Civil Code* section 3294.  Plaintiff is informed, and on that basis alleges, that these willful, malicious, and/or oppressive acts, as alleged herein above, were ratified by the officers, directors, and/or managing agents of the Defendants MSU, USOC and DOES 1 through 500. Plaintiff is therefore entitled, to the recovery of punitive damages, in an amount to be determined by the court, against Defendants USOC, MSU, and DOES 1 through 500.

## SECOND CAUSE OF ACTION
### MASHA'S LAW (18 U.S.C. §§2255, 2423(b), 2423(c))
### (Plaintiff MCKAYLA MARONEY Against Defendants MSU, USOC, and DOES 1 through 500)

88.     Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

89.     Under 18 U.S.C. §§2255, the Plaintiff MCKAYLA MARONEY has a private right of action against NASSAR, and any defendants who are vicariously and/or strictly responsible for NASSAR while abroad perpetrating his sexual assaults against MCKAYLA MARONEY, including Defendants USOC, MSU and DOES 1 through 500. *See Doe v. Celebrity Cruises, Inc.* (11th Cir. 2004) 394 F.3d 891, 894.

90.     Plaintiff MCKAYLA MARONEY is a victim of the federal crime codified as 18 U.S.C. §2423(b), which was perpetrated by NASSAR and provides, "[a] person who travels in interstate commerce or travels into the United States, **or a United States citizen … who travels in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.**"

91.     Furthermore, Plaintiff MCKAYLA MARONEY is a victim of the federal crime codified as 18 U.S.C. §2423(c), which was perpetrated by NASSAR and provides, "**[a]ny United**

MANLY, STEWART & FINALDI
19100 Von Karman Ave, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

-31-
**COMPLAINT FOR DAMAGES**

States citizen ... **who travels in foreign commerce** or resides, either temporarily or permanently, in a foreign country, **and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both**."

92.     As alleged herein, NASSAR travelled with MCKAYLA MARONEY to Europe, Asia, and across state lines, wherein he sexually harassed, abused, and molested her, when she was under the age of 18 years old and as previously stated herein. NASSAR travelled with MCKAYLA MARONEY for the sole purpose of engaging in this elicit sexual conduct with her.

93.     As a result of the above-described conduct, the Plaintiff MCKAYLA MARONEY suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has suffered and continues to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

94.     In subjecting Plaintiff to the wrongful treatment herein described, Defendants USOC, MSU, and DOES 1 through 500, acted willfully and maliciously with the intent to harm Plaintiff, and in conscious disregard of Plaintiff's rights, so as to constitute malice and/or oppression under California *Civil Code* section 3294.  Plaintiff is informed, and on that basis alleges, that these willful, malicious, and/or oppressive acts, as alleged herein above, were ratified by the officers, directors, and/or managing agents of the Defendants MSU, USOC and DOES 1 through 500. Plaintiff is therefore entitled, upon proper application to the court, to the recovery of punitive damages, in an amount to be determined by the court, against Defendants USOC, MSU and DOES 1 through 500.

## THIRD CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (Plaintiff MCKAYLA MARONEY Against Defendants MSU, USOC, and DOES 1 through 500)

95.     Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

///

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-32-

**COMPLAINT FOR DAMAGES**

96.     Defendants MSU, USOC, and DOES 1 through 500's conduct toward Plaintiff, as described herein, was outrageous and extreme.

97.     A reasonable person would not expect or tolerate Defendants MSU, USOC and DOES 1 through 500 putting NASSAR in positions of authority at USAG, USOC, or DOES 1 through 500, which enabled NASSAR to have access to minors including Plaintiff MCKAYLA MARONEY, so that he could commit wrongful sexual acts with her, including the conduct described herein above. Plaintiff had great trust, faith and confidence in in Defendants MSU, USOC and DOES 1 through 500, which, by virtue of NASSAR and Defendants MSU, USOC and DOES 1 through 500's wrongful conduct, turned to fear.

98.     Moreover, by failing to report NASSAR or honor any of their legal reporting obligations and by failing to promptly notify the parents of Plaintiff MCKAYLA MARONEY of the abuse of their daughter, Defendants MSU, USOC and DOES 1 through 500 knew that Plaintiff would be directly harmed. Under the holding in *Phyllis P.* case, a special relationship and a duty to notify the parents of Plaintiff was stated. Such duty being independent of any duty Defendants MSU, USOC and DOES 1 through 500 owed to Plaintiff MCKAYLA MARONEY and is a direct duty owed to the Plaintiff's parents and was thereby created with Plaintiff's parents, whereby Plaintiff's parents are intended or direct victims of Defendants MSU, USOC and DOES 1 through 500 failures and can recover for any emotional distress proximately caused thereby. Specifically, Defendants MSU, USOC and DOES 1 through 500 had knowledge of NASSAR's dangerous propensities to sexually abuse children, yet concealed and failed to disclose to Plaintiff MCKAYLA MARONEY this information.

99.     A reasonable person would not expect or tolerate Defendants MSU, USOC and DOES 1 through 500 to be incapable of supervising and preventing employees of Defendants MSU, USOC and DOES 1 through 500, including NASSAAR, from committing wrongful sexual acts with minor gymnasts including Plaintiff MCKAYLA MARONEY, or to properly supervise NASSAR to prevent such abuse from occurring, or to promptly notify parents or authorities.

///

///

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-33-
**COMPLAINT FOR DAMAGES**

100.   Defendants MSU, USOC and DOES 1 through 500's conduct described herein was intentional and malicious and done for the purpose of causing, or with the substantial certainty that it would cause Plaintiff MCKAYLA MARONEY and her parents, to suffer humiliation, mental anguish and emotional and physical distress.

101.   As a result of the above-described conduct, Plaintiff suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; have suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

102.   In subjecting Plaintiff to the wrongful treatment herein described, Defendants MSU, USOC and DOES 1 through 500 acted willfully and maliciously with the intent to harm Plaintiff MCKAYLA MARONEY, and in conscious disregard of Plaintiff's rights, so as to constitute malice and oppression under California *Civil Code* section 3294. Plaintiff is therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendants MSU, USOC and DOES 1 through 500, in a sum to be shown according to proof.

**FOURTH CAUSE OF ACTION**
**UNFAIR BUSINESS PRACTICES (*BUSINESS & PROFESSIONS CODE* §17200)**
**(Plaintiff MCKAYLA MARONEY Against Defendants MSU, USOC, and DOES 1 through 500)**

103.   Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

104.   Plaintiff is informed and believes and on that basis, alleges that Defendants USOC, USAG, and DOES 1 through 500 have engaged in unlawful, unfair and deceptive business practices including allowing NASSAR to engage in repeated harassment of participants and members, including Plaintiff MCKAYLA MARONEY, and failing to take all reasonable steps to prevent harassment and abuse from occurring. The unlawful, unfair and deceptive business practices also included failing to adequately investigate, vet, and evaluate individuals for employment with Defendants MSU, USOC, and DOES 1 through 500, refusing to design,

MANLY, STEWART & FINALDI
19100 Von Karman Ave, Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-34-
**COMPLAINT FOR DAMAGES**

implement, and oversee policies regarding sexual harassment and abuse of children in a reasonable manner that is customary in similar educational environments. Plaintiff is informed and believes and on that basis alleges that Defendants MSU, USOC, and DOES 1 through 500 have engaged in unlawful, unfair and deceptive business practices including concealing sexual harassment, abuse and/or molestation claims by participants and members, such as Plaintiff MCKAYLA MARONEY, so as to retain other participants and members within USAG, Defendants USOC, and USOC who were not apprised of such illicit sexual misconduct by NASSAR.

105.   Plaintiff is informed and believes, and on that basis alleges that Defendants MSU, USOC and DOES 1 through 500 engaged in a common scheme, arrangement or plan to actively conceal allegations against sexual abusers who were employees, agents, members, and/or participants at USAG, Defendants MSU, USOC, DOES 1 through 500, such that Defendants MSU, USOC and DOES 1 through 500 could maintain their public image, and avoid detection of such abuse and abusers. Plaintiff is informed and believes and thereon alleges that Defendants MSU, USOC and DOES 1 through 500 actively concealed these allegations, such that Defendants MSU, USOC and DOES 1 through 500 would be insulated from public scrutiny, governmental oversight, and/or investigation from various law enforcement agencies, all done in order to maintain the false sense of safety for participants and their families and to perpetuate the program financially.

106.   By engaging in unlawful, unfair and deceptive business practices, Defendants MSU, USOC, and DOES 1 through 500 benefitted financially to the detriment of its competitors, who had to comply with the law.

107.   Unless restrained, Defendants MSU, USOC, and DOES 1 through 500 will continue to engage in the unfair acts and business practices described above, resulting in great and irreparable harm to Plaintiff and/or other similarly situated participants and members.

108.   Plaintiff seeks restitution for all amounts improperly obtained by Defendants MSU, USOC, and DOES 1 through 500 through the use of the above-mentioned unlawful business practices, as well as the disgorgement of all ill-gotten gains and restitution on behalf of Plaintiff and all other similarly situated participants and members who were also subjected to Defendant's illegal and unfair business practices.

109.    Pursuant to section 17203 of the California *Business and Professions Code* and available equitable powers, Plaintiff is entitled to a preliminary and permanent injunction, enjoining Defendants MSU, USOC, and DOES 1 through 500 from continuing the unlawful and unfair business practices described above. Further, Plaintiff seeks the appointment of a court monitor to enforce its orders regarding client safety. In addition, Plaintiff is entitled to recover reasonable attorneys' fees pursuant to the California *Business and Professions Code* and section 1021.5 of the *California Code of Civil Procedure*.

### FIFTH CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY
### (Plaintiff MCKAYLA MARONEY Against Defendants MSU, USOC, and DOES 1 through 500)

110.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

111.    Defendants MSU, USOC and DOES 1 through 500, as childcare custodians representing that they would keep Plaintiff MCKAYLA MARONEY safe, were in a fiduciary relationship with Plaintiff MCKAYLA MARONEY, owing her a special duty of due care. Defendants MSU, USOC and DOES 1 through 500 are mandated reporters, or organizations required to comply with Mandated Reporting laws, with respect to claims of child abuse and child safety.

112.    Moreover, Defendants MSU, USOC and DOES 1 through 500 owed Plaintiff MCKAYLA MARONEY a statutory, common law and constitutional duty to protect her and guarantee her safety while in their custody, care, and control.

113.    The Defendants MSU, USOC and DOES 1 through 500 also owed a special duty to MCKAYLA MARONEY's parents. As direct victims for failure to notify of abuse of their minor child (*See Phyllis P. v. Claremont Unified School District*, 183 Cal. App. 3d at 1193) which held that a school district had a special relationship with a parent because the parent was the "real and foreseeable" victim of the defendants' negligent conduct. Direct victims may bring claims where there was a negligent breach of a duty arising out of a preexisting relationship. Any breach committed by the Defendants MSU, USOC and DOES 1 through 500 violates this special relationship and duty owed to Plaintiff MCKAYLA MARONEY's parents.

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

114.   Defendants MSU, USOC and DOES 1 through 500 breached their fiduciary duty by failing to properly supervise NASSAR and take appropriate steps to prevent the lewd and lascivious conduct perpetrated by NASSAR against MCKAYLA MARONEY. Defendants MSU, USOC and DOES 1 through 500 also failed to report NASSAR pursuant to USOC and USAG policy. Defendants MSU, USOC and DOES 1 through 500 also failed to implement or follow appropriate policies and procedures to protect minors, including MCKAYLA MARONEY. In addition, Defendants MSU, USOC and DOES 1 through 500 failed to report NASSAR's abuse or promptly notify MCKAYLA MARONEY's parents.

115.   The employees, servants, agents, volunteers or other representatives of Defendants MSU, USOC and DOES 1 through 500, respectively, willfully and intentionally ignored behavior in NASSAR and complaints against NASSAR that they should have reported due to their responsibility as mandated reporters.

116.   As a result of the above-described conduct, Plaintiff suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has suffered and continues to suffer and were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

117.   In subjecting Plaintiff to the wrongful treatment herein described, Defendants MSU, USOC and DOES 1 through 500 acted willfully and maliciously with the intent to harm Plaintiff, and in conscious disregard of Plaintiff's rights, so as to constitute malice and oppression under California *Civil Code* section 3294. Plaintiff is therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendants MSU, USOC and DOES 1 through 500, in a sum to be shown according to proof.

///

///

///

MANLY, STEWART & FINALDI
19100 Von Karman Ave, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

-37-
**COMPLAINT FOR DAMAGES**

### SIXTH CAUSE OF ACTION
### CONSTRUCTIVE FRAUD
### (Plaintiff MCKAYLA MARONEY Against Defendants MSU, USOC, and DOES 1 through 500)

118.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

119.    By holding NASSAR out as an agent of Defendants MSU, USOC and DOES 1 through 500, and by allowing him to undertake the physical care and athletic training of minor children such as MCKAYLA MARONEY, Defendants MSU, USOC and DOES 1 through 500 entered into a confidential, fiduciary, and special relationship with Plaintiff.

120.    By holding themselves out as professional organizations for woman's gymnastics, undertaking to select and train national gymnastics teams, enforcing policies, rules, and procedures for gymnasts' safety and facilitating competition both nationally and internationally of MCKAYLA MARONEY and other minor team participants and members, Defendants MSU, USOC and DOES 1 through 500 entered into a confidential, fiduciary and special relationship with Plaintiff and other minor gymnasts (as well as their families).

121.    Defendants MSU, USOC and DOES 1 through 500 breached their confidential, fiduciary duty and special duties to Plaintiff by the wrongful and negligent conduct described above and incorporated into this cause of action, and in so doing, gained an advantage over Plaintiff in matters relating to Plaintiff's safety, security and health. In particular, in breaching such duties as alleged, Defendants MSU, USOC and DOES 1 through 500 were able to sustain their status as institutions of high moral repute, and preserve their reputation, all at the expense of Plaintiff's further injury and in violation of Defendants MSU, USOC and DOES 1 through 500's mandatory duties.

122.    By virtue of their confidential, fiduciary and special relationship with Plaintiff, Defendants MSU, USOC and DOES 1 through 500 owed Plaintiff a duty to:

a.      Investigate or otherwise confirm or deny such claims of sexual abuse;

b.      Reveal such facts to Plaintiff, the gymnastics community, the community at large, and law enforcement agencies;

c.      Refuse to place NASSAR and other molesters in positions of trust and authority within Defendants MSU, USOC and DOES 1 through 500's institutions;

MANLY, STEWART & FINALDI
19100 Von Karman Ave, Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-38-
**COMPLAINT FOR DAMAGES**

MANLY, STEWART & FINALDI
19100 Von Karman Ave. Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

d.    Refuse to hold out NASSAR and other molesters to the public, the community, minors, parents and law enforcement agencies as being in good standing and, trustworthy in keeping with him and his position as a team physician and authority figure;

e.    Refuse to assign NASSAR and other molesters to positions of power within Defendants MSU, USOC and DOES 1 through 500 and over minors; and

f.    Disclose to Plaintiff, the public, the school community, minors, and law enforcement agencies the wrongful, tortious, and sexually exploitive acts that NASSAR had engaged in with children.

123.   Defendants MSU, USOC and DOES 1 through 500's breach of their respective duties included:

a.    Not making reasonable investigations of NASSAR;

b.    Issuing no warnings about NASSAR;

c.    Permitting NASSAR to routinely be alone with and in control of minors, unsupervised;

d.    Not adopting a policy to prevent NASSAR from routinely having minors and participants and members in his unsupervised control;

e.    Making no reports of any allegations of NASSAR's abuse of participants and members, or of minors prior to or during his employment and/or agency at Defendants MSU, USOC and DOES 1 through 500; and

f.    Assigning and continuing to assign NASSAR to duties which placed him in positions of authority and trust over minors, positions in which NASSAR could easily isolate and sexually abuse minors.

124.   At the time that Defendants MSU, USOC and DOES 1 through 500 engaged in such suppression and concealment of acts, such acts were done for the purpose of causing Plaintiff to forbear on her rights.

125.   Defendants MSU, USOC and DOES 1 through 500's misconduct did reasonably cause Plaintiff to forbear on her rights.

126.   The misrepresentations, suppressions and concealment of facts by Defendants MSU, USOC and DOES 1 through 500 were intended to and were likely to mislead Plaintiff and others to believe that Defendants MSU, USOC and DOES 1 through 500 had no knowledge of any charges, claims or investigations against NASSAR, or that there were no other charges, claims or investigations of unlawful or sexual misconduct against NASSAR or others and that there was no need for them to take further action or precaution.

///

-39-

**COMPLAINT FOR DAMAGES**

1     127.    The misrepresentations, suppressions and concealment of facts by Defendants

2    MSU, USOC and DOES 1 through 500 was likely to mislead Plaintiff and others to believe that

3    Defendants MSU, USOC and DOES 1 through 500 had no knowledge of the fact that NASSAR

4    was a molester, and was known to commit wrongful sexual acts with minors, including with

5    MCKAYLA MARONEY.

6    128.    Defendants MSU, USOC and DOES 1 through 500 knew or should have known at

7    the time they suppressed and concealed the true facts regarding others' sexual molestations, that

8    the resulting impressions were misleading.

9    129.    Defendants MSU, USOC and DOES 1 through 500 suppressed and concealed the

10   true facts regarding NASSAR with the purpose of: preventing Plaintiff, and others, from learning

11   that NASSAR and others had been and were continuing to sexually harass, molest and abuse

12   minors and others under NASSAR's and Defendants MSU, USOC and DOES 1 through 500's

13   control, direction, and guidance, with complete impunity; inducing people, including MCKAYLA

14   MARONEY and other benefactors and donors to participate and financially support Defendants

15   MSU, USOC and DOES 1 through 500; MSU, USOC and DOES 1 through 500's program and

16   other enterprises of Defendants MSU, USOC and DOES 1 through 500; preventing further reports

17   and outside investigations into NASSAR and Defendants MSU, USOC and DOES 1 through 500's

18   conduct; preventing discovery of Defendants MSU, USOC and DOES 1 through 500's own

19   conduct; avoiding damage to the reputations of Defendants MSU, USOC and DOES 1 through

20   500; protecting Defendants MSU, USOC and DOES 1 through 500's power and status in the

21   community and the gymnastics community; avoiding damage to the reputation of Defendants

22   MSU, USOC and DOES 1 through 500, or Defendants MSU, USOC and DOES 1 through 500's

23   institutions; and avoiding the civil and criminal liability of Defendants MSU, USOC and DOES 1

24   through 500, of NASSAR, and of others.

25   130.    At all times mentioned herein, Defendants MSU, USOC and DOES 1 through 500,

26   with knowledge of the tortious nature of their own and NASSAR's conduct, knowingly conspired

27   and gave each other substantial assistance to perpetrate the misrepresentations, fraud and deceit

28   alleged herein—covering up the past allegations of sexual misconduct lodged against NASSAR,

MANLY, STEWART & FINALDI
19100 Von Karman Ave, Suite 800
Irvine, California 92612
Telephone (949) 252-9990

-40-
**COMPLAINT FOR DAMAGES**

1 | and allowing NASSAR to remain in his position as a team physician so they could maintain their

2 | reputations and continue with their positions within the organization.

3 |     131.    The Plaintiff and others were misled by Defendants MSU, USOC and DOES 1

4 | through 500's suppressions and concealment of facts, and in reliance thereon, were induced to act

5 | or induced not to act, exactly as intended by Defendants MSU, USOC and DOES 1 through 500.

6 | Specifically, Plaintiff were induced to believe that there were no allegations of criminal or sexual

7 | abuse against NASSAR and that he was safe to be around children. Had Plaintiff known the true

8 | facts about NASSAR, they would have not participated further in activities of NASSAR, or

9 | continued to financially support Defendants MSU, USOC and DOES 1 through 500's activities.

10 | They would have reported the matters to the proper authorities, to other minor participants and

11 | members and their parents so as to prevent future recurrences; they would not have allowed

12 | children, including the Plaintiff, to be alone with, or have any relationship with NASSAR; they

13 | would not have allowed children, including the Plaintiff, to attend or be under the control of

14 | Defendants MSU, USOC and DOES 1 through 500; they would have undertaken their own

15 | investigations which would have led to discovery of the true facts; and they would have sought

16 | psychological counseling for the Plaintiff, and for other children molested and abused by

17 | NASSAR.

18 |     132.    By giving NASSAR the position of team physician, Defendants MSU, USOC and

19 | DOES 1 through 500 impliedly represented that NASSAR was safe and morally fit to give children

20 | care and provide osteopathic adjustments.

21 |     133.    When Defendants MSU, USOC and DOES 1 through 500 made these affirmative

22 | or implied representations and non-disclosures of material facts, Defendants MSU, USOC and

23 | DOES 1 through 500 knew or should have known that the facts were otherwise. Defendants MSU,

24 | USOC and DOES 1 through 500 knowingly and intentionally suppressed the material facts that

25 | NASSAR had on numerous, prior occasions sexually, physically, and mentally abused minors and

26 | participants and members of Defendants MSU, USOC and DOES 1 through 500, including the

27 | Plaintiff, and knew of or learned of conduct, or should have known of conduct by NASSAR which

28 | placed Defendants MSU, USOC and DOES 1 through 500 on notice that NASSAR had previously

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9900

-41-

**COMPLAINT FOR DAMAGES**

been suspected of felonies, including unlawful sexual conduct with minors, and was likely abusing

children.

134.   Because of Plaintiff's position on the outside of these organizations, and because

of the status of NASSAR as a trusted, authority figure to Plaintiff and her family, MCKAYLA

MARONEY was vulnerable to NASSAR and the representations of Defendants MSU, USOC and

DOES 1 through 500, both express and implied. NASSAR sought the Plaintiff out, and was

empowered by and accepted MCKAYLA MARONEY's vulnerability. Plaintiff's vulnerability

also prevented her from effectively protecting herself from the sexual advances of NASSAR.

135.   Defendants MSU, USOC and DOES 1 through 500 had the duty to obtain and

disclose information relating to sexual misconduct of NASSAR.

136.   Defendants MSU, USOC and DOES 1 through 500 misrepresented, concealed or

failed to disclose information relating to sexual misconduct of NASSAR.

137.   Defendants MSU, USOC and DOES 1 through 500 knew that they had

misrepresented, concealed or failed to disclose information related to sexual misconduct of

NASSAR.

138.   Plaintiff justifiably relied upon Defendants MSU, USOC and DOES 1 through 500

for information relating to sexual misconduct of NASSAR.

139.   Defendants MSU, USOC and DOES 1 through 500, in concert with each other and

with the intent to conceal and defraud, conspired and came to a meeting of the minds whereby they

would misrepresent, conceal or fail to disclose information relating to the sexual misconduct of

NASSAR, the inability of Defendants MSU, USOC and DOES 1 through 500 to supervise or stop

NASSAR from sexually harassing, molesting and abusing MCKAYLA MARONEY, and their

own failure to properly investigate, supervise and monitor his conduct with minor participants and

members.

140.   By so concealing, Defendants MSU, USOC and DOES 1 through 500 committed

at least one act in furtherance of the conspiracy.

141.   As a result of the above-described conduct, Plaintiff has suffered and continues to

suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional

**COMPLAINT FOR DAMAGES**

MANLY, STEWART & FINALDI
19100 Von Karman Ave Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

142.   In addition, when Plaintiff finally discovered the fraud of Defendants MSU, USOC and DOES 1 through 500, and continuing thereafter, Plaintiff experienced recurrences of the above-described injuries. Plaintiff experienced extreme and severe mental anguish and emotional distress that Plaintiff had been the victim of Defendants MSU, USOC and DOES 1 through 500's fraud; that Plaintiff had not been able to help other minors being molested because of the fraud, and that Plaintiff had not been able, because of the fraud, to receive timely medical treatment needed to deal with the problems Plaintiff has suffered and continues to suffer as a result of the sexual harassment, molestation and abuse of MCKAYLA MARONEY.

143.   In subjecting MCKAYLA MARONEY to the wrongful treatment herein described, Defendants MSU, USOC and DOES 1 through 500 acted willfully and maliciously with the intent to harm Plaintiff, and in conscious disregard of Plaintiff's rights, so as to constitute malice and/or oppression under California *Civil Code* section 3294. Plaintiff is informed, and on that basis, allege that these willful, malicious, and/or oppressive acts, as alleged herein above, were ratified by the officers, directors, and/or managing agents of these Defendants. Plaintiff is therefore entitled to recover punitive damages, in an amount to be determined by the court, against Defendants MSU, USOC and DOES 1 through 500.

## SEVENTH CAUSE OF ACTION
### NEGLIGENCE
### (Plaintiff MCKAYLA MARONEY Against Defendants MSU, USOC, and DOES 1 through 500)

144.   Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

145.   Prior to and after the first incident of the Perpetrator's (NASSAR) sexual harassment, molestation and abuse of Plaintiff, through the present, Defendants MSU, USOC and

///

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-43-

1    DOES 1 through 500, knew and/or should have known that the Perpetrator (NASSAR) had and

2    was capable of sexually, physically, and mentally abusing and harassing Plaintiff or other victims.

3         146.    Defendants MSU, USOC and DOES 1 through 500 and each of them had special

4    duties to protect the minor Plaintiff and the other participants and members, when such minors

5    were entrusted to Defendants MSU, USOC and DOES 1 through 500's care by their parents.

6    Plaintiff's care, welfare and physical custody was entrusted to Defendants MSU, USOC and DOES

7    1 through 500. Defendants MSU, USOC and DOES 1 through 500 voluntarily accepted the

8    entrusted care of Plaintiff. As such, Defendants MSU, USOC and DOES 1 through 500 owed

9    Plaintiff, a minor child, a special duty of care that adults dealing with children owe to protect them

10   from harm. The duty to protect and warn arose from the special, trusting, confidential, and

11   fiduciary relationship between Defendants MSU, USOC and DOES 1 through 500 and Plaintiff.

12        147.    Defendants MSU, USOC and DOES 1 through 500 breached their duties of care to

13   the minor Plaintiff by allowing the Perpetrator (NASSAR) to come into contact with the minor

14   Plaintiff and other participants and members, without supervision; by failing to adequately hire,

15   supervise and retain the Perpetrator (NASSAR) whom they permitted and enabled to have access

16   to Plaintiff; by concealing from Plaintiff, her family, and law enforcement that the Perpetrator

17   (NASSAR) was sexually harassing, molesting and abusing minors; and by holding the Perpetrator

18   (NASSAR) out to Plaintiff and her family as being of high moral and ethical repute, in good

19   standing and trustworthy.

20        148.    Defendants MSU, USOC and DOES 1 through 500 breached their duties to Plaintiff

21   by failing to investigate or otherwise confirm or deny such facts of sexual abuse by the Perpetrator

22   (NASSAR), failing to reveal such facts to Plaintiff, her parents, the community and law

23   enforcement agencies, and by placing the Perpetrator (NASSAR) into a position of trust and

24   authority, holding him out to Plaintiff, her parents, and the public as being in good standing and

25   trustworthy.

26        149.    Defendants MSU, USOC and DOES 1 through 500 breached their duty to Plaintiff

27   by failing to adequately monitor and supervise the Perpetrator (NASSAR) and failing to prevent

28   the Perpetrator (NASSAR) from committing wrongful sexual acts with minors including Plaintiff.

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-44-

**COMPLAINT FOR DAMAGES**

Defendants MSU, USOC and DOES 1 through 500's voluminous past records of sexual misconduct by the Perpetrator (NASSAR) caused Defendants MSU, USOC and DOES 1 through 500 to know, or gave them information where they should have known, of the Perpetrator's (NASSAR) incapacity to serve as a team physician, providing for the physical care of minor females.

150.    As a result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

### EIGHTH CAUSE OF ACTION
### NEGLIGENT SUPERVISION
### (Plaintiff MCKAYLA MARONEY Against Defendants MSU, USOC, and DOES 1 through 500)

151.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

152.    By virtue of Plaintiff's special relationship with Defendants MSU, USOC and DOES 1 through 500, and Defendants MSU, USOC and DOES 1 through 500's relation to the Perpetrator (NASSAR), Defendants MSU, USOC and DOES 1 through 500 owed Plaintiff a duty to provide reasonable supervision of the Perpetrator (NASSAR), to use reasonable care in investigating the Perpetrator's (NASSAR) background, and to provide adequate warning to Plaintiff, Plaintiff's family, and minor participants and members of the Perpetrator's (NASSAR) dangerous propensities and unfitness. As organizations and individuals responsible for, and entrusted with, the welfare of minor children, Defendants MSU, USOC and DOES 1 through 500 had a duty to protect, supervise, and monitor both the Plaintiff from being preyed upon by sexual predators, and to supervise and monitor the Perpetrator (NASSAR) such that he would not be placed in seclusion with minor children, including the Plaintiff.

///

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-45-
**COMPLAINT FOR DAMAGES**

153.    As representatives of Defendants MSU, USOC and DOES 1 through 500, where many of the participants and members thereof are vulnerable minors entrusted to these Defendants MSU, USOC and DOES 1 through 500, these Defendants MSU, USOC and DOES 1 through 500's agents expressly and implicitly represented that team physicians and staff, including the Perpetrator (NASSAR), were not a sexual threat to children and others who would fall under the Perpetrator's (NASSAR) influence, control, direction, and care.

154.    Defendants MSU, USOC and DOES 1 through 500, by and through their respective agents, servants and employees, knew or should have known of the Perpetrator's (NASSAR) dangerous and exploitive propensities and that the Perpetrator (NASSAR) was an unfit agent. Despite such knowledge, Defendants MSU, USOC and DOES 1 through 500 negligently failed to supervise the Perpetrator (NASSAR) in his position of trust and authority as a team physician and authority figure over children, where he was able to commit wrongful acts of sexual misconduct against Plaintiff. Defendants MSU, USOC and DOES 1 through 500 failed to provide reasonable supervision of the Perpetrator (NASSAR), failed to use reasonable care in investigating the Perpetrator (NASSAR), and failed to provide adequate warning to Plaintiff and Plaintiff's family of the Perpetrator's (NASSAR) dangerous propensities and unfitness. Defendants MSU, USOC and DOES 1 through 500 further failed to take reasonable steps to ensure the safety of minors, including Plaintiff, from sexual harassment, molestation, and abuse.

155.    At no time during the periods of time alleged did Defendants MSU, USOC and DOES 1 through 500 have in place a reasonable system or procedure to investigate, supervise and monitor the team physician or staff, including the Perpetrator (NASSAR), to prevent pre-sexual grooming and sexual harassment, molestation and abuse of children, nor did they implement a system or procedure to oversee or monitor conduct toward minors and others in Defendants MSU, USOC and DOES 1 through 500's care.

156.    Defendants MSU, USOC and DOES 1 through 500 were aware or should have been aware of how vulnerable children were to sexual harassment, molestation and abuse by teachers and other persons of authority within Defendants MSU, USOC and DOES 1 through 500's entities.

///

MANLY, STEWART & FINALDI
19100 Von Karman Ave, Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

**COMPLAINT FOR DAMAGES**

157.   Defendants MSU, USOC and DOES 1 through 500 were put on notice, knew and/or should have known that the Perpetrator (NASSAR) had previously engaged and was continuing to engage in unlawful sexual conduct with minors, and had committed other felonies, for his own personal sexual gratification, and that it was foreseeable that he was engaging, or would engage in illicit sexual activities with Plaintiff, and others, under the cloak of the authority, confidence, and trust, bestowed upon him through Defendants MSU, USOC and DOES 1 through 500.

158.   Defendants MSU, USOC and DOES 1 through 500 were placed on actual or constructive notice that the Perpetrator (NASSAR) had molested other minors and participants and members during his employment with Defendants MSU, USOC and DOES 1 through 500. Defendants MSU, USOC and DOES 1 through 500 were informed of molestations of minors committed by the Perpetrator (NASSAR) prior to Plaintiff's sexual abuse, and of conduct by the Perpetrator (NASSAR) that would put a reasonable person on notice of such propensity to molest and abuse children.

159.   Even though Defendants MSU, USOC and DOES 1 through 500 knew or should have known of these illicit sexual activities by the Perpetrator (NASSAR), Defendants MSU, USOC and DOES 1 through 500 did not reasonably investigate, supervise or monitor the Perpetrator (NASSAR) to ensure the safety of the minor participants and members.

160.   Defendants MSU, USOC and DOES 1 through 500's conduct was a breach of their duties to Plaintiff.

161.   Defendants MSU, USOC and DOES 1 through 500, and each of them, breached their duty to Plaintiff by, *inter alia*, by failing to adequately monitor and supervise the Perpetrator (NASSAR) and stop the Perpetrator (NASSAR) from committing wrongful sexual acts with minors including Plaintiff.

162.   As a result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain

MANLY, STEWART & FINALDI
19100 Von Karman Ave, Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-47-

**COMPLAINT FOR DAMAGES**

1    loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for

2    medical and psychological treatment, therapy, and counseling.

3    **NEGLIGENCE *PER SE*-CONDUCT IN VIOLATION OF MANDATED REPORTING
              LAWS**

4        163.    Under applicable law, Defendants MSU, USOC and DOES 1 through 500, by and

5    through their employees and agents, were child care custodians and were under a duty to report

6    known or suspected incidents of sexual molestation or abuse of minors to a child protective agency,

7    and not to impede the filing of any such report.

8        164.    Defendants MSU, USOC and DOES 1 through 500 knew or should have known

9    that their team physician, the Perpetrator (NASSAR), and other staff of Defendants MSU, USOC

10    and DOES 1 through 500, had sexually molested, abused or caused touching, battery, harm, and/or

11    other injuries to minors, including Plaintiff, giving rise to a duty to report such conduct.

12        165.    Defendants MSU, USOC and DOES 1 through 500 knew, or should have known,

13    in the exercise of reasonable diligence, that an undue risk to minors, including Plaintiff, existed

14    because Defendants MSU, USOC and DOES 1 through 500 did not comply with California's

15    mandatory reporting requirements.

16        166.    By failing to report the continuing molestations and abuse by the Perpetrator

17    (NASSAR), which Defendants MSU, USOC and DOES 1 through 500 knew or should have

18    known about, and by ignoring the fulfillment of the mandated compliance with the reporting

19    requirements, Defendants MSU, USOC and DOES 1 through 500 created the risk and danger

20    contemplated by the applicable mandated reporting laws, and as a result, unreasonably and

21    wrongfully exposed Plaintiff and other minors to sexual molestation and abuse.

22        167.    Plaintiff was a member of the class of persons for whose protection applicable

23    mandated reporting laws were specifically adopted to protect.

24        168.    Had Defendants MSU, USOC and DOES 1 through 500 adequately reported the

25    molestation of Plaintiff and other minors as required by applicable mandated reporting laws,

26    further harm to Plaintiff and other minors would have been avoided.

27        169.    As a proximate result of Defendants MSU, USOC and DOES 1 through 500's

28    failure to follow the mandatory reporting requirements, Defendants MSU, USOC and DOES 1

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

through 500 wrongfully denied Plaintiff and other minors the intervention of child protection services. Such public agencies would have changed the then-existing arrangements and conditions that provided the access and opportunities for the molestation of Plaintiff by the Perpetrator (NASSAR).

170.    The physical, mental, and emotional damages and injuries resulting from the sexual molestation of Plaintiff by the Perpetrator (NASSAR), were the type of occurrence and injuries that the applicable mandated reporting laws were designed to prevent.

171.    As a result, Defendants MSU, USOC and DOES 1 through 500's failure to comply with the mandatory reporting requirements constituted a per se breach of Defendants MSU, USOC and DOES 1 through 500's duties to Plaintiff.

172.    Defendants MSU, USOC and DOES 1 through 500, and each of them, breached their duty to Plaintiff by, inter alia, by failing to adequately monitor and supervise the Perpetrator (NASSAR) and stop the Perpetrator (NASSAR) from committing wrongful sexual acts with minors including Plaintiff.

173.    As a result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

### NINTH CAUSE OF ACTION
### NEGLIGENT HIRING/RETENTION
### (Plaintiff MCKAYLA MARONEY Against Defendants MSU, USOC, and DOES 1 through 500)

174.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

175.    By virtue of Plaintiff's special relationship with Defendants MSU, USOC and DOES 1 through 500, and Defendants MSU, USOC and DOES 1 through 500's relation to the Perpetrator (NASSAR), Defendants MSU, USOC and DOES 1 through 500 owed Plaintiff a duty

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-49-

**COMPLAINT FOR DAMAGES**

1    to not hire or retain the Perpetrator (NASSAR), given his dangerous and exploitive propensities,

2    which Defendants MSU, USOC and DOES 1 through 500 knew or should have known about had

3    they engaged in a reasonable, meaningful and adequate investigation of her background prior to

4    her hiring or retaining her in subsequent positions of employment.

5        176.   Defendants MSU, USOC and DOES 1 through 500 expressly and implicitly

6    represented that the team staff, trainers, and team physicians, including the Perpetrator (NASSAR),

7    were not a sexual threat to children and others who would fall under the Perpetrator's (NASSAR)

8    influence, control, direction, and guidance.

9        177.   At no time during the periods of time alleged did Defendants MSU, USOC and

10   DOES 1 through 500 have in place a reasonable system or procedure to investigate, supervise and

11   monitor team staff, trainers, and team physicians, including the Perpetrator (NASSAR), to prevent

12   pre-sexual grooming or sexual harassment, molestation and abuse of children, nor did they

13   implement a system or procedure to oversee or monitor conduct toward minors, participants and

14   members and others in Defendants MSU, USOC and DOES 1 through 500's care.

15       178.   Defendants MSU, USOC and DOES 1 through 500 were aware or should have been

16   aware and understand how vulnerable children were to sexual harassment, molestation and abuse

17   by teachers and other persons of authority within the control of Defendants MSU, USOC and

18   DOES 1 through 500 prior to Plaintiff's sexual abuse by the Perpetrator (NASSAR).

19       179.   Defendants MSU, USOC and DOES 1 through 500 were put on notice, and should

20   have known that the Perpetrator (NASSAR) had previously engaged and continued to engage in

21   unlawful sexual conduct with minors and was committing other felonies, for his own personal

22   gratification, and that it was, or should have known it would have been foreseeable that he was

23   engaging, or would engage in illicit sexual activities with Plaintiff, and others, under the cloak of

24   his authority, confidence, and trust, bestowed upon her through Defendants MSU, USOC and

25   DOES 1 through 500.

26       180.   Defendants MSU, USOC and DOES 1 through 500 were placed on actual or

27   constructive notice that the Perpetrator (NASSAR) had molested or was molesting minors and

28   participants and members, both before his employment within Defendants MSU, USOC and

-50-

**COMPLAINT FOR DAMAGES**

MANLY, STEWART & FINALDI
19100 Von Karman Ave. Suite 800
Irvine, California 92612
Telephone (949) 252-9990

1    DOES 1 through 500, and during that employment. Defendants MSU, USOC and DOES 1 through

2    500 had knowledge of inappropriate conduct and molestations committed by the Perpetrator

3    (NASSAR) before and during his employment, yet chose to allow him to remain unsupervised

4    where she sexually abused Plaintiff.

5        181.    Even though Defendants MSU, USOC and DOES 1 through 500 knew or should

6    have known of these sexually illicit activities by the Perpetrator (NASSAR), Defendants MSU,

7    USOC and DOES 1 through 500 failed to use reasonable care in investigating the Perpetrator

8    (NASSAR) and did nothing to reasonably investigate, supervise or monitor the Perpetrator

9    (NASSAR) to ensure the safety of the minor participants and members.

10       182.    Defendants MSU, USOC and DOES 1 through 500's conduct was a breach of their

11   duties to Plaintiff.

12       183.    As a result of the above-described conduct, Plaintiff has suffered and continues to

13   suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional

14   distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of

15   enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be

16   prevented from performing daily activities and obtaining the full enjoyment of life; will sustain

17   loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for

18   medical and psychological treatment, therapy, and counseling.

19                            **TENTH CAUSE OF ACTION**
                   **NEGLIGENT FAILURE TO WARN, TRAIN, or EDUCATE**
20   **(Plaintiff MCKAYLA MARONEY Against Defendants MSU, USOC, and DOES 1 through**
                                    **500)**
21       184.    Plaintiff re-alleges and incorporates by reference herein each and every allegation

22   contained herein above as though fully set forth and brought in this cause of action.

23       185.    Defendants MSU, USOC and DOES 1 through 500 owed Plaintiff a duty to take

24   reasonable protective measures to protect Plaintiff and other minor participants and members from

25   the risk of childhood sexual harassment, molestation and abuse by the Perpetrator (NASSAR) by

26   properly warning, training or educating Plaintiff and other about how to avoid such a risk.

27       186.    Defendants MSU, USOC and DOES 1 through 500 breached their duty to take

28   reasonable protective measures to protect Plaintiff and other minor participants and members from

MANLY, STEWART & FINALDI
19100 Von Karman Ave Suite 800
Irvine, California 92612
Telephone (949) 252-9990

-51-
**COMPLAINT FOR DAMAGES**

the risk of childhood sexual harassment, molestation and abuse by the Perpetrator (NASSAR), such as the failure to properly warn, train or educate Plaintiff and other minor participants and members about how to avoid such a particular risk that the Perpetrator (NASSAR) posed—of sexual misconduct.

187.    Defendants MSU, USOC and DOES 1 through 500 breached their duty to take reasonable protective measures to protect Plaintiff and other minor participants and members from the risk of childhood sexual harassment, molestation and abuse by the Perpetrator (NASSAR), by failing to supervise and stop employees of Defendants MSU, USOC and DOES 1 through 500, including the Perpetrator (NASSAR), from committing wrongful sexual acts with minors, including Plaintiff.

188.    As a result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## ELEVENTH CAUSE OF ACTION
## DECLARATORY RELIEF
## (Plaintiff MCKAYLA MARONEY Against Defendants USAG and NASSAR)

189.    Plaintiff re-alleges and incorporates by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

190.    Pursuant to *Code of Civil Procedure* §1060, the Plaintiff MCKAYLA MARONEY seeks Declaratory Relief from the enforcement of the illegal, unconscionable and unenforceable contract provisions contained in The Settlement Agreement (hereinafter, "The Agreement").[2] Specifically, Plaintiff's request for determination that the subject provisions of the contract are illegal, unconscionable, or otherwise invalid, is authorized by the plain text of *Code of Civil Procedure* §1060, which provides in relevant part: "[a]ny person interested under a written

_____

[2] Ms. Maroney believes that she has grounds to void the entire Agreement but at this time chooses not to assert that claim, however, she reserves her right to do so.

**COMPLAINT FOR DAMAGES**

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

instrument… or under a contract, or who desires a declaration of his or her rights or duties with respect to another … may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action …in the superior court for a declaration of his or her rights and duties in the premises, including a determination of any question of construction **or validity arising under the instrument or contract.**"[Emphasis Added]. Other than NASSAR and USAG, no other tortfeasors were party to The Agreement or subject to the release or any other provisions of The Agreement.

191. Specifically, the Plaintiff MCKAYLA MARONEY seeks to have the Court sever the confidentiality provision contained in paragraph 8 on page 2 of 4 of The Agreement, which provides:

a. "To the extent permitted by law, the parties agree that they will maintain the strictest confidentiality and will not communicate, make known or divulge to any person any information whatsoever regarding the existence of any claim between the parties, the facts underlying such claim, the terms of this agreement, or even the fact of a settlement including but not limited to the negotiations, the fact that the Agreement exists, and any consideration received except where disclosure is compelled pursuant to legal process or for reporting such purposes to the federal, state or local taxing authorities or to lawyers, accountants engaged for such purposes, or engaged in connection with this Agreement or any dispute existing hereunder, who shall likewise make no disclosures to others. Exception to this agreement shall be disclosures to Claimant's parents, mental health provider, accountants or attorneys. The parties acknowledged and understand that this paragraph prohibits them and their agents and attorneys from disclosing the terms of this settlement Agreement or the fact that this agreement, exists to extended family, friends or others."

192. Paragraph 8 of the SETTLEMENT AGREEMENT is illegal, unconscionable, against public policy, and unenforceable, as it directly violates the spirit and the letter of *Code of Civil Procedure* §1002 (both current and prior versions). As such, the Plaintiff MCKAYLA MARONEY seeks to have this provision declared unenforceable, invalid, and illegal by the Court.

193. Secondly, the Plaintiff MCKAYLA MARONEY seeks to have the Court sever the liquidated damages and arbitration provision contained in Paragraph 9, on page 2 of 4 of The Agreement, which provides:

a. "The parties agree that in the event either party breaches the confidentiality provision set forth in paragraph eight (8), the party seeking to enforce confidentiality shall do so in confidential, binding arbitration before Judge Latin. If successful, the party seeking to enforce confidentiality shall be entitled to liquidated damages in the amount of ten (10) percent of the total

**COMPLAINT FOR DAMAGES**

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

1    settlement proceeds set forth in paragraph one (1) of this Agreement as well as all fees and costs incurred as the prevailing party."

2    194.    Paragraph 9 of The Agreement is illegal, unconscionable, against public policy, and

3    unenforceable, as it directly violates the spirit and the letter of *Code of Civil Procedure* §1002

4    (both current and prior versions). As such, the Plaintiff MCKAYLA MARONEY seeks to have

5    this provision declared unenforceable, invalid, and illegal by the Court.

6    195.    Third, the Plaintiff MCKAYLA MARONEY seeks to have the Court sever the non-

7    disparagement clause contained in Paragraph 10, on page 2 of 4 of The Agreement, which

8    provides:

9       a.   "No party to this Agreement or anyone on either party's behalf shall take
10           any action which is intended, or would reasonably be expected, to harm the
             person or reputation of any other party to this agreement, including but not
11           limited to Claimant, USAG, its directors and officers, current and former
             employees, Bela and Martha Karolyi, and any subcontractors other than
12           Larry Nassar (without violating any of the provisions of paragraph eight (8)
             above), or which would reasonably be expected to lead to unfavorable
13           publicity to either party."

14    196.    Paragraph 10 of The Agreement is illegal, unconscionable, against public policy,

15    and unenforceable, as it directly violates the spirit and the letter of *Code of Civil Procedure* §1002

16    (both current and prior versions). As such, the Plaintiff MCKAYLA MARONEY seeks to have

17    this provision declared unenforceable, invalid, and illegal by the Court.

18    197.    The overriding, predominant and mutual assent of the parties to The Agreement

19    was for the compromise of a claim of Childhood Sexual Abuse in return for sufficient monetary

20    consideration. Paragraphs 8, 9, and 10 are illegal, invalid, and violate public policy, but do not

21    permeate the entirety of The Agreement and are collateral to the underlying purpose of The

22    Agreement.

23    198.    Paragraph 13, on page 3 of 4 of The Agreement, provides that, "[i]n the event any

24    portions of this Agreement shall be deemed void, voidable or unenforceable, the remaining

25    portions shall remain in full force and effect." Considering that the confidentiality provision

26    (paragraph 8) with related arbitration/liquidated damages clause (Paragraph 9) and non-

27    disparagement clause (Paragraph 10) of The Agreement do not permeate or invalidate the entire

28    contract, Paragraphs 8, 9 and 10 of The Agreement should be deemed invalid and severed from

The Agreement, as they are illegal, unconscionable, and violate public policy.

MANLY, STEWART & FINALDI
19100 Von Karman Ave, Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

-54-

**COMPLAINT FOR DAMAGES**

199.   In the action for which Plaintiff MCKAYLA MARONEY's parents (JOHN PCNM DOE and JANE PCNE DOE; Los Angeles Superior Court Case No. BCBC667053) bring suit against Defendant USAG (amongst others), and for which Plaintiff MCKAYLA MARONEY will seek to have related, Plaintiffs JANE PCNE DOE and JOHN PCNM DOE will seek to sever Paragraph 11 on pages 2 and 3 of 4 of The Agreement, which provides:

   a.   "Claimant parents, [JANE PCNE DOE] and [JOHN PCNM DOE], while not "parties" to the Agreement are also bound to the terms set forth in paragraphs eight (8), nine (9) and ten (10) to the same extent as required of all parties to this Agreement. Any breach by Claimant's parents to the terms set forth in paragraphs eight (9), nine (9) and ten (10) shall be treated as if Claimant herself breached and Defendant is entitled to the same rights and remedies outlined in paragraph nine (9) hereinabove."

200.   Paragraph 11 of The Agreement is illegal, unconscionable, against public policy, and unenforceable, as it directly violates the spirit and the letter of *Code of Civil Procedure* §1002 (both current and prior versions). Furthermore, this provision is non-binding and unenforceable as to Plaintiffs JANE PCNE DOE or JOHN PCNM DOE, on the basis that they are not parties to The Agreement, did not sign The Agreement and received no consideration from any of the parties to The Agreement. As such, the Plaintiff MCKAYLA MARONEY seeks to have this provision declared unenforceable, invalid, and illegal by the Court, to the extent she has standing in this matter. Concurrently, Plaintiffs JANE PCNE DOE and JOHN PCNM DOE will be amending the operative Complaint in their action, to challenge these contractual terms on the same grounds.

///
///
///
///
///
///
///
///
///
///

MANLY, STEWART & FINALDI
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone (949) 252-9990

**WHEREFORE**, Plaintiff prays for a jury trial and for judgment against Defendants as follows:

### FOR ALL CAUSES OF ACTION

1.      For past, present and future non-economic damages in an amount to be determined at trial;

2.      For past, present and future special damages, including but not limited to past, present and future lost earnings, economic damages and others, in an amount to be determined at trial.

3.      Any appropriate statutory damages;

4.      For costs of suit;

5.      Punitive damages, according to proof, though not as to the Negligence Causes of Action (Causes of Action 7, 8, 9, and 10);

6.      For interest based on damages, as well as pre-judgment and post-judgment interest as allowed by law;

7.      For attorney's fees pursuant to California *Code of Civil Procedure* sections 1021.5, *et seq.*, or as otherwise allowable by law;

8.      For declaratory and injunctive relief, including but not limited to court supervision of Defendants MSU, USAG, NASSAR, and USOC; and

9.      For such other and further relief as the Court may deem proper.

Dated: December __20_, 2017                    **MANLY, STEWART & FINALDI**

                              By:   *John C. Manly*
                                    JOHN C. MANLY, Esq.
                                    Attorneys for Plaintiff MCKAYLA
                                    MARONEY

MANLY, STEWART & FINALDI
19100 Von Karman Ave. Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

1

## DEMAND FOR JURY TRIAL

2          Plaintiff MCKAYLA MARONEY hereby demands a trial by jury.

3

Dated: December 20, 2017                    **MANLY, STEWART & FINALDI**

4

5                                    By: *John C. Manly*

6                                        JOHN C. MANLY, Esq.
                                        Attorneys for Plaintiff MCKAYLA
7                                        MARONEY

8

9

10

11

MANLY, STEWART & FINALDI
19100 Von Karman Ave, Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-1-
**DEMAND FOR JURY TRIAL**

# EXHIBIT "A"

10-Nov-2005  16:36   From-3172371900       T-172  P.002/010  F-624



# USA GYMNASTICS

October 11, 1999



Mr. William J. Hybl, President
Mr. Dick Schultz, Executive Director
Mr. Scott Blackmun, Deputy Executive Director
and General Counsel
United States Olympic Committee
One Olympic Plaza
Colorado Springs, CO 80909

Dear Bill, Dick and Scott:

I am reluctant, given the extraordinary demands being placed on each of you these days, to bring a matter directly to your attention. Unfortunately, I have concluded that I must. The recent experiences of USA Gymnastics with the USOC's Membership and Credentials Committee has been so troubling for our organization, and for me personally, that I feel compelled to share it with you.

On September 7, our Chair, Sandy Knapp, received a letter signed by Membership and Credentials Chairman, Steve Sobel, informing us that "USAG is not in compliance with National Governing Body and membership requirements." This communication is, in our view, the inevitable result of a fundamentally flawed process. Let me be direct: the professional and volunteer leadership of USA Gymnastics believes that the USOC's Membership and Credentials' audit process is badly broken and, perhaps more importantly, are deeply concerned by the apparent indifference to the welfare of young children manifest in the Committee's actions.

There is much about the accomplishments of USA Gymnastics during the past two decades in which we take great pride. Perhaps nothing gives us a greater sense of satisfaction, however, than our national leadership among sports organizations in attempting to protect young athletes from coming in contact with individuals who are unfit to have the honor of being called "coach". While other organizations have chosen to ignore the problem of child abuse in youth sports (see enclosed copy of recent cover story from the September 13 edition of *Sports Illustrated*), USA Gymnastics has investigated every charge and processed each complaint in an effort to protect the children who put their faith in us. To date we have devoted hundreds of thousands of dollars to this effort.

Pan American Plaza ▪ 201 South Capitol Avenue ▪ Suite 300 ▪ Indianapolis, IN 46225 ▪ Phone: 317–237–5050 ▪ Fax: 317–237–5069

EXHIBIT
7
PENGAD 800-631-6989

18-Nov-2005   15:39   From-3172371000                                          T-172   P.003/010   F-624

Believing this to be an area in which there is no margin for error, USA Gymnastics established its rules and procedures with a single clear priority in mind – serving the best interests of the young people in our sport. In order to do that, we established procedures that allowed the president of USA Gymnastics to suspend immediately (pending a prompt resolution of the underlying allegation) any individual charged with a felony involving a statute designed to protect children (e.g. child molestation, statutory rape, battery or assault against a minor), and further allowed the president to deny or rescind the membership of any individual who was convicted or pleaded guilty to a felony. We believed when we created those rules (and continue to believe today) that our approach was the proper one. The Membership and Credentials Committee disagreed with us.

After extensive discussions and correspondence with representatives of the Committee by me and Sandy Knapp, the matter was referred to Jack Swarbrick and Scott. Following his discussions with Scott, Jack recommended to us that USAG agree to forego our ability to suspend individuals who had been charged with a crime, but retain our ability to deny the privilege of membership where the judicial process had resulted in a felony conviction. This was not a compromise we were thrilled with (it meant that an individual who is arrested for child molestation and freed on bond can go back to the gym and coach the next day), but one we were prepared to live with in the interest of getting the matter behind us. Remarkably, despite the good faith efforts of two people – Scott and Jack – infinitely more qualified to evaluate the situation than any member of the Membership and Credentials Committee, that Committee rejected this approach. What is particularly stunning about the Committee's decision is the nature of its rejection. We did not receive a measured response aimed, for example, at trying to distinguish cases involving a felony conviction where the nexus between the conviction and potential risk to children was tenuous, but rather were told merely that "a hearing must be provided for in all situations and... USAG could not except from the conviction process, and impose an immediate suspension on, those individuals who has been subjected to a prior non-USAG judicial or administrative hearing" (emphasis added).

In hindsight, I suppose we should not have been surprised by the position taken by the Committee. During the now nearly two years these discussions have dragged on, USA Gymnastics has repeatedly been urged by members of the Committee to resolve the problem by conducting bare-bones telephonic hearings immediately upon receipt of a complaint. This exaltation of form over substance is all too typical of the predisposition of this Committee. More importantly, it also ignores the various reasons why such an approach is untenable and poses significant risk to our organization. As the USOC learned in 1994, the intersection between the criminal justice system and the Amateur Sports Act can be an especially treacherous location.

I suspect that if USAG Gymnastics invested additional time and money, we could cobble together some sufficiently muddled amendment to our Bylaws that would satisfy the Membership and Credentials Committee. That is, however, a use of Federation resources I am no longer prepared to allow. Simply stated, we have no intention of dealing further on this matter with representatives of the Membership and Credentials Committee.

We welcome the opportunity to address this matter in other forums acceptable to the three of you, but in inviting that resolution want you to know that we are more resolute than ever in our determination to do whatever it takes to protect the children we serve.

In anticipation of future discussions, let us be absolutely clear about our position. USA Gymnastics has no reluctance to provide hearings to any athlete or professional member in circumstances where hearings are appropriate. In fact, we believe our grievance and member discipline procedures are more refined, and the number of hearings we have conducted in the past ten years is greater, than those of almost any other national governing body. All we want to be certain of here is that 1) we do not have a circumstance where a panel of three volunteers is asked to reconsider and independently evaluate the factual circumstances that give rise to a felony conviction in a court of law of competent jurisdiction in this country; and 2) we do not allow the occasion of a delay in the timing of a hearing (regardless of the legitimate factors which may contribute to that delay) to put any USA Gymnastics' member gymnast in a position where we believe their personal safety to be at risk. From our perspective, any risk is an unacceptable risk when it comes to protecting young athletes from abuse.

While the circumstances of this particular issue have undeniably inflamed the passions of those of us responsible for leading USA Gymnastics, these unhappy circumstances are all too indicative of our experiences with this Committee in recent years. In brief, I believe that this Committee has fundamentally lost its way and ought to be reconstituted or its purpose redefined. What ought to be a positive experience of helping national governing bodies conduct a self-audit designed to make them better organizations has turned into a hyper-technical review of governance documents by individuals whose qualifications to conduct such a review are tenuous at best.

Properly conducted, we believe the Membership and Credentials Committee review could be a positive and productive experience. As the Committee which reviews the core activities of each national governing body, the Membership and Credentials Committee is in a position to serve as a valuable information source for what is and isn't working in our industry. Unfortunately, they do not view that as their mission. So we come to the circumstance we have here. The Membership and Credentials Committee reviews national governing bodies who, regrettably, appear to have chosen to ignore the issue of coaching misconduct (but have acceptable hearing procedures in place) and decrees these governing bodies to be in compliance. Yet the national governing body who has taken the lead in this country in moving to protect its athletes against physical, sexual and emotional abuse, and who has provided its procedures for doing so in great detail, is found to be out of compliance because we refuse to conduct a hearing to determine whether an individual who has been convicted of child molestation ought to be allowed to be a professional member of our association. That is a process and a result that no longer deserves the support of the Olympic family.

Again, my apologies for having to add to your already crowded agendas, but, as I hope you can now appreciate, this is a matter about which we feel passionately. It is a matter that goes to the core of the relationship between the national governing body and its

3

athletes, and so is a matter that ought to be of central importance to the USOC. As USA Gymnastics' experience demonstrates, this is not an issue that can be wished away. The USOC can either position itself as a leader in the protection of young athletes or it can wait until it is forced to deal with the problem under much more difficult circumstances. It is my sincere hope that the USOC will seize the opportunity presented by this dispute to follow the former course of action.

Thank you in advance for you attention to this matter.

Sincerely,

Robert Colarossi

Enclosure

CC:   Sandy Knapp
      Jack Swarbrick
      Michelle Dusserre-Farrell
      Gary Johansen
      Steve Sobel

# EXHIBIT "B"

HOME TO USA TRACK & FIELD, USA PARA TRACK & FIELD, USA RUGBY, USA ARCHERY, USA CYCLING'S BMX, USA PARA TENNIS

## CHULA VISTA
# ELITE ATHLETE TRAINING CENTER

U.S. OLYMPIC AND PARALYMPIC TRAINING SITE, COVERS 155 ACRES OF STATE-OF-THE-ART SPORT VENUES



| TRAIN | DINE | REST | TOU |





## Champions Train Here

Share your favorite Elite Athlete Training Center photo and video memories using #CVEATC



**LOAD MORE**

Choose Your Language

Privacy Policy  — Terms of Use

© ELITE ATHLETE
SERVICES, LLC



2800 Olympic Parkway Chula Vista,
California 91915
(619) 656-
1500  — info@easchulavista.com

# EXHIBIT "C"

[Skip to Content] (#content)

**VELO Sports Center**

# The VELO Sports Center is located on the 125-acre StubHub Center complex in the city of Carson, CA.

The VELO Sports Center is a 100,000 square foot, $15 million specially designed 250-meter indoor wood bicycle racing track. The VELO Sports Center is also a part of StubHub Center's partnership with the USOC as an Official U.S. Olympic Training Site and is a home track to USA Cycling's national track cycling program. The VELO Sports Center hosts training and international competitions for the world's elite cyclists, as well as classes open to the public, at any skill level.

As America's largest indoor velodrome, VELO sports center is committed to the growth of the sport of cycling. Youth, beginner, intermediate, and advanced training programs are available to those curious about cycling or for any aspiring Olympic and World Championship athletes.



(http://www.stubhubcenter.com/stadium-info/venues/velo/calendar)

## Calendar (http://www.stubhubcenter.com/stadium-info/venues/velo/calendar)

More Info (http://www.stubhubcenter.com/stadium-info/venues/velo/calendar)



(http://www.stubhubcenter.com/stadium-info/venues/velo/getting-startedregistration)

### Getting Started + Registration (http://www.stubhubcenter.com/stadium-info/venues /velo/getting-startedregistration)

More Info (http://www.stubhubcenter.com/stadium-info/venues/velo/getting-startedregistration)



(http://www.stubhubcenter.com/stadium-info/venues/velo/membershipsession-description)

## **Membership (http://www.stubhubcenter.com/stadium-info/venues/velo/membershipsession-description)**

More Info (http://www.stubhubcenter.com/stadium-info/venues/velo/membershipsession-description)



(http://www.stubhubcenter.com/stadium-info/venues/velo/special-programming)

## Special Programming (http://www.stubhubcenter.com/stadium-info/venues/velo/special-programming)

More Info (http://www.stubhubcenter.com/stadium-info/venues/velo/special-programming)

- Velo Sports Center Seating Map (http://www.stubhubcenter.com/guest-services/seating-maps/velodrome)
- Racing Information (http://lavelodrome.org/)
- Events (http://www.stubhubcenter.com/velo)
- Contact Us (http://www.stubhubcenter.com/stadium-info/venues/velo/contact-us-1)
- Volunteer (http://www.stubhubcenter.com/stadium-info/venues/velo/volunteer)
- Youth Cycling Program (http://www.stubhubcenter.com/stadium-info/venues/velo/youth-cycling-program)
- Track Records (http://www.stubhubcenter.com/stadium-info/venues/velo/track-records)
- Track Cycling Glossary (http://www.stubhubcenter.com/stadium-info/venues/velo/track-cycling-glossary)

## Getting Here

Enter your Address

## StubHub Center

**18400 Avalon Boulevard**

**Carson, California 90746**

Get Directions

# EXHIBIT "D"



HOME > CAREERS

# Careers

Excellence starts with you. Join the team that embraces the same incredible work ethic you do. More than 375 people from California to Colorado to New York make up the USOC team. People in marketing and sports administration. Nutrition and sport science. These people are here because they want careers. They want to pursue excellence. And they want a little fun.

SPORTS | GAMES | U.S. PARALYMPICS | LA 2028 | SAFE SPORT | NEWS | FOUNDATION | ATHLETES | ABOUT | DONATE | SHOP

USOC CAREERS

NGB CAREERS

HIRING PROCESS

INTERN PROGRAM

MISSION & CULTURE

VOLUNTEER

DIVERSITY & INCLUSION

SIGN UP FOR TEAM USA UPDATES

Governance
Legal
Finance
Privacy Policy
Terms of Use

Resources
Athlete Resources
U.S. Olympic and Paralympic
Blind Usage Guidelines
Team USA Prep Center
Team USA Portal Login

Get Involved
Donate
Careers
Contact Us
Visit Us
Advertising
Olympic Training Centers

©2018 United States Olympic Committee. All Rights Reserved.

# EXHIBIT "E"

Mitchell A. Kamin (Bar No. 202788)
 mkamin@cov.com
Carolyn Kubota (Bar No. 113660)
 ckubota@cov.com
Mark Y. Chen (Bar No. 310450)
 mchen@cov.com
Paulina Slagter (Bar No. 318559)
 pslagter@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: + 1 424-332-4800
Facsimile: + 1 424-332-4749

Udit Sood (Bar No. 308476)
 usood@cov.com
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, California 94111-5356
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091

Attorneys for Defendant
UNITED STATES OLYMPIC COMMITTEE

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| MCKAYLA MARONEY<br><br>              Plaintiff,<br><br>     vs.<br><br>MICHIGAN STATE UNIVERSITY, UNITED STATES OLYMPIC COMMITTEE, USA GYMNASTICS, LARRY NASSAR, AND DOES 1 THROUGH 500<br><br>              Defendants. | Civil Case No.:  2:18-CV-3461<br><br>**NOTICE OF REMOVAL** |

## NOTICE OF REMOVAL

Pursuant to 36 U.S.C. § 220505(b)(9), as well as 28 U.S.C. §§ 1441(a) and 1446, Defendant United States Olympic Committee ("USOC") hereby gives timely notice of the removal of this matter from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California.

## INTRODUCTION

1.      On December 20, 2017, Plaintiff Mckayla Maroney ("Plaintiff") filed a Complaint in the Superior Court of the State of California for the County of Los Angeles against USOC and several other named Defendants, including Michigan State University and USA Gymnastics ("USAG").  A true and correct copy of the Complaint, assigned Case No. BC 687396,[1] is attached as **Exhibit 1.**

2.      Plaintiff purportedly served USOC on April 12, 2018 via personal service.  However, the service was defective because Plaintiff did not serve the Civil Case Cover Sheet Addendum as required by local rules.  *See* Los Angeles Superior Court Local Rule 2.3(a)(1)(E).  Moreover, Plaintiff has not filed a proof of service with the state court.  Nevertheless, for purposes of this Notice of Removal and without waiving challenges to service, USOC assumes that service was effective as of April 12, 2018.

3.      Plaintiff alleges that USOC is liable under Federal and California law for harms caused by Dr. Larry Nassar, who has been convicted for sexually molesting minors while he was serving as a doctor for USAG.  According to the Complaint, USOC was required by the Ted Stevens Amateur Sports Act ("ASA"), 36 U.S.C. §§ 220501, *et seq.*,

---

[1] Counsel for the Plaintiff has filed three other substantially similar lawsuits in California state court on behalf of other plaintiffs.  USOC will concurrently file Notices of Removal in each of those cases in the Central District of California and the Northern District of California.  In accordance with Local Rules 83-1.3.1 and 83-1.4, USOC will coordinate with Plaintiffs' counsel to promptly file a Notice of Related Civil Cases and a Notice of Pendency of Other Actions or Proceedings.

1   to protect Plaintiff from such harm while she was participating in Olympic events. *See,*

2   *e.g.*, Compl., ¶ 9-17. Plaintiff asserts various tort claims based on the same purported

3   failure by USOC to protect Plaintiff.

4        4.     USOC removes this action under 36 U.S.C. § 220505(b)(9). As set forth

5   more fully below, the Complaint's allegations against USOC relate solely to USOC's

6   responsibilities under the ASA. Alternatively, this action is independently removable

7   under 28 U.S.C. §§ 1441(a) and 1446 based on federal question jurisdiction.

8   **I.**    **THIS CASE IS REMOVABLE UNDER THE TED STEVENS AMATEUR**
9           **SPORTS ACT.**

10        5.     The USOC is a federally chartered organization that operates pursuant to

11   the ASA. *See San Francisco Arts & Athletics, Inc. v. USOC*, 483 U.S. 522, 543 (1987).

12   Pursuant to the ASA, USOC may unilaterally remove to federal court any civil action

13   relating to the USOC's responsibilities. *See Exum v. USOC*, 2005 WL 3021953, *1 (D.

14   Colo. 2005) (removing state law claims for breach of contract, fraud, misrepresentation,

15   promissory estoppel, and wrongful termination brought by a contractor). Specifically, the

16   ASA provides that "any civil action brought in a State court against the [USOC] and

17   solely relating to the [USOC's] responsibilities under this Act shall be removed, at the

18   request of the [USOC], to the district court of the United States in the district in which the

19   action was brought, and such district court shall have original jurisdiction over the action

20   without regard to the amount in controversy or citizenship of the parties involved." 36

21   U.S.C. § 220505(b)(9).

22        6.     Here, Plaintiff's claims against USOC all stem from USOC's purported

23   failure to satisfy its responsibilities under the ASA. For example, Plaintiff alleges that,

24   "[u]nder the Ted Stevens Amateur Sports Act . . . Defendant USOC had a mandatory

25   obligation to ensure that before granting NGBs, including USAG, a sanction to host

26   National or International events, that they provide 'proper medical supervision will be

27   provided for athletes who will participate in the competition.'" Compl., ¶ 8 (quoting

28   ASA, § 220525(b)(4)(E)). Likewise, Plaintiff alleges that "USOC was required to ensure

that NGBs, including USAG, ensure that 'proper safety precautions have been taken to protect the personal welfare of the athletics and spectators at the competition.'" Compl., ¶ 15 (quoting ASA, section 220525(b)(4)(F)).  Plaintiff then claims that USOC failed to meet these responsibilities in various ways, including by failing to either promulgate or enforce policies that would have protected Plaintiff from abuse by Dr. Nassar.  *See, e.g.*, Compl, ¶¶ 9-18.

**II.     THIS CASE IS INDEPENDENTLY REMOVABLE UNDER 28 U.S.C. § 1441(a).**

7.     Additionally, removal is also proper under 28 U.S.C. §§ 1441(a) because Plaintiff has alleged a claim arising under federal law.  Compl. ¶ 88-94 (Second Cause of Action based on Masha's Law, 18 U.S.C. §§ 2255, 2423(b), and 2423(c)).  Supplemental jurisdiction is appropriate as to the remaining state law claims because they arise from the same set of facts: Dr. Nassar's sexual abuse of Plaintiff and USOC's purported failure to timely discover and prevent the abuse.

**III.    ALL PROCEDURAL REQUIREMENTS OF REMOVAL ARE SATISFIED.**

8.     This Notice of Removal is timely filed under 28 U.S.C. § 1446(b)(2) and (3); it is filed within thirty (30) days of service of the Complaint on USOC, which occurred on April 12, 2018.  *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 334, 347-48 (1999) (holding that the 30-day removal period begins to run upon formal service of the complaint).

9.     A true and correct copy of the process, pleadings, orders, and other documents served on USOC are attached as **Exhibit 1** (Complaint), and **Exhibit 2** (Summons).  No substantive motions are currently pending in the state court action.

10.     Written notice of the filing of this Notice of Removal shall be promptly served on all parties herein, and a copy of this Notice shall promptly be filed with the clerk in the state court action pursuant to 28 U.S.C. § 1446(d).

11.     Removal under the ASA does not require all defendants to consent to join in the removal.  *See* 28 U.S.C. § 1446(b)(2)(A) (requirement for all defendants to join applies only "[w]hen a civil action is removed solely under section 1441); *see also Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006) (addressing analogous statute permitting federal officers and agencies to remove, and explaining that "[w]hereas all defendants must consent to removal under section 1441 . . . a federal officer or agency defendant can unilaterally remove a case under section 1442."); *Davis v. FSLIC*, 879 F.2d 1288, 1289 (5th Cir. 1989) (parties having an independent statutory right to remove can do so without the joinder of other defendants).

12.     Nevertheless, Defendant Michigan State University consents to removal and joins this Notice of Removal.  Counsel for USOC has reached out to USAG to inquire whether USAG also consents, but USAG has not taken a position.  USOC will notify the Court when it has additional information.  On information and belief, Defendants Larry Nassar and DOES 1 through 500 have not been served with summons. *Destfino v. Reiswig*, 630 F.3d 952, 955 (9th Cir. 2011) (any joinder requirements apply only to defendants who have been properly served).

13.     USOC reserves all defenses, including but not limited to those under Federal Rule of Civil Procedure 12(b), and does not waive said defenses by the filing of this Notice.

WHEREFORE, USOC gives notice that the above action now pending against it in the Superior Court of the State of California for the County of Los Angeles, Case No. BC 687396, is hereby removed from the above-referenced state court to the United States District Court for the Central District of California.

Case 2:18-cv-03461-JLS-KES   Document 31-1   Filed 08/02/18   Page 86 of 97   Page ID
#:498
Case 2:18-cv-03461   Document 1   Filed 04/25/18   Page 6 of 6   Page ID #:6

1

DATED:  April 25, 2018                          COVINGTON & BURLING LLP

2

3

4

5                                                          By:   /s/ Mitchell Kamin
                                                                  Mitchell A. Kamin
6

7                                                          Attorneys for Defendant
                                                           United States Olympic Committee
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL

# EXHIBIT "F"

**Alex Cunny**

| | |
|---|---|
| **From:** | Jolley, David <djolley@cov.com> |
| **Sent:** | Monday, July 30, 2018 6:16 PM |
| **To:** | Vince Finaldi |
| **Cc:** | Alex Cunny; John Manly; frederiksen@manlystewart.com; Rachyl Boer; Kamin, Mitchell A; Kubota, Carolyn; Chen, Mark Y |
| **Subject:** | RE: USOC/Nassar Cases - Federal Court - Request for Deposition Dates |

Mr. Finaldi,

Thank you for your response.  As a result, we will be seeking relief tomorrow from the district courts.

Regards,

**David Jolley**

Covington & Burling LLP
One Front Street, San Francisco, CA 94111-5356
T +1 415 591 7079 | djolley@cov.com
www.cov.com

# COVINGTON

**From:** Vince Finaldi <vfinaldi@manlystewart.com>
**Sent:** Monday, July 30, 2018 10:13 AM
**To:** Jolley, David <djolley@cov.com>
**Cc:** Alex Cunny <acunny@manlystewart.com>; John Manly <jmanly@manlystewart.com>; frederiksen@manlystewart.com; Rachyl Boer <rboer@manlystewart.com>; Kamin, Mitchell A <MKamin@cov.com>; Kubota, Carolyn <ckubota@cov.com>; Chen, Mark Y <MYChen@cov.com>
**Subject:** RE: USOC/Nassar Cases - Federal Court - Request for Deposition Dates

Mr. Jolley,

Do you have a response?

Now that I am back in the office, I would like to follow up on my points from last week with some law on the issue. First, your letter claims that, pursuant Rule 26(d)(1), there must be a court order or stipulation before jurisdictional discovery can proceed. Effectively, that since there has yet to be Rule 26(f) conference, there can be no jurisdictional discovery, absent a court order. (Letter, p. 1). The law states otherwise: "First, there is authority that "[n]o Rule 26(f) [conference], discovery plan or status conference is required in order to conduct discovery for the jurisdictional inquiry." *Myhre v. Seventh-Day Adventist Church Reform Movement American Union Intern. Missionary Soc.* (S.D. Cal. 2014) 298 F.R.D. 633, 639(*citing Cannon v. Fortis Ins. Co.,* No. CIV–07–1145–F, 2007 WL 4246000, at *3, 2007 U.S. Dist. LEXIS 87880, at *8 (W.D.Okla. Nov. 29, 2007).) The case of *Cannon* discusses this issue much further, and ultimately holds that, "It appears to the court that the discovery time requests is limited to the jurisdictional inquiry. No Rule 26(f), discovery plan or status conference is required in order to conduct discovery for the jurisdictional inquiry. The court shall therefore permit Time, as well as HAA (having adopted Time's motion), to conduct the discovery requested by Time in its motion. Both parties shall be given the requested forty-five days to complete the discovery." Ultimately, however, we are talking

about two sides of the same coin. Below will further explain why we chose to serve discovery, instead of filing a motion. The case of *Orchid Biosciences, Inc. v. St. Louis University* (S.D. Cal. 2001) 198 F.R.D. 670, 672 further solidifies this point, as discovery was served, and a motion was filed for protective order; without any concern for no Rule 26(f) conference.

My second point relates to the facts. Your letter essentially reiterates your Motion to Dismiss' sentiment regarding general and specific jurisdiction. While you may find that argument convincing, regarding a federally-chartered corporation responsible for Olympic (and high-level competition) throughout the United States, we don't. The USOC challenges both General and Specific Jurisdiction, despite the fact that it has held competitions in the state of California, is currently working on hosting the 2024 Olympics in California, derives income from California, derives athletes from California, and even operated an Olympic Training Center in the State of California for about two decades. Regardless, the USOC has held Olympics, Olympic Trials, and Pan American games in the state of California. This is more than sufficient to be "colorable" showing to get jurisdictional discovery. And I suppose we will just have to agree to disagree on the point.

My third point relates to the procedural circumstances. You are correct in stating that we were planning on filing a Motion for Jurisdictional Discovery, based on our July 13, 2018 call. However, upon receiving your Motions, we say that you had set hearings for the Motions in September, affording little to no time for a jurisdictional discovery motion to be filed, heard, and then discovery conducted, once it was granted, prior to the Motion. Since that time, we have pushed the Motions to Dismiss out a few weeks. Secondarily, as you well know, the Coordinated Matter in Orange County is proceeding, and jurisdictional depositions are proceeding, which pertain to witnesses who we would have wanted to depose in the Federal Matters as well. Instead of attempting to get a second (or possibly even third, fourth, fifth or sixth) deposition of those individuals (Mr. Penny and Ms. Scanlan, along with several others), we decided it only made sense to notice in the Federal Action to ensure proper notice was given to all parties for this time sensitive issue. As the procedure played out, we needed to serve written discovery and get depositions set expediently to have it prior to our opposition dates. Prior to our moving the opposition deadlines today via stipulation, our written discovery responses would have been due the day our oppositions were due.

My final point is that your client is not the only defendant in these cases. Some of the defendants in these actions have submitted to jurisdiction. Others have agreed to produce themselves for deposition—see Mr. Penny, for example. We have made arrangements with the schedules of many lawyers and just because your client is attempting to shirk its liability through a jurisdictional gambit does not mean these other portions of the cases are stayed.

Hopefully this explains our position, informs you of how we ended up here, and explains why this discovery will be proceeding despite your unilateral orders to the contrary.

Thank you,

Vince William Finaldi, Esq.
**MANLY, STEWART & FINALDI**
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Phone: (949) 252-9990
Direct: (949) 943-8423
Fax: (949) 252-9991
vfinaldi@manlystewart.com



THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS PROTECTED BY THE ATTORNEY-CLIENT AND/OR THE ATTORNEY-WORK PRODUCT PRIVILEGES. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL NAMED ABOVE AND THE PRIVILEGES ARE NOT WAIVED BY VIRTUE OF THIS HAVING BEEN SENT BY E-MAIL. IF THE PERSON ACTUALLY RECEIVING THIS E-MAIL OR ANY OTHER READER OF THE E-MAIL IS NOT THE NAMED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE NAMED RECIPIENT, ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.

**From:** Vince Finaldi
**Sent:** Friday, July 27, 2018 6:28 PM
**To:** Jolley, David <djolley@cov.com>
**Cc:** Alex Cunny <acunny@manlystewart.com>; John Manly <jmanly@manlystewart.com>; frederiksen@manlystewart.com; Rachyl Boer <rboer@manlystewart.com>; Kamin, Mitchell A <MKamin@cov.com>; Kubota, Carolyn <ckubota@cov.com>; Chen, Mark Y <MYChen@cov.com>
**Subject:** Re: USOC/Nassar Cases - Federal Court - Request for Deposition Dates

Those depos are going forward.

Vince William Finaldi, Esq.
**MANLY, STEWART & FINALDI**
19100 Von Karman Ave. Ste. 800
Irvine, CA 92613
P (949) 252-9990
F (949) 252-9991
vfinaldi@manlystewart.com

On Jul 27, 2018, at 5:01 PM, Jolley, David <djolley@cov.com> wrote:

> We are concerned with all of the depositions to the extent they have been noticed in the federal court actions without prior leave of court. This includes the deposition for Kathy Scanlan noticed for August 6 and the deposition of Steve Penny noticed for August 9, insofar as those two depositions have been separately noticed in the federal actions. The deposition notices issued in the federal actions need to be withdrawn.
>
> USOC is not a party to the state court action in Orange County.
>
> **David Jolley**
>
> Covington & Burling LLP
> One Front Street, San Francisco, CA 94111-5356
> T +1 415 591 7079 | djolley@cov.com
> www.cov.com
>
> <image001.jpg>
>
> **From:** Vince Finaldi <vfinaldi@manlystewart.com>
> **Sent:** Friday, July 27, 2018 4:39 PM
> **To:** Jolley, David <djolley@cov.com>
> **Cc:** Alex Cunny <acunny@manlystewart.com>; John Manly <jmanly@manlystewart.com>; frederiksen@manlystewart.com; Rachyl Boer <rboer@manlystewart.com>; Kamin, Mitchell A <MKamin@cov.com>; Kubota, Carolyn <ckubota@cov.com>; Chen, Mark Y <MYChen@cov.com>
> **Subject:** Re: USOC/Nassar Cases - Federal Court - Request for Deposition Dates
>
> Ok but one deposition is of Steve Penny-they agreed to produce him and he is noticed in multiple cases. That one must proceed. Which others are at issue under the scope you provided? Sorry I am not at my desk presently.
>
> Vince William Finaldi, Esq.
> **MANLY, STEWART & FINALDI**
> 19100 Von Karman Ave. Ste. 800

Irvine, CA 92613
P (949) 252-9990
F (949) 252-9991
vfinaldi@manlystewart.com

On Jul 27, 2018, at 4:24 PM, Jolley, David <djolley@cov.com> wrote:

Vince,

We can wait until Wednesday morning to file our motion to give you time to discuss and respond.  The problem is that there are depositions noticed in the federal cases as early as August 6.  If we wait any longer than Wednesday, the courts won't have time to rule on the motion to quash/for protective order.  One alternative if you need more time would be to push back or take off calendar any deposition set for August 10 or earlier.  That would allow everyone more time to get instructions from the court.

In any event, we will wait until Wednesday to file our motions.  We can wait longer if you let us know that the depositions set for the following week are withdrawn or continued.

Regards,
David.

**From:** Vince Finaldi <vfinaldi@manlystewart.com>
**Sent:** Friday, July 27, 2018 3:32 PM
**To:** Jolley, David <djolley@cov.com>; Alex Cunny <acunny@manlystewart.com>
**Cc:** John Manly <jmanly@manlystewart.com>; frederiksen@manlystewart.com; Rachyl Boer <rboer@manlystewart.com>; Kamin, Mitchell A <MKamin@cov.com>; Kubota, Carolyn <ckubota@cov.com>; Chen, Mark Y <MYChen@cov.com>
**Subject:** RE: USOC/Nassar Cases - Federal Court - Request for Deposition Dates

Received. Can you give us until Wednesday morning to discuss and respond? Monday is too soon. Lots of moving parts here. Thanks.

Vince William Finaldi, Esq.
**MANLY, STEWART & FINALDI**
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Phone: (949) 252-9990
Direct: (949) 943-8423
Fax: (949) 252-9991
vfinaldi@manlystewart.com
<image001.jpg>

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS PROTECTED BY THE ATTORNEY-CLIENT AND/OR THE ATTORNEY-WORK PRODUCT PRIVILEGES. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL NAMED ABOVE AND THE PRIVILEGES ARE NOT WAIVED BY VIRTUE OF THIS HAVING BEEN SENT BY E-MAIL. IF THE PERSON ACTUALLY RECEIVING THIS E-MAIL OR ANY OTHER READER OF THE E-MAIL IS NOT THE NAMED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE NAMED RECIPIENT, ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.

**From:** Jolley, David [mailto:djolley@cov.com]
**Sent:** Friday, July 27, 2018 3:19 PM
**To:** Alex Cunny <acunny@manlystewart.com>

Cc: John Manly <jmanly@manlystewart.com>; Vince Finaldi
<vfinaldi@manlystewart.com>; frederiksen@manlystewart.com; Rachyl Boer
<rboer@manlystewart.com>; Kamin, Mitchell A <MKamin@cov.com>; Kubota, Carolyn
<ckubota@cov.com>; Chen, Mark Y <MYChen@cov.com>
**Subject:** RE: USOC/Nassar Cases - Federal Court - Request for Deposition Dates

Counsel,

Please see the attached responsive letter.


**David Jolley**

Covington & Burling LLP
One Front Street, San Francisco, CA 94111-5356
T +1 415 591 7079 | djolley@cov.com
www.cov.com

<image002.jpg>


**From:** Alex Cunny <acunny@manlystewart.com>
**Date:** July 25, 2018 at 7:39:19 AM PDT
**To:** "MYChen@cov.com" <MYChen@cov.com>, "MKamin@cov.com"
<MKamin@cov.com>, "ckubota@cov.com" <ckubota@cov.com>
**Cc:** John Manly <jmanly@manlystewart.com>, Vince Finaldi
<vfinaldi@manlystewart.com>, Kathy Frederiksen
<kfrederiksen@manlystewart.com>, Rachyl Boer <rboer@manlystewart.com>
**Subject: USOC/Nassar Cases - Federal Court - Request for Deposition Dates**

Good morning Mark, Carolyn and Mitchell,

After reviewing your Motion to Dismiss, we have several
depositions we seek to take on jurisdictional issues raised in that
Motion. Below, please find the names of individuals we seek to
depose for jurisdictional purposes. Given the timing of our
opposition to your Motion to Dismiss, it is important to obtain
dates for these depositions on or prior to August 15th. Thus, please
provide dates in this timeframe by the end of the week:

1. Richard Adams**
2. William Moreau**
3. Larry Buendorf
4. Scott Blackmun
5. Walt Glover
6. Lawrence Probst
7. William J. Hybl
8. Richard Schultz
9. Jim Scherr
10. Jack Swarbrick

As a note to the above (**), Dr. Moreau and Mr. Adams were previously subpoenaed in the LM matter, and were agreed to be produced for deposition by USOC Counsel, Brent Rychener of (I believe), Bryan Cave.

Moreover, Mr. Buendorf was served with a deposition subpoena in the AJ case pending in Superior Court, but we will need to move his deposition up, again, given our opposition timing.

Thank you,

Alex

Alex E. Cunny, Esq.
*Attorney*
**Manly, Stewart & Finaldi**
19100 Von Karman Ave.
Suite 800
Irvine, CA 92612
P (949) 252-9990
F (949) 252-9991
acunny@manlystewart.com

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS PROTECTED BY THE ATTORNEY-CLIENT AND/OR THE ATTORNEY-WORK PRODUCT PRIVILEGES. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL NAMED ABOVE AND THE PRIVILEGES ARE NOT WAIVED BY VIRTUE OF THIS HAVING BEEN SENT BY E-MAIL. IF THE PERSON ACTUALLY RECEIVING THIS E-MAIL OR ANY OTHER READER OF THE E-MAIL IS NOT THE NAMED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE NAMED RECIPIENT, ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.

# EXHIBIT "G"

**Alex Cunny**

**From:** Kathy Frederiksen
**Sent:** Tuesday, July 31, 2018 8:34 PM
**To:** Alex Cunny; Rachyl Boer
**Subject:** Fwd: Activity in Case 2:18-cv-03461-JLS-KES McKayla Maroney v. Michigan State University et al Ex Parte Application for Protective Order


Kathy Frederiksen
Legal Assistant to
John C. Manly, Esq.
Vince W. Finaldi, Esq.
MANLY, STEWART & FINALDI
19100 Von Karman Avenue, Suite 800
Irvine, CA  92612
(949) 252-9990
(949) 252-9991-facsimile
kfrederiksen@manlystewart.com
www.manlystewart.com



Sent from my iPhone

Begin forwarded message:

> **From:** <cacd_ecfmail@cacd.uscourts.gov>
> **Date:** July 31, 2018 at 7:47:24 PM PDT
> **To:** <ecfnef@cacd.uscourts.gov>
> **Subject: Activity in Case 2:18-cv-03461-JLS-KES McKayla Maroney v. Michigan State University et al Ex Parte Application for Protective Order**
>
> This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
> **\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**
>
> **UNITED STATES DISTRICT COURT**
>
> **CENTRAL DISTRICT OF CALIFORNIA**

1

**Notice of Electronic Filing**

The following transaction was entered by Kamin, Mitchell on 7/31/2018 at 7:47 PM PDT and filed on 7/31/2018

| | |
|---|---|
| **Case Name:** | McKayla Maroney v. Michigan State University et al |
| **Case Number:** | 2:18-cv-03461-JLS-KES |
| **Filer:** | United States Olympic Committee |
| **Document Number:** | 30 |

**Docket Text:**
**EX PARTE APPLICATION for Protective Order for Prohibiting Premature Discovery by Plaintiff filed by Defendant United States Olympic Committee. (Attachments: # (1) Declaration of David M. Jolley, # (2) Exhibits 1-15 to Jolley Declaration, # (3) Proposed Order)(Kamin, Mitchell)**

**2:18-cv-03461-JLS-KES Notice has been electronically mailed to:**

Carolyn J Kubota    ckubota@cov.com, rtoombs@cov.com

John C Manly    jmanly@manlystewart.com

Kevin James Minnick    kevin.minnick@skadden.com, dlmlclac@skadden.com, nandi-berglund-4699@ecf.pacerpro.com, nandi.berglund@skadden.com

Margaret M Holm    margaret.holm@clydeco.us, krista.gutierrez@clydeco.us, lorraine.gallo@clydeco.us, melissa.leos@clydeco.us

Mark Y Chen    mychen@cov.com, tkerr@cov.com

Melissa McKenna Leos    melissa.leos@clydeco.us

Mitchell A Kamin    mkamin@cov.com, mitchell-kamin-1218@ecf.pacerpro.com, TSpath@cov.com

Paulina K Slagter    pslagter@cov.com

Sheryl M Rosenberg    sheryl.rosenberg@clydeco.us, barbara.fergerson@clydeco.us

Udit Sood    usood@cov.com

Vince William Finaldi    vfinaldi@manlystewart.com, kfrederiksen@manlystewart.com

**2:18-cv-03461-JLS-KES Notice has been delivered by First Class U. S. Mail or by other means BY THE FILER to :**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\fakepath\2018.07.31_Maroney_Ex Parte App. for Protective Order.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=7/31/2018] [FileNumber=26008158-0

] [9bff006730f1061c64da82270be65f42f2c3f0f88df4cde743d0ce4071261b59f68
dba09138c8750114b06dd4ed7e0a352439a808928a1f6e49fb131f37e2150]]

**Document description:**Declaration of David M. Jolley

**Original filename:**C:\fakepath\2018.07.31_Maroney_Jolley Declaration.pdf

**Electronic document Stamp:**

[STAMP cacdStamp_ID=1020290914 [Date=7/31/2018] [FileNumber=26008158-1
] [816cce2949483afe321efdb02e5569322320eedf340c3efc5f43d94268c8b9097d0
1dea010f469da82cb5fc469dad5e82666ec12ab7eb39339151384e5e5a9ac]]

**Document description:** Exhibits 1-15 to Jolley Declaration

**Original filename:**C:\fakepath\Exhibits 1 - 15.pdf

**Electronic document Stamp:**

[STAMP cacdStamp_ID=1020290914 [Date=7/31/2018] [FileNumber=26008158-2
] [9487629f54ecc58e35bf75a91a2c118e2997dc6b4976bc5d67361342c6ebea49cdc
43b0c64bdd794cb7a363f6949fd9bd48ba24d2c43c9aa09ec740dac75124b]]

**Document description:**Proposed Order

**Original filename:**C:\fakepath\2018.07.31_Maroney_[Proposed] Order re Ex Parte App for PO.pdf

**Electronic document Stamp:**

[STAMP cacdStamp_ID=1020290914 [Date=7/31/2018] [FileNumber=26008158-3
] [907f5e8ca9d835e3f5cb7ad21448b08b837f565df6712dde6f5b774b9cdc5f622c8
7063758809aa695e0cec6631210abf3ed8df9cc8cc298d1ccd08035652db8]]