ALLEN L. LANSTRA (SBN 251510)
Allen.Lanstra@skadden.com
KEVIN J. MINNICK (SBN 269620)
Kevin.Minnick@skadden.com
KASONNI M. SCALES (SBN 301871)
Kasonni.Scales@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:   (213) 687-5000
Facsimile:   (213) 687-5600

Attorneys for Defendant
MICHIGAN STATE UNIVERSITY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MCKAYLA MARONEY,<br><br>                    Plaintiff,<br><br>          v.<br><br>MICHIGAN STATE UNIVERSITY; UNITED STATES OLYMPIC COMMITTEE; USA GYMNASTICS; LARRY NASSAR; and DOES 1 through 500.<br><br>                    Defendants. | CASE NO.: 2:18-cv-03461-JLS (KESx)<br><br>DEFENDANT MICHIGAN STATE UNIVERSITY'S:<br><br>(1) NOTICE OF MOTION AND MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION;<br><br>(2) MEMORANDUM OF POINTS AND AUTHORITIES;<br><br>(3) DECLARATION OF AMY VAN GELDER (filed under separate cover); and<br><br>(4) [PROPOSED] ORDER (filed under separate cover).<br><br>The Honorable Josephine L. Staton<br><br>Date:        November 2, 2018<br>Time:        2:30 p.m.<br>Courtroom:  10A |

NOTICE OF MOTION AND MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Michigan State University ("MSU") will and hereby does move this Court for an order determining its settlement with Plaintiff McKayla Maroney ("Plaintiff Maroney") to be in good faith within the meaning of California Code of Civil Procedure sections 877 and 877.6. The motion will be made in the Courtroom of the Honorable Josephine L. Staton, located at 411 West Fourth Street, Santa Ana, California, Courtroom 10A. The motion will be heard on November 2, 2018 at 2:30 p.m.

MSU makes this motion on the grounds that the settlement between MSU and Plaintiff Maroney is a reasonable, good faith settlement sufficient to bar claims for indemnity and contribution by joint tortfeasors against MSU pursuant to California Code of Civil Procedure sections 877 and 877.6(c).  The settlement satisfies the applicable factors set forth in *Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, 38 Cal. 3d 488, 499 (1985).  Specifically, the settlement is reasonable and appropriate given MSU's proportionate potential liability in the matter.  *Id*.  Moreover, the negotiations between Plaintiff and MSU did not involve collusion, fraud, or tortious conduct, and the resulting settlement is not aimed at injuring the interests of any non-settling defendant or other person.  *Id*.

This motion is based upon this Notice of Motion, the Memorandum of Points and Authorities and the Declaration of Amy Van Gelder ("Van Gelder Decl.") filed herewith, all other pleadings and papers on file, deemed to be on file, and of which judicial notice may be taken at the time this motion is heard, and all argument presented.

This motion is made following the electronic conference of counsel pursuant to L.R. 7-3, initiated by email dated July 12, 2018, wherein MSU informed the non-settling parties who have appeared in this case and related cases of the settlement and MSU's intention to seek a good faith determination from this Court.  Based on the

NOTICE OF MOTION AND MOTION FOR GOOD FAITH SETTLEMENT
DETERMINATION

electronic conference of counsel, MSU is informed and believes that no other party intends to oppose this motion.

DATED: August 31, 2018

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____
       */s/ Kevin J. Minnick*
        Kevin J. Minnick

Attorneys for Defendant
MICHIGAN STATE UNIVERSITY

NOTICE OF MOTION AND MOTION FOR GOOD FAITH SETTLEMENT
DETERMINATION

1

**<u>TABLE OF CONTENTS</u>**

2

Page

3

TABLE OF AUTHORITIES .......................................................................ii

4

INTRODUCTION ........................................................................................ 1

5

BACKGROUND .......................................................................................... 2

6

    I.     Case Summary ................................................................. 2

7

    II.    Settlement Terms and Participating Parties ......................... 3

8

ARGUMENT ................................................................................................ 5

9

    I.     California Code of Civil Procedure Sections 877 and 877.6

10

              Permit MSU to Obtain a Judicial Determination of Good Faith Settlement ............................................................................ 5

11

    II.    This Court Should Determine That the Settlement Is in Good

12

              Faith and Bars Any Indemnity and Contribution Claims ................ 6

13

    III.   The Settlement Qualifies as a Good Faith Settlement ........................ 8

14

          A.    The Settlement Amount Is Reasonable Considering the Proportionate Liability Between the Defendants....................... 8

15

          B.    The Amount Paid in Settlement Is Reasonable ...................... 10

16

          C.    The Method of Allocation of Settlement Proceeds Among Plaintiffs Is Fair and Agreed to by Plaintiff ........................... 11

17

          D.    The Settlement Amount Reflects the Policy That a Settlor

18

                  Should Pay Less in Settlement Than If Liability Was Imposed After Trial ............................................................. 11

19

          E.    Insurance and Financial Condition of Settlor ......................... 12

20

          F.    The Negotiations Between Plaintiff and MSU Did Not

21

                  Involve Collusion, Fraud, or Tortious Conduct...................... 12

22

CONCLUSION................................................................................... 13

23

24

25

26

27

28

MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

1

**<u>TABLE OF AUTHORITIES</u>**

2

<u>Page</u>

3

**CASES**

4

*City of Grand Terrace v. Superior Court,*

5
    192 Cal. App. 3d 1251 (1987) ................................................................... 8

6

*Crescenta Valley Water District v. Exxon Mobil Corp.,*
    No. CV 07-2630-JST (ANx),

7
    2013 WL 12183662 (C.D. Cal. Mar. 5, 2013) ................................................ 8

8

*Davidson v. City of Westminster,*
    32 Cal. 3d 197 (1982) .......................................................................... 10

9

*Dole Food Co. v. Superior Court,*

10
    242 Cal. App. 4th 894 (2015) ................................................................. 7

11

*Dole Food Co. v. Watts,*
    303 F.3d 1104 (9th Cir. 2002) ................................................................. 9

12

*Fisher v. Superior Court,*

13
    103 Cal. App. 3d 434 (1980) ................................................................... 6

14

*Horton v. Superior Court,*
    194 Cal. App. 3d 727 (1987) ................................................................. 10

15

*Lackner v. North,*

16
    135 Cal. App. 4th 1188 (2006) ............................................................... 10

17

*Mason & Dixon Intermodal v. Lapmaster, International LLC,*
    632 F.3d 1056 (9th Cir. 2011) ................................................................. 5

18

*North County Contractor's Ass'n, Inc. v. Touchstone Insurance Services,*

19
    27 Cal. App. 4th 1085 (1994) ................................................................. 7

20

*Roman v. Liberty University, Inc.,*
    162 Cal. App. 4th 670 (2008) ................................................................. 9

21

*Ruvalcaba v. Ocwen Loan Servicing, LLC,*
    No. 15-CV-0744-BAS-DHB,

22
    2018 WL 571934 (S.D. Cal. Jan. 26, 2018) ................................................ 5

23

*Schaeffer v. Gregory Village Partners, L.P.,*
    No. 13-CV-04358-JST, 2015 WL 1885634 (N.D. Cal. Apr. 24, 2015) ............ 5

24

*Stambaugh v. Superior Court,*

25
    62 Cal. App. 3d 231 (1976) ............................................................. 6, 7, 8

26

*Tech-Bilt, Inc. v. Woodward-Clyde & Associates,*
    38 Cal. 3d 488 (1985) ................................................................... passim

27

28

ii

1

**STATUTES**

2    18 U.S.C. § 2255 ........................................................................................ 2

3    18 U.S.C. § 2423(b) .................................................................................... 2

4    18 U.S.C. § 2423(c) .................................................................................... 2

5    36 U.S.C. § 220505(b)(9) ........................................................................... 3

6    Cal. Bus. & Prof. Code § 17200 ................................................................. 2

7    Cal. Civ. Code § 51.9 ................................................................................. 2

8    Cal. Civ. Proc. Code § 877 ................................................................. passim

9    Cal. Civ. Proc. Code § 877.6 .............................................................. passim

10   Cal. Civ. Proc. Code § 877.6(a) ................................................................. 5

11   Cal. Civ. Proc. Code § 877.6(c) ................................................................. 6

12   Cal. Civ. Proc. Code § 877.6(d) ............................................................. 6, 7

13   Mich. Comp. Laws Ann. § 691.1401(a) ................................................ 9, 10

14   Mich. Comp. Laws Ann. § 691.1401(g) ................................................ 9, 10

15   Mich. Comp. Laws Ann. § 691.1407 ........................................................... 9

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

**INTRODUCTION**

This action was brought by Plaintiff McKayla Maroney ("Plaintiff Maroney") to seek redress for the alleged sexual assault committed by Defendant Lawrence Nassar ("Nassar"), who in the fall of 2016 was unmasked as a fraud, a pedophile, and a criminal.  Nassar publicly admitted that he sexually assaulted his multiple victims, and he will spend the rest of his life behind bars, as he deserves.  While Defendant Michigan State University ("MSU") denies liability for the heinous acts committed by Nassar, MSU is committed to resolving the civil disputes that arose from Nassar's actions.  In May of this year, MSU, Plaintiff Maroney, and numerous other plaintiffs engaged in mediation over a multi-month period, including extensive settlement negotiations before the Honorable Layn R. Phillips (Ret.), to resolve the complaints against MSU stemming from Nassar's wrongdoing.

On May 16, 2018, MSU and Plaintiff Maroney's attorneys announced that the 333 plaintiffs who participated in the settlement negotiations reached a global settlement in principle to resolve and release all claims against MSU and certain individual defendants connected to MSU.  In exchange for these releases, MSU agreed to pay $500,000,000 to be distributed for the benefit of these and future plaintiffs, including Plaintiff Maroney.  Seventy-five million will be placed in reserve for potential future claims and $425,000,000 of the settlement amount will be made immediately available to the 333 participating plaintiffs and allocated to each by the determination of the Honorable William Bettinelli (Ret.) of JAMS.  All participating plaintiffs, including Plaintiff Maroney, have agreed to participate in this allocation process.  MSU, Plaintiff Maroney, and the settling plaintiffs executed the final Settlement Agreement and Mutual Release on August 28, 2018 (the "Settlement" or "Settlement Agreement"), which is attached to the Declaration of Amy Van Gelder ("Van Gelder Decl.") as Exhibit A.

MSU's payment of a half-billion dollars for the benefit of Plaintiff Maroney and the other settling plaintiffs amounts to an average recovery (not including the

1

1   $75,000,000 reserve fund) just under $1.3 million for each plaintiff.  This settlement
2   was meant to fairly and expeditiously resolve Plaintiff Maroney's dispute with MSU,
3   without further cost and delay to the parties.  As shown below, the Settlement
4   satisfies each of the applicable factors for good faith settlement determinations
5   articulated in *Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, 38 Cal. 3d 488
6   (1985).  Thus, the Court should find that the Settlement is a good faith settlement
7   under California Code of Civil Procedure sections 877 and 877.6 and bar any claims
8   for indemnity or contribution against MSU by alleged joint tortfeasors.

9                                   **BACKGROUND**

10  **I.      Case Summary**

11        On December 20, 2017, Plaintiff Maroney filed a complaint in the Superior
12  Court for the State of California for the County of Los Angeles, Case No.
13  BC687396, under the caption *McKayla Maroney, an individual, v. Michigan State*
14  *University, a Michigan Entity of Form Unknown, United States Olympic Committee,*
15  *a Business Entity of form unknown, USA Gymnastics, an Indiana Business Entity of*
16  *Form Unknown, Larry Nassar, an individual,  and Does 1 through 500.* (ECF No. 1-
17  1, Exhibit 1 (the "Complaint" or "Compl.").)

18        The Complaint asserts claims against MSU and United States Olympic
19  Committee ("USOC") for violations of various California statutes, including
20  California Civil Code section 51.9 and Business and Professions Code section
21  17200.  (Compl. ¶¶ 79-87, 103-09.)  The Complaint also asserts common law claims
22  against MSU and USOC for intentional infliction of emotional distress, breach of
23  fiduciary duty, constructive fraud, negligence, negligent supervision, negligent
24  hiring/retention, and negligence failure to warn, train or educate.  (Compl. ¶¶ 95-102,
25  110-17, 118-43, 144-50, 151-73, 174-83, 184-88.)   Additionally, the Complaint
26  asserts violations of Masha's Law, 18 U.S.C. §§ 2255, 2423(b), 2423(c) against
27  MSU and USOC.  (Compl. ¶¶ 88-94.)

28

---

2

MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

1  Against Defendants USA Gymnastics ("USAG") and Nassar, Plaintiff brought
2  an additional claim for declaratory relief.  (Compl. ¶ 189-200.)

3  On April 25, 2018, USOC removed the action to the Central District of
4  California, Western Division, pursuant to 36 U.S.C. § 220505(b)(9).  (ECF No. 1.)
5  Thereafter, on May 1, 2018, MSU filed a joint stipulation with Plaintiff Maroney to
6  extend the date to answer or otherwise respond to the Complaint to July 20, 2018,
7  without prejudice to MSU's challenges to the jurisdiction of the Court, including
8  those based on personal jurisdiction.  (ECF No. 11.)  The joint stipulation was
9  granted on May 2, 2018.  (ECF No. 12.)  On May 15, 2018, this action was
10 transferred to this Court as a related case to *Lopez v. Michigan State University, et*
11 *al.*, Case No. 8:18-cv-00650 JLS(KESx).  (ECF No. 16.)  On May 16, 2018, MSU
12 and Plaintiff Maroney's counsel announced that they had reached a global settlement
13 in principle.  On July 17, 2018, the parties filed a second joint stipulation to extend
14 the date to answer or otherwise respond to the Complaint to October 18, 2018 (ECF
15 No. 25), which the Court granted on July 20, 2018 (ECF No. 26).  On August 28,
16 2018, the parties executed a final settlement agreement.

17 **II.   Settlement Terms and Participating Parties**

18 The Settlement is contingent upon the Court determining that it is a good faith
19 settlement and barring other parties from bringing any claims against MSU for any
20 form of contribution or indemnity, as set forth in the concurrently filed Proposed
21 Order.  (*See* Van Gelder Decl., Exhibit A, Settlement Agreement ¶ 3(a)(ii).)

22 Plaintiff Maroney and the other settling plaintiffs agree to release all claims
23 against MSU and the "MSU Released Persons" (as defined in the Settlement
24 Agreement at ¶ 8(a)) related to any alleged sexual assault or similar conduct by
25 Nassar.  MSU agrees to pay $500,000,000 (the "Settlement Amount").  (*Id*. ¶ 6(a).)
26 MSU will deposit $425,000,000 into a qualified settlement fund for distribution to
27 the 333 settling plaintiffs.  (*Id*. ¶ 6(a)(i).)

28

3

1    The $425,000,000 will be allocated to the settling plaintiffs through a binding
2    process to determine each plaintiff's share of the Settlement (the "Allocation
3    Process"). (*Id*. ¶ 4(c).) The Allocation Process will be devised and presided over by
4    the Honorable Judge William Bettinelli (Ret.) of JAMS, whose fees and costs will be
5    paid exclusively from the qualified settlement fund. (*Id*.) Plaintiffs, amongst
6    themselves, have agreed that Judge Bettinelli will determine each individual
7    plaintiff's entitlement to a portion of the qualified settlement fund (the "Allocated
8    Share"). (*Id*.) Following applicable law, Judge Bettinelli shall determine, in his sole
9    discretion, the Allocated Share of the settlement fund to which each plaintiff is
10   entitled. (*Id*.) The Allocation Process will also include an appeal procedure through
11   which any plaintiff may contest, if desired, his or her Allocated Share, through notice
12   and an opportunity to be heard. (*Id*.) MSU shall have no right to participate, in any
13   manner, in the Allocation Process, but shall be informed of the amount of each
14   plaintiff's Allocated Share once finally determined. (*Id*.)

15   MSU will also deposit $75,000,000 into an interest bearing account controlled
16   by MSU for the purpose of settling future claims related to Nassar ("Litigation
17   Reserve Amount"). (Settlement Agreement ¶ 6(a)(ii).) Within 30 days of the two-
18   year anniversary of payment of the Settlement Amount, all remaining portions of the
19   Litigation Reserve Amount not designated by an auditor as necessary to resolve
20   then-pending Nassar-related claims and not needed to pay outstanding fees and costs
21   of the auditor, defense counsel, or consultants, if any, shall be deposited by MSU
22   into the qualified settlement fund for distribution through the Allocation Process.
23   (*Id*. ¶ 6(b)(iv).)

24   Those participating in the Settlement are Plaintiff Maroney, the remaining 332
25   plaintiffs in the other actions, MSU, and certain individual defendants related to
26   MSU (*see id*. ¶ 2(q)) who were named in complaints filed by other plaintiffs but who
27   are not parties to this case. (*Id*. ¶ 2(v).)

28

4

MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

<u>**ARGUMENT**</u>

**I.**    **<u>California Code of Civil Procedure Sections 877 and 877.6 Permit MSU to Obtain a Judicial Determination of Good Faith Settlement</u>**

It is appropriate for this Court to apply California law in making the good faith determination requested here. *See Mason & Dixon Intermodal v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011); *see also Ruvalcaba v. Ocwen Loan Servicing, LLC*, No. 15-CV-0744-BAS-DHB, 2018 WL 571934, at *2-3 (S.D. Cal. Jan. 26, 2018) (applying California Code of Civil Procedure sections 877 and 877.6 in determining good faith settlement in federal action).

When, as here, state law claims predominate, it is appropriate to apply California law to review settlements and enter bar orders discharging contribution and indemnity claims by non-settling defendants for both federal and state law claims. *See Schaeffer v. Gregory Vill. Partners, L.P.*, No. 13-CV-04358-JST, 2015 WL 1885634, at *4 (N.D. Cal. Apr. 24, 2015) (applying California Code of Civil Procedure section 877.6 and noting that "because state law claims predominate in this action, state substantive law governs settlements between Plaintiffs and individual defendants"). Here, the ten state law claims predominate over the single federal claim. *See id.*

California Code of Civil Procedure section 877.6(a) provides that "[a]ny party to an action in which it is alleged that two or more parties are joint tortfeasors . . . shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors." Cal. Civ. Proc. Code § 877.6(a). California Code of Civil Procedure section 877 provides that:

> Where a release, dismissal, with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort . . . . It shall discharge the party to whom it is given from all liability for any contribution to any other parties.

5<br>MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

1  *Id*. § 877; *see also* Cal. Civ. Proc. Code § 877.6(c) (good faith determination bars

2  other joint tortfeasors from asserting claims "for equitable comparative contribution,

3  or partial or comparative indemnity, based on comparative negligence or

4  comparative fault.").

5       The legislative intent underlying section 877 was to extinguish all claims

6  against the settling defendant, including those by the claimant and any alleged joint

7  tortfeasors in order to encourage finality. *See Stambaugh v. Superior Court*, 62 Cal.

8  App. 3d 231, 235 (1976).   Thus, section 877 embodies the strong public policy

9  encouraging settlement of litigation. *See Fisher v. Superior Court*, 103 Cal. App. 3d

10 434, 442-43 (1980).  In light of these policy concerns, it is a challenger's burden to

11 demonstrate a lack of good faith.  Cal. Civ. Proc. Code § 877.6(d).

12      Here, MSU and Plaintiff Maroney have agreed to settle this action to avoid

13 any further costs or delay of continued litigation.  In keeping with the policy goals of

14 section 877, this Court should approve the parties' good faith settlement to terminate

15 this litigation and bar any claims for contribution and indemnity against MSU.

16 **II.**   **This Court Should Determine That the Settlement Is in Good Faith and**

17      **Bars Any Indemnity and Contribution Claims**

18      *Tech-Bilt, Inc. v. Woodward-Clyde & Associates* states the standard for

19 determining whether a settlement is made in good faith.  38 Cal. 3d 488 (1985).  In

20 *Tech-Bilt*, the California Supreme Court identified certain factors that are relevant to

21 the determination of a good faith settlement: (1) a rough approximation of the

22 plaintiff's total recovery and the settlor's proportionate liability; (2) the amount paid

23 in settlement; (3) the allocation of settlement proceeds among plaintiffs; (4)

24 recognition that a settlor should pay less in settlement than if the settlor were found

25 liable after a trial; (5) the financial condition and the insurance policy limits of the

26 settlor; and (6) the existence of collusion, fraud, or tortious conduct aimed to injure

27 the interests of non-settling defendants. *See id*. at 499.

28

---

6

MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

1   "A judge charting the boundaries of good faith of necessity must avoid a rigid
2   application of the factors set forth in *Tech-Bilt*." *N. Cty. Contractor's Ass'n, Inc. v.*
3   *Touchstone Ins. Servs.*, 27 Cal. App. 4th 1085, 1090 (1994).  The key consideration
4   is whether the settlement is "grossly disproportionate to what a reasonable person, at
5   the time of the settlement, would estimate the settling defendant's liability to be."
6   *Tech-Bilt, Inc.*, 38 Cal. 3d at 499 (citation omitted).  The court "has wide discretion
7   in deciding whether a settlement is in good faith and in arriving at an allocation of
8   valuation of the various interests involved." *N. Cty. Contractor's Ass'n, Inc.*, 27 Cal.
9   App. 4th at 1095 (citation omitted).

10   Moreover, courts have approved of global settlements requiring a future
11   allocation of settlement funds amongst multiple plaintiffs and determined them to be
12   good faith settlements under section 877.6.  *See Dole Food Co. v. Superior Court*,
13   242 Cal. App. 4th 894, 898-99 (2015) (approving global settlement fund as a good
14   faith settlement and noting that such a determination "did not require an allocation of
15   the $90 million settlement consideration among the 1,491 individual Plaintiffs and
16   between their economic and noneconomic damages" as "[s]uch individualized
17   allocations, which would have necessitated 1,491 mini-trials in this matter, are not
18   required as part of the good faith settlement process").

19   A person challenging the good faith of this Settlement bears the burden of
20   proving that the Settlement is not in good faith.  *See Tech-Bilt*, 38 Cal. 3d at 499-
21   500; *see also* Cal. Civ. Proc. Code § 877.6(d).  Lack of good faith is not, however,
22   "established by showing that a settling defendant paid less than his theoretical
23   proportionate or fair share," as "[s]uch a rule would unduly discourage settlements."
24   38 Cal. 3d at 499 (citation omitted).  The *Tech-Bilt* court also recognized that a good
25   faith settlement determination must take into consideration the speculative and
26   unpredictable nature of litigation and should not be determined solely by the
27   proportion the settlement bears or may bear to the damages or alleged damages
28   claimed by the plaintiff.  *See id*. (citation omitted).  In *Stambaugh*, which the

7

MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

California Supreme Court cited in *Tech-Bilt*, 38 Cal. 3d at 499, the court acknowledged the policy in favor of settling litigation and specifically noted that:

> [e]xcept in rare cases of collusion or bad faith . . . a joint tortfeasor should be permitted to negotiate settlement of an adverse claim according to his own best interests, whether for his financial advantage, or for the purchase of peace and quiet, or otherwise.  His good faith will not be determined by the proportion his settlement bears to the damages of the claimant. For the damages are often speculative, and the probability of legal liability therefor is often uncertain or remote.

62 Cal. App. 3d at 238 (citations omitted).

Lastly, "only when the good faith nature of a settlement is disputed, is it incumbent upon the trial court to consider and weigh the *Tech-Bilt* factors." *Crescenta Valley Water Dist. v. Exxon Mobil Corp.*, No. CV 07-2630-JST (ANx), 2013 WL 12183662, at *1 (C.D. Cal. Mar. 5, 2013) (Staton, J.) (quoting *City of Grand Terrace v. Superior Court*, 192 Cal. App. 3d 1251, 1261 (1987)) (internal alterations omitted).  "In other words, 'when no one objects, the barebones motion which sets forth the ground of good faith, accompanied by a declaration which [sic] sets forth a brief background of the case is sufficient.'"  *Id.*  (alteration in original).

Because no party has stated any intent to oppose this motion or dispute the good faith of the Settlement, the Court can, and should, grant this motion.  However, even if further analysis were required, the application of the *Tech-Bilt* factors shows that Plaintiff Maroney's settlement with MSU is a reasonable settlement made in good faith between the settling parties.

III.    **The Settlement Qualifies as a Good Faith Settlement**

A.    **The Settlement Amount Is Reasonable Considering the Proportionate Liability Between the Defendants**

In her Complaint, Plaintiff Maroney alleges that Nassar committed sexual assault (Compl. ¶ 6), which caused her to suffer immensely (Compl. ¶ 65).

At this stage of the litigation, Plaintiff Maroney has not yet calculated her alleged damages, and thus, they remain uncertain.  What is certain is that her

8

1   damages arose from Nassar's alleged misconduct, Nassar has admitted to engaging

2   in similar misconduct, and Nassar is liable for his actions.  Whatever the ultimate

3   recovery Plaintiff Maroney would have obtained after a trial, any liability

4   attributable to MSU pales in comparison to the liability of Nassar.

5       It is not even certain, however, that MSU is liable for Nassar's actions, and if

6   this case had not settled, MSU would argue that it does not share in that liability.

7   MSU, as a Michigan state institution, has several challenges to Plaintiff Maroney's

8   claims, including challenges to the Court's personal jurisdiction over MSU, an out-

9   of-state university.  *See Roman v. Liberty Univ., Inc.*, 162 Cal. App. 4th 670, 677-81

10  (2008) (affirming trial court's grant of motion to quash for lack of personal

11  jurisdiction over out-of-state university where the only conduct alleged by student-

12  plaintiff to support his jurisdictional claims was the university's recruitment of the

13  student plaintiff); *see also Dole Food Co. v. Watts*, 303 F.3d 1104, 1110 (9th Cir.

14  2002) ("Because California's long-arm jurisdictional statute is coextensive with

15  federal due process requirements, the jurisdictional analyses under state law and

16  federal due process are the same." (citation omitted)).  Here, as in *Roman*, Plaintiff

17  Maroney primarily alleges that MSU recruits athletes from California to support

18  personal jurisdiction.  (*See* Compl. ¶ 23.)  Thus, Plaintiff Maroney risks not being

19  able to establish the Court's personal jurisdiction over MSU.  *See Roman*, 162 Cal.

20  App. 4th at 680 ("[W]e find that the controversy is unrelated to and does not arise

21  from Liberty's contacts with California.").

22      Further, MSU, as a state institution, is generally immune from suit for torts

23  under the doctrine of sovereign immunity.  *See* Mich. Comp. Laws Ann. § 691.1407

24  ("a governmental agency is immune from tort liability if the governmental agency is

25  engaged in the exercise or discharge of a governmental function"); Mich. Comp.

26  Laws Ann. § 691.1401(a), (g) ("'Governmental agency' means this state or a

27  political subdivision . . . . State includes a public university or college of this state,

28  whether established as a constitutional corporation or otherwise.").

9

MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

1    Moreover, "[a]s a general rule, one owes no duty to control the conduct of
2    another, nor to warn those endangered by such conduct." *Davidson v. City of*
3    *Westminster*, 32 Cal. 3d 197, 203 (1982). Plaintiff Maroney alleges that such a duty
4    existed because of a "special relationship" between her and MSU. (*See, e.g.*, Compl.
5    ¶ 119.) Plaintiff Maroney, however, was a member of Team USA and not affiliated
6    with MSU in any way. (*Id.* ¶ 6.) Plaintiff Maroney does not allege to have ever
7    received treatment by Nassar on MSU's campus, but alleges that the abuse took
8    place while Nassar was the team physician for USAG. (*Id.* ¶ 30.) Thus, Plaintiff
9    Maroney would have difficulty proving that MSU owed her a duty required to
10   impose tort liability. *See Lackner v. North*, 135 Cal. App. 4th 1188, 1206-07 (2006)
11   ("a school district's duty to supervise its students does not extend to protect a non-
12   student from injuries caused by a student off-campus"). Even assuming arguendo
13   that Plaintiff Maroney could establish such a duty, any liability would pale in
14   comparison to the liability of Nassar for his wrongdoing.

15   In short, Plaintiff Maroney would face considerable challenges to her claims
16   against MSU. Plaintiff Maroney's participation in a $500,000,000 settlement, with
17   an average recovery of nearly $1.3 million, is fair and could not be said to be "so far
18   'out of the ballpark' in relation to [the *Tech-Bilt*] factors as to be inconsistent with
19   the equitable objectives of [Code of Civil Procedure § 877.6]." *Tech-Bilt*, 38 Cal. 3d
20   at 499-500; *see Horton v. Superior Court*, 194 Cal. App. 3d 727, 735-36 (1987)
21   (affirming good faith settlement determination because $50,000 was not "out of the
22   ballpark" where the court estimated that the case was worth less than $150,000 and
23   observing that a party should pay less in settlement). Thus, this factor weighs in
24   favor of finding that the Settlement was made in good faith.

25   ## B.    The Amount Paid in Settlement Is Reasonable

26   Given the uncertainty of Plaintiff Maroney's ultimate damages figure, the
27   challenges she would face in successfully asserting her claims against MSU, and
28   given the proportional liability of Nassar, the amount paid by MSU in settlement is

10

MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

reasonable.  The $425,000,000, that will be made immediately available to the 333 plaintiffs creates an average recovery of $1,276,276.28.  This average settlement recovery is substantial, and Plaintiff Maroney's willingness to accept the binding process for determining each amount is strong evidence that the global settlement sum is reasonable.

**C.    The Method of Allocation of Settlement Proceeds Among Plaintiffs Is Fair and Agreed to by Plaintiff**

As discussed above, the Settlement provides a fair procedure for allocating the settlement proceeds among the plaintiffs.  Plaintiff Maroney agreed to participate in a binding process to be devised and presided over by a highly regarded JAMS settlement judge, the Honorable William Bettinelli (Ret.), who will determine each plaintiff's Allocated Share of the settlement fund.  Moreover, the Allocation Process will include a procedure through which Plaintiff Maroney may contest, if desired, her Allocated Share, through notice and an opportunity to be heard.  MSU Defendants shall not participate in that process.  This allocation method, agreed to by Plaintiff Maroney, is a fair and just method of expeditiously providing settlement funds to the plaintiffs.  By appointing the Hon. William Bettinelli to oversee the allocation of the funds, with a procedural mechanism for appealing any decisions, Plaintiff Maroney is ensured a much faster allocation of funds than could be obtained through litigation that is subject to appellate review.

**D.    The Settlement Amount Reflects the Policy That a Settlor Should Pay Less in Settlement Than If Liability Was Imposed After Trial**

A settling defendant should pay less in settlement than if the case went to trial and liability was imposed because settlement avoids the costs of discovery and other litigation expenses.  *See Tech-Bilt*, 38 Cal. 3d at 499.  The Settlement occurred at an early stage in Plaintiff Maroney's prosecution of the action, and therefore, she has avoided substantial costs and expenses of litigation, especially given the challenges Plaintiff Maroney would have faced in her claims against MSU.  The global

11

MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

settlement fund of $500,000,000 and the fair and speedy method of allocation for Plaintiff Maroney is a more than reasonable way to resolve this action at this early stage.

### E.   Insurance and Financial Condition of Settlor

The $500 million settlement amount is a significant sum.  By way of comparison, this figure equals approximately 37% of MSU's total general fund for budgeted expenditures for 2017-2018 ($1,362,100,000).[1]  Further, although MSU has insurance policies, and believes Plaintiff Maroney's claims to be covered, MSU's insurance carriers dispute coverage of the claims resolved by the Settlement and have not yet contributed to the payment.  (Van Gelder Decl., ¶ 6.)  Thus, in light of the magnitude of the Settlement, especially considering MSU's status as a public university, and the fact that MSU has executed the Settlement without participation by its insurers, this factor weighs in favor of finding the Settlement to be in good faith.

### F.   The Negotiations Between Plaintiff and MSU Did Not Involve Collusion, Fraud, or Tortious Conduct

Under California law, the court also considers the "existence of collusion, fraud, or tortious conduct" in connection with the settlement agreement and/or whether the settlement agreement was "aimed to injure the interests of nonsettling defendants."  *Tech-Bilt, Inc.*, 38 Cal. 3d at 499 (citation omitted).  Here, the settlement negotiations were conducted at arm's length.  (Van Gelder Decl., ¶ 4.)  The settling parties achieved no tactical advantages, but merely aimed to resolve Plaintiff Maroney's claims against MSU.  (*Id*.)  Further, the Settlement is not aimed at injuring the interests of any non-settling defendant or other person, but is merely

---

[1]   *See* Michigan State University 2017-2018 Budgets, at ii-iii, available at https://opb.msu.edu/functions/budget/documents/2017-18Budgets.pdf.

MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION

1  the result of the settling parties' wish to resolve their claims in an expedient and fair

2  manner.  (Van Gelder Decl., ¶ 5.)

3                                        *        *        *

4          The Court should thus find that the Settlement was negotiated in good faith

5  when considered under the *Tech-Bilt* factors.

6                                    <u>**CONCLUSION**</u>

7          MSU and Plaintiff Maroney wish to bring a final resolution to all of Plaintiff

8  Maroney's claims against MSU stemming from Nassar's alleged wrongdoing.   In

9  order to achieve this, and for the reasons set forth herein, MSU respectfully requests

10 that the Court find the Settlement to be a "good faith settlement" as provided in

11 California Code of Civil Procedure sections 877 and 877.6, thereby barring and

12 enjoining other persons or entities from bringing any claims against MSU for any

13 form of contribution or indemnity, as set forth in the concurrently filed Proposed

14 Order.

15

16 DATED: August 31, 2018

17                         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

18                         By:   _____*/s/ Kevin J. Minnick*_____
                                         Kevin J. Minnick
19
                                    Attorneys for Defendant
20                                  MICHIGAN STATE UNIVERSITY

21

22

23

24

25

26

27

28

MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION