ALLEN L. LANSTRA (SBN 251510)
Allen.Lanstra@skadden.com
KEVIN J. MINNICK (SBN 269620)
Kevin.Minnick@skadden.com
KASONNI M. SCALES (SBN 301871)
Kasonni.Scales@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:   (213) 687-5000
Facsimile:    (213) 687-5600

Attorneys for Defendant
MICHIGAN STATE UNIVERSITY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MCKAYLA MARONEY, | CASE NO.: 2:18-cv-03461-JLS (KESx) |
| Plaintiff, | |
| v. | DECLARATION OF AMY VAN GELDER IN SUPPORT OF DEFENDANT MICHIGAN STATE UNIVERSITY'S MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION |
| MICHIGAN STATE UNIVERSITY; UNITED STATES OLYMPIC COMMITTEE; USA GYMNASTICS; LARRY NASSAR; and DOES 1 through 500. | |
| Defendants. | [Motion and Proposed Order filed concurrently herewith] |
| | The Honorable Josephine L. Staton |
| | Date:        November 2, 2018 |
| | Time:        2:30 p.m. |
| | Courtroom:  10A |

DECLARATION OF AMY VAN GELDER

## DECLARATION OF AMY VAN GELDER

I, Amy Van Gelder, declare and state as follows:

1.      I am a partner of the law firm of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), which is counsel of record for Defendant Michigan State University ("MSU") in this matter.  This declaration is made in support of MSU's Motion for Good Faith Settlement Determination ("Motion").  I make this declaration based on information and belief and on my personal knowledge, and, if called to testify, could and would testify competently thereto.

2.      A true and correct copy of the Settlement Agreement and Mutual Release with the effective date of August 28, 2018 ("Settlement Agreement"), signed on the one hand by MSU and on the other hand by Plaintiff McKayla Maroney ("Plaintiff Maroney"), is attached hereto as Exhibit A.  For privacy reasons, the signature pages for signatories of the Settlement Agreement besides MSU and Plaintiff Maroney have been omitted.

3.      I am informed and believe that Nassar is not represented in this action and as Nassar is currently imprisoned, was unable to discuss the Motion with him.

4.      In May of this year, MSU, Plaintiff Maroney, and numerous other plaintiffs (the "Settling Parties") engaged in settlement negotiations before the Honorable Layn R. Phillips (Ret.) to resolve the complaints against MSU stemming from Defendant Larry Nassar's alleged wrongdoing.  The settlement negotiations were conducted at arm's length before the Hon. Layn R. Phillips (Ret.).  The Settling Parties achieved no tactical advantages through these negotiations, but merely aimed to resolve Plaintiff Maroney's claims against MSU.

5.      The Settlement Agreement is not aimed at injuring the interests of any non-settling defendant or any other person, but is merely the result of the Settling Parties' wish to resolve their claims in an expedient and fair manner.

6.      MSU has insurance policies that it believes cover the claims related to the above-captioned action, however, MSU's insurance carriers dispute coverage of

1

DECLARATION OF AMY VAN GELDER

the claims resolved by the Settlement Agreement and have not yet contributed to the payment.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed August 30, 2018, at Las Vegas, Nevada.

By: _____
                    Amy Van Gelder

2

DECLARATION OF AMY VAN GELDER

# EXHIBIT A

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE (the "Agreement") is made and entered into as of this 28th day of August, 2018 (the "Effective Date"), by and between Plaintiffs and Derivative Plaintiffs (as defined below), on the one hand, and Michigan State University, the MSU Sports Medicine Clinic, the Board of Trustees of Michigan State University, Dr. Douglas Dietzel, Kathie Klages, Dr. Jeffrey Kovan, Dr. Brooke Lemmen, Kristine Moore, Lou Anna K. Simon, Dr. Gary Stollak, Dr. William Strampel, and Destiny Teachnor-Hauk, on the other hand.

# RECITALS

WHEREAS, Plaintiffs filed the Actions (as defined below) against some or all of the MSU Defendants (as defined below); and

WHEREAS, Plaintiffs allege that Lawrence Nassar, a former employee of Michigan State University, sexually assaulted and abused them at various times and in various locations; and

WHEREAS, the MSU Defendants acknowledge that Lawrence Nassar admitted to engaging in criminal conduct involving sexual abuse; and

WHEREAS, Plaintiffs further allege that the MSU Defendants, or some of them, are liable for Lawrence Nassar's misconduct, abuse, and assault of Plaintiffs and any damages resulting therefrom; and

WHEREAS, certain Plaintiffs' spouses allege loss of consortium claims against the MSU Defendants, or some of them; and

WHEREAS, certain Plaintiffs' parents or guardians allege claims against the MSU Defendants, or some of them, arising out of or related to alleged abuse of their children by Lawrence Nassar; and

WHEREAS, the MSU Defendants deny all wrongdoing and legal liability alleged against them whatsoever; and

WHEREAS, the Parties (as defined below) state that they have agreed to compromise and settle the Actions (i) to avoid the substantial burden, expense, and uncertainties that would be involved in litigating the Actions to conclusion, and (ii) to release the Settled Claims (as defined below); and

WHEREAS, the Parties and their counsel believe that the terms and conditions of this Agreement are fair, reasonable, adequate, and proper, and acknowledge that this Agreement is a result of arm's-length negotiations between the Parties.

NOW, THEREFORE, in consideration of the mutual promises and agreements, covenants, representations, and warranties set forth herein, and for other good and valuable

consideration, the sufficiency and receipt of which are hereby acknowledged, and intending to be legally bound;

IT IS HEREBY STIPULATED AND AGREED, by and among the Parties, that the Parties' claims are settled, compromised, and released on the following terms and conditions:

**SETTLEMENT TERMS**

**1.**     **Recitals.**

The above recitals are incorporated into and made a part of this Agreement and are binding on all Parties hereto.

**2.**     **Definitions.**

(a)     "Actions" means all of the pending actions brought by Plaintiffs or Derivative Plaintiffs against any one or more of the MSU Defendants, as set forth in Exhibit "A" to this Agreement.

(b)     "Agreement" has the meaning ascribed to it in the preamble.

(c)     "Allocated Share" is defined in Paragraph 4(c) of this Agreement.

(d)     "Allocation Process" is defined in Paragraph 4(c) of this Agreement.

(e)     "Auditor" is defined in Paragraph 6(b)(iii) of this Agreement.

(f)     "Complying Insurers" is defined in Paragraph 12(d) of this Agreement.

(g)     "Confidential Information" is defined in Paragraph 12(d) of this Agreement.

(h)     "Derivative Plaintiffs" means any spouse, parent, or guardian of a Plaintiff who has asserted a Nassar-Related Claim in one of the Actions or in a governmental notice of intent to sue, as set forth in Exhibit "B" to this Agreement.

(i)     "Effective Date" has the meaning ascribed to it in the preamble.

(j)     "Immediately Allocable Amount" is defined in Paragraph 6(a)(i) of this Agreement.

(k)     "Insurance Coverage Proceedings" is defined in Paragraph 10 of this Agreement.

(l)     "Final Approval" is defined in Paragraph 4(d) of this Agreement.

(m)     "Government Program" means the Medicare program, the Medicaid program, and any other federal, state or local reimbursement program involving payment of governmental funds, including "Federal healthcare programs" as defined in 42 U.S.C. § 1320a-7b(f).

(n)     "Litigation Reserve Amount" is defined in Paragraph 6(a)(ii) of this Agreement.

2

(o)     "Michigan Court" means the United States District Court for the Western District of Michigan.

(p)     "MSU" means Michigan State University.

(q)     "MSU Defendants" means (i) Michigan State University and each of its affiliated entities and departments including but not limited to the MSU Sports Medicine Clinic, (ii) the Board of Trustees of Michigan State University, and (iii) the following individuals in both their official and individual capacities, including any community outreach, volunteer, or other activities performed while employed by MSU: Dr. Douglas Dietzel, Kathie Klages, Dr. Jeffrey Kovan, Dr. Brooke Lemmen, Kristine Moore, Lou Anna K. Simon, Dr. Gary Stollak, Dr. William Strampel, and Destiny Teachnor-Hauk.

(r)     "MSU Defendant Releasing Persons" is defined in Paragraph 8(b) of this Agreement.

(s)     "MSU Released Persons" is defined in Paragraph 8(a) of this Agreement.

(t)     "Mediation" means the mediation of the Actions between and among the Parties, or some of them, before mediators Jon Muth and Hon. Layn R. Phillips.

(u)     "Nassar-Related Claims" means any and all direct or derivative civil claims premised on, arising from, or in any way related to alleged sexual misconduct, assault, abuse, molestation, harassment, or other similar misconduct allegedly engaged in or committed by Lawrence Nassar, which have been or could be asserted by (i) any alleged victims of such sexual misconduct, assault, abuse, molestation, harassment, or other similar misconduct (including claims of victims' estates), and (ii) such victims' parents, guardians, spouses, and/or heirs.

(v)     "Parties" means the parties to this Agreement, namely, the MSU Defendants, Plaintiffs, and the Derivative Plaintiffs; each individual or entity standing alone is a "Party."

(w)     "Permitted Uses" is defined in Paragraph 12(d) of this Agreement.

(x)     "Plaintiff Released Persons" is defined in Paragraph 8(b) of this Agreement.

(y)     "Plaintiff Releasing Persons" is defined in Paragraph 8(a) of this Agreement.

(z)     "Plaintiffs" means all of the plaintiffs in the Actions, as set forth in Exhibit "C" to this Agreement; each individual standing alone is a "Plaintiff."

(aa)    "Plaintiffs' Counsel" means those attorneys executing this Agreement on behalf of the Plaintiffs and Derivative Plaintiffs, as set forth in the signature pages to this Agreement.

(bb)    "Protective Order" is defined in Paragraph 12(a) of this Agreement.

(cc)    "Qualified Settlement Fund" means a fund, account, or trust established in accordance with 26 C.F.R. § 1.468B-1, and may be abbreviated as "QSF" herein.

(dd)     "QSF Trustee" is defined in Paragraph 5(a) of this Agreement.

(ee)     "Settled Claims" is defined in Paragraph 8(a) of this Agreement.

(ff)     "Settlement Amount" is defined in Paragraph 6(a) of this Agreement.

## 3.    Conditions Precedent.

(a)     Satisfaction of Conditions Precedent. The obligation of MSU to fulfill its Settlement Obligations set forth in Paragraph 6 of this Agreement is subject to satisfaction of the following conditions precedent (any or all of which may be waived by MSU in its sole discretion):

(i)     Michigan Legislation. (1) Michigan Senate Bill 872 (2018) either shall (A) fail to be enacted into law because it is withdrawn, defeated by vote, or otherwise fails to pass, or (B) be amended to reduce the timeframe to bring otherwise time-barred Nassar-Related Claims to 90 days following enactment of Senate Bill 872 (2018); and (2) Michigan Senate Bills 875 (2018) and 877 (2018) shall fail to be enacted into law because they are withdrawn, defeated by vote, or otherwise fail to pass. The Parties agree that this condition has been satisfied.

(ii)     Contribution Bar Orders. The Parties shall jointly obtain orders from all courts in which Actions are pending finding that this settlement was made in good faith and barring claims of contribution against the named MSU Defendants.

(b)     Failure of Conditions Precedent. If one or more of the conditions precedent set forth in this Paragraph 3 are not satisfied and not waived, MSU, in its sole discretion, may request that such failure of a condition precedent be directed to mediator Layn Phillips or the Michigan Court for resolution.

## 4.    Plaintiffs' Settlement Obligations.

(a)     Formalization of Claims. Within 30 days of the Effective Date, every Plaintiff whose claims against one or more of the MSU Defendants are not set forth in a formal pleading in one of the Actions will formalize his or her claims against the MSU Defendants by filing a complaint in the Michigan Court and consolidating such complaint with lead case *Denhollander, et al. v. Michigan State University, et al.*, No. 17-cv-00029 (W.D. Mich.), or by amending a currently-operative complaint in the Michigan Court Actions to add his or her unfiled claims, thereby submitting to the Michigan Court's jurisdiction and the Allocation Process.

(b)     Provision of Questionnaires. Within 30 days of the Effective Date, each Plaintiff shall complete and provide to MSU the questionnaire set forth in Exhibit "D" to this Agreement, signed under penalty of perjury, attesting to the abuse suffered and damages resulting therefrom. Any Plaintiff who provided MSU a questionnaire signed under penalty of perjury during Mediation of the Actions need not provide an additional questionnaire.

(c)     Participation in Allocation Process. In consideration of the representations, warranties, and promises recited herein, Plaintiffs agree to participate in a binding process to allocate entitlement to a portion ("Allocated Share") of the Qualified Settlement Fund

4

established pursuant to Paragraph 5(a) of this Agreement (the "Allocation Process"). The Allocation Process shall be devised and presided over by The Honorable Judge William Bettinelli (Ret.) of JAMS, whose fees and costs will be paid exclusively from the Qualified Settlement Fund. Independent of the mutual promises made herein, and without any participation from the MSU Defendants, Plaintiffs, amongst themselves, agree that Judge Bettinelli will determine each individual Plaintiff's Allocated Share from the Qualified Settlement Fund. Following applicable law, Judge Bettinelli shall determine, in his sole discretion, the Allocated Share of the Qualified Settlement Fund to which each Plaintiff is entitled. The Allocation Process will include a procedure through which any Plaintiff may contest, if desired, his or her Allocated Share, through notice and an opportunity to be heard. The MSU Defendants shall have no right to participate, in any manner, in the Allocation Process, but shall be informed of the amount of each Plaintiff's Allocated Share once finally determined.

(d)     Court Approval of Allocated Shares for Minor Plaintiffs. Any Plaintiffs who are minors at the time of distribution from the Qualified Settlement Fund must make proper application to the Michigan Court, through their guardian *ad litem* or next friend, for Final Approval of their Allocated Share pursuant to applicable law relating to the settlement, compromise, and release of minor claims. "Final Approval" shall mean that the Michigan Court has issued an order approving: the minor Plaintiff's Allocated Share; the release and compromise of claims specified in this Agreement by and on behalf of the minor Plaintiff; and the other undertakings and obligations of the minor Plaintiff specified in this Agreement.

(e)     Responsibility for Liens.

(i)     Notification to Lienholders. As an express condition of the distribution of Allocated Shares to be made to the Plaintiffs from the Qualified Settlement Fund, Plaintiffs hereby acknowledge and agree that any and all entities, individuals, Government Programs, or governmental agencies (including but not limited to Social Security, public welfare agencies, and taxing authorities) who have or may have a legitimate interest in, lien on, or right of subrogation in the Settled Claims have been or will be notified by Plaintiffs and/or Plaintiffs' Counsel for the Plaintiffs who they represent that a settlement has occurred and that any claims of such entities, individuals, Government Programs, and governmental agencies will be satisfied by Plaintiff's Allocated Share, unless waived.

(ii)     Plaintiffs Solely Responsible for Liens. Plaintiffs acknowledge and agree that, as further consideration for this Agreement, they will assume sole responsibility for the reimbursement and/or repayment of any and all liens, debts, and other obligations against them relating in any way to the Settled Claims, whether known or unknown, including, but not limited to, claims for legal, medical or psychological advice, care, treatment or services, or claims asserted by any attorney, health care provider or insurer, Governmental Program, governmental agency, or Medicare Secondary Payer Recovery Contractor pursuant to the Medicare Secondary Payer Act, 42 U.S.C. § 1395y. Plaintiffs shall defend, indemnify, and hold harmless the MSU Released Persons from any claims by any third-party who has or may have an interest in, lien on, or right of subrogation in any Plaintiff's Allocated Share of the Settlement Amount.

(iii)     Satisfaction of Government Program Liens. Each Plaintiff further represents and warrants that, if this Agreement or any proceeds that a respective Plaintiff may

SETTLEMENT AGREEMENT & MUTUAL RELEASE
EXECUTION VERSION

receive as a result of this Agreement become subject to a claim by any Government Program, then, in advance of payment to that respective Plaintiff by the QSF Trustee from the Qualified Settlement Fund, that respective Plaintiff's Counsel shall direct the QSF Trustee to hold, and not distribute to that respective Plaintiff from the Qualified Settlement Fund, funds equal to the amount of the claim against the respective Plaintiff by the Government Program without distributing the held funds to the respective Plaintiff or any other person or entity until the claim by the Government Program has been satisfied or waived.

(iv)    MSU Defendants' Reliance. In reaching this Agreement and paying the Settlement Amount, the MSU Defendants are relying on the foregoing representations and warranties of the Plaintiffs and, specifically, the actions that the Plaintiffs have represented that they will take to satisfy any and all liens and claims by any Government Program, governmental agency, attorneys, healthcare providers, or insurers, should they arise, pertaining to matters involved in or relating to the Actions and the Settled Claims.

**5.    Plaintiffs' Counsel's Settlement Obligations.**

(a)    Creation of Qualified Settlement Fund. Plaintiffs' Counsel agree, and shall take all steps necessary, to establish a Qualified Settlement Fund account with a duly formed financial institution. The Qualified Settlement Fund shall be administered by a QSF Trustee, selected in accordance with Paragraph 5(b). The Qualified Settlement Fund shall be established and the QSF Trustee appointed by the Michigan Court. The fees and costs associated with the administration of the Qualified Settlement Fund, if any, shall be paid solely from the Settlement Amount.

(b)    QSF Trustee Selection. Plaintiffs' Counsel, together with Plaintiffs, shall be solely responsible for the selection of the trustee of the Qualified Settlement Fund (the "QSF Trustee"). The MSU Defendants shall have no role in the selection of the QSF Trustee.

(c)    Warranties Regarding Current Nassar-Related Claims. Plaintiffs' Counsel represent and warrant to the MSU Defendants that all of their current clients who have asserted, intend to assert, or could have asserted Nassar-Related Claims against the MSU Released Persons are listed in Exhibits "B" and "C" to this Agreement, and acknowledge that the MSU Defendants are expressly relying on this representation in entering into this Agreement.

**6.    MSU's Settlement Obligations.**

(a)    Payment of Settlement Amount. Within thirty (30) days of the Effective Date, or within ten (10) business days of the satisfaction of the conditions precedent set forth in Paragraph 3 of this Agreement, or within ten (10) business days of the establishment of the Qualified Settlement Fund, whichever occurs latest, MSU shall pay a total of FIVE HUNDRED MILLION DOLLARS ($500,000,000.00) (the "Settlement Amount") as follows:

(i)    MSU shall deposit into the Qualified Settlement Fund, in a manner to be determined by the QSF Trustee and promptly communicated to MSU through Plaintiffs' Counsel, the amount of FOUR HUNDRED AND TWENTY FIVE MILLION DOLLARS ($425,000,000.00) (the "Immediately Allocable Amount"); and

SETTLEMENT AGREEMENT & MUTUAL RELEASE
EXECUTION VERSION

(ii)      MSU shall deposit into an interest-bearing account controlled solely by MSU the amount of SEVENTY-FIVE MILLION DOLLARS ($75,000,000.00) (the "Litigation Reserve Amount"). The Litigation Reserve Amount is subject to the terms and conditions set forth in Paragraph 6(b). Upon deposit, MSU shall provide to Plaintiffs' Counsel proof of deposit of such funds and identify the financial institution and account in which funds are held.

(iii)      The payment of the Immediately Allocable Amount and any subsequent payment of any portion of the Litigation Reserve Amount into the Qualified Settlement Fund under this Agreement is intended to resolve claims involving (i) alleged sexual abuse and molestation, and (ii) damages on account of alleged personal physical injury and physical sickness within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

(b)      MSU's Duties With Respect to Litigation Reserve Amount.

(i)      Use of Litigation Reserve Amount. The Litigation Reserve Amount may be used by MSU, in its sole discretion, only to (1) settle any Nassar-Related Claims that are not released by this Agreement, (2) pay for MSU's costs and expenses, including attorneys' fees, incurred defending and settling such Nassar-Related Claims, in an amount not to exceed eight percent (8%) of the Litigation Reserve Amount plus accumulated interest, and (3) pay the fees and costs associated with the Auditor in accordance with Paragraph 6(b)(iii).

(ii)      Bi-Annual Audit of Litigation Reserve Amount. Every six months following payment of the Settlement Amount in accordance with Paragraph 6(a) of this Agreement, the Litigation Reserve Amount shall be audited to ensure that the Litigation Reserve Amount is no greater than reasonably necessary to match the expected potential liability for Nassar-Related Claims, including both claims then-filed as well as expected future filings predicted by the incoming rate of Nassar-Related Claims and other factors as reasonably determined by the Auditor. To the extent there are excess funds available above the amount reasonably necessary to defend and/or settle outstanding and anticipated claims, as determined by the Auditor, MSU shall deposit such excess into the Qualified Settlement Fund within 30 days of the completion of the audit. The Auditor shall provide Plaintiffs' Counsel with a summary of each audit that does not reveal privileged or confidential information related to the defense and settlement of Nassar-Related Claims.

(iii)      Auditor. The Parties agree that the auditor of the Litigation Reserve Amount shall be The Claro Group, LLC (the "Auditor"). The fees and costs associated with the Auditor shall be paid exclusively from the Litigation Reserve Amount and are not to be included in the calculation of the 8% limitation on defense fees and costs set forth in Paragraph 6(b)(i)(2).

(iv)      Payment of Balance of Litigation Reserve Amount. Within 30 days of the two-year anniversary of payment of the Settlement Amount, all remaining portions of the Litigation Reserve Amount (including interest) not designated by the Auditor as necessary to resolve then-pending Nassar-Related Claims and not needed to pay outstanding fees and costs of the Auditor and defense counsel and consultants, if any, shall be deposited by MSU into the Qualified Settlement Fund for distribution through the Allocation Process.

SETTLEMENT AGREEMENT & MUTUAL RELEASE
EXECUTION VERSION

## 7.  Responsibility for Allocation of the Settlement Amount.

(a)  QSF Trustee Solely Responsible for Disbursement of Allocated Shares. The QSF Trustee shall have the sole and entire responsibility for disbursement from the Qualified Settlement Fund of Allocated Shares to the Plaintiffs, as approved by the Michigan Court. In accordance with the Allocation Process, the QSF Trustee shall distribute the Immediately Allocable Amount as soon as reasonably possible. The QSF Trustee shall also distribute the Litigation Reserve Amount deposited in the Qualified Settlement Fund, if any, to Plaintiffs, in the same proportion each Plaintiff's Allocated Share is of the Immediately Allocable Amount as soon as reasonably possible.

(b)  Indemnification of Released Persons. Following payment of the Settlement Amount as set forth in Paragraph 6(a) of this Agreement, the MSU Released Persons shall have no responsibility whatsoever to direct or participate in the Allocation Process. Plaintiffs release, acquit, and forever discharge, and shall defend, indemnify, and hold harmless the MSU Released Persons from any claims by Plaintiffs who are dissatisfied with the Allocation Process or their Allocated Share.

## 8.  Mutual Releases.

(a)  Plaintiff Releasing Persons' Release. Effective upon payment of the Settlement Amount, Plaintiffs and Derivative Plaintiffs, for and on behalf of themselves and each of their respective heirs, estates, predecessors, successors, and assigns (the "Plaintiff Releasing Persons"), release, acquit, and forever discharge, and shall forever be enjoined from prosecution of any and all claims, counterclaims, disputes, liabilities, rights, suits, obligations, judgments, duties, demands, defenses, liens, actions, administrative proceedings, costs, expenses, matters, issues, and causes of action of every kind and nature, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, apparent or unapparent, that have been, could have been, or in the future can or might be asserted in any court, tribunal or proceeding (including but not limited to any claims arising under federal, state, local, foreign, tribal, or common law), by or on behalf of Plaintiffs, whether individual, direct, class, representative, legal, equitable, or any other type or in any other capacity against the MSU Defendants, including but not limited to their: personal or legal representatives; insurance carriers; estates; administrators; current and former trustees, employees, and agents in their official and individual capacities (except Lawrence Nassar); predecessors; successors; and assigns (the "MSU Released Persons"), which the Plaintiff Releasing Persons ever had, now have, or may have had, from the beginning of time to the date of payment of the Settlement Amount, by reason of, arising out of, relating to, or in connection with the acts, events, facts, matters, transactions, occurrences, statements, representations, misrepresentations, omissions, or any other matter whatsoever set forth in or otherwise related, directly or indirectly, to the allegations in the Actions and the prosecution and defense of the Actions, including but not limited to defamation, abuse of process, and malicious prosecution (collectively, the "Settled Claims"); provided, however, that the Settled Claims shall not include any claims to enforce this Agreement.

With respect to the Settled Claims, the Plaintiff Releasing Persons expressly waive any and all

SETTLEMENT AGREEMENT & MUTUAL RELEASE
EXECUTION VERSION

provisions, rights, and benefits conferred by any law of any state or territory of the United States which is similar, comparable, or equivalent to California <u>Civil Code</u> § 1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

In agreeing to the foregoing waiver, the Plaintiff Releasing Persons expressly acknowledge and understand that they may hereafter discover facts in addition to or different from those which they now believe to be true with respect to the subject matter of the matters released herein, but expressly agree that they have taken these possibilities into account in electing to participate in this release, and that the release given herein shall be and remain in effect as a full and complete release notwithstanding the discovery or existence of any such additional or different facts, as to which the Plaintiff Releasing Persons expressly assume the risk.

For the avoidance of doubt, the MSU Released Persons do not include and specifically exclude: USA Gymnastics, Inc. and its board members; the United States Olympic Committee and its board members; Gedderts' Twistars Gymnastics Club USA; Karolyi Training Camps, LLC; Karolyi's Elite; Karolyi World Gymnastics, Inc.; AOGC All Olympia Gymnastics Center; and the following individuals named as defendants in one or more of the Actions: Artur Akopyan, Robert Colarossi, Bela Karolyi, Martha Karolyi, John Geddert, Lawrence Nassar, Galina Marinova, Paul Parrilla, Stephen "Steve" Penny, Jr., Donald Peters, and Kathy Scanlan.

(b)    <u>MSU Defendants' Release.</u> Effective upon payment of the Settlement Amount, the MSU Defendants, for and on behalf of themselves and each of their respective heirs, estates, predecessors, successors, and assigns (the "<u>MSU Defendant Releasing Persons</u>"), release, acquit, and forever discharge, and shall forever be enjoined from prosecution of any and all claims, counterclaims, disputes, liabilities, rights, suits, obligations, judgments, duties, demands, defenses, liens, actions, administrative proceedings, costs, expenses, matters, issues, and causes of action of every kind and nature, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, apparent or unapparent, that have been, could have been, or in the future can or might be asserted in any court, tribunal or proceeding (including but not limited to any claims arising under federal, state, local, foreign, tribal, or common law), by or on behalf of the MSU Defendants, whether individual, direct, class, representative, legal, equitable, or any other type or in any other capacity against the Plaintiffs and the Derivative Plaintiffs, including but not limited to their: personal or legal representatives; estates; and administrators (the "<u>Plaintiff Released Persons</u>"), which the MSU Defendant Releasing Persons ever had, now have, or may have had, from the beginning of time to the date of payment of the Settlement Amount, by reason of, arising out of, relating to, or in connection with the Settled Claims; provided, however, that the Settled Claims shall not include any claims to enforce this Agreement.

With respect to the Settled Claims, the MSU Defendant Releasing Persons expressly waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States which is similar, comparable, or equivalent to California <u>Civil Code</u> § 1542, which provides:

SETTLEMENT AGREEMENT & MUTUAL RELEASE
EXECUTION VERSION

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

In agreeing to the foregoing waiver, the MSU Defendant Releasing Persons expressly acknowledge and understand that they may hereafter discover facts in addition to or different from those which they now believe to be true with respect to the subject matter of the matters released herein, but expressly agree that they have taken these possibilities into account in electing to participate in this release, and that the release given herein shall be and remain in effect as a full and complete release notwithstanding the discovery or existence of any such additional or different facts, as to which the MSU Defendant Releasing Persons expressly assume the risk.

Notwithstanding any other provision of this Paragraph 8(b), the MSU Defendants Releasing Persons' release of any minor Plaintiffs pursuant to this Paragraph 8(b) shall be effective upon Final Approval pursuant Paragraph 4(d) of this Agreement, or reaching the age of majority, whichever occurs earlier.

## 9. Dismissal with Prejudice.

(a)    Adult Plaintiffs. Within 10 days of (1) payment of the Settlement Amount or (2) reaching the age of majority, whichever occurs later, adult Plaintiffs and Derivative Plaintiffs shall cause the dismissal with prejudice of their Actions against the MSU Defendants.

(b)    Minor Plaintiffs. Upon Final Approval of each minor Plaintiffs' Allocated Share, each minor Plaintiff so approved shall provide to MSU, through Plaintiffs' Counsel or their guardian *ad litem* or next friend, copies of such approvals. Within 10 days of such Final Approval, minor Plaintiffs, through Plaintiffs' Counsel or their guardian *ad litem* or next friend, shall cause the dismissal with prejudice of their Actions against the MSU Defendants.

## 10. No Admission of Wrongdoing.

This Agreement is made to terminate any and all controversies, real or potential, asserted or unasserted, and claims for injuries or damages or any nature whatsoever, real or potential, asserted or unasserted, between or among the Parties. This Agreement represents the compromise of disputed claims. Neither the execution and delivery of this Agreement, nor compliance with its terms, shall constitute an admission of any fault or liability on the part of the MSU Defendants, or any of their respective agents, attorneys, representatives, or current or former employees, and nothing in such Agreement is intended to be, or shall be construed as, an admission or adjudication of any question of fact or law with respect to any liability or responsibility for the subject matter of the Actions or any other matter. None of the MSU Defendants admit fault or liability of any sort and, in fact, the MSU Defendants expressly deny fault and liability. This Agreement shall not be admissible in any proceeding whatsoever, including but not limited to the Actions, other than in an action to enforce the Agreement and in any insurance coverage proceeding between or among MSU, its insurers, reinsurers, and/or their respective successors and assigns ("Insurance Coverage Proceedings").

**11.**   **Covenant Not To Execute.**

If and to the extent that Plaintiffs, Derivative Plaintiffs, or any of them, obtain money judgments against Lawrence Nassar, Plaintiffs and Derivative Plaintiffs covenant and agree not to seek to execute or enforce such judgments against any of the MSU Released Persons.

**12.**   **Insurance Matters.**

(a)   Mediation Discovery Materials. Notwithstanding the August 2, 2017 Stipulated Confidentiality and Protective Order entered in *Denhollander et al. v. Michigan State University, et al.*, No. 17-cv-00029 (W.D. Mich.) (the "Protective Order"), MSU may retain Mediation Discovery Materials (as defined in the Protective Order) produced by Plaintiffs for purposes of addressing Insurance Coverage Proceedings and related matters, subject to the confidentiality provisions of Paragraph 12(d) of this Agreement. Plaintiff questionnaires provided in accordance with Paragraph 4(b) of this Agreement shall be deemed Mediation Discovery Materials produced by Plaintiffs.

(b)   Mediation Communications. The Parties agree to submit to the Michigan Court a Joint Motion to Amend the Protective Order within 10 days of the Effective Date. Such motion shall seek to modify the Protective Order to allow MSU to produce and otherwise use Mediation Communications (as defined in the Protective Order) between or among the MSU Defendants, Plaintiffs, and/or the mediator in Insurance Coverage Proceedings. To the extent that Mediation Communications contain Confidential Information, such information shall remain subject to Paragraph 12(d) of this Agreement.

(c)   Medical Records. Each Plaintiff acknowledges and agrees that his or her medical records maintained by MSU may be relevant to Insurance Coverage Proceedings. Each Plaintiff consents to the unredacted production of such medical records to MSU's insurers and reinsurers for the purposes of addressing Insurance Coverage Proceedings and Permitted Uses (as defined below), subject to the confidentiality provisions of Paragraph 12(d) of this Agreement.

(d)   Confidentiality. MSU covenants and agrees to maintain the confidentiality of Mediation Discovery Material produced by Plaintiffs and Plaintiffs' medical records (collectively, "Confidential Information"). Accordingly, MSU may produce Confidential Information to its insurers (or allow its insurers to maintain previously produced Confidential Information) only if such insurers also agree in writing to: (1) maintain the confidentiality of the Confidential Information; (2) use Confidential Information only for purposes of Insurance Coverage Proceedings and related settlement or claim adjustment purposes; contractual, accounting, or securities law reporting requirements; collection of reinsurance payments; underwriting, rate making, or audits; responses to market conduct examinations or reviews; compliance with demands; inquiries or audits by insurance regulators or other government agencies; and compliance with federal or state laws and regulations (collectively, "Permitted Uses"); (3) anonymize Confidential Information prior to disclosure to any third-party; (4) seek to obtain appropriate protective orders in any court presiding over Insurance Coverage Proceedings and file Confidential Information only under seal; and (5) if and to the extent that any insurer refuses to agree to the foregoing conditions (1) through (4), and if they or any third-party demands the production of Confidential Information through any valid legal process from

insurers who have so agreed ("Complying Insurers"), such Complying Insurers shall promptly provide notice of such demand to MSU and applicable Plaintiffs' Counsel and decline to produce Confidential Information until any pending and timely filed motion for a protective order, motion to quash, or other application by MSU, Plaintiffs' Counsel, and/or Plaintiffs to prevent such disclosure is ruled upon. Such written agreements must be obtained by counsel for MSU prior to provision of Confidential Information to insurers.

(e)     Cooperation. Plaintiffs and Plaintiffs' Counsel agree to cooperate with MSU in connection with any Insurance Coverage Proceedings by responding to reasonable requests for information in a timely manner.

(f)     MSU's Coverage Rights Reserved. Nothing in this Agreement shall be construed to impair, negate, diminish, or adversely affect any rights of MSU or its successors or assigns to seek to recover or to recover insurance proceeds or payments from its past or current insurance carriers with respect to amounts paid pursuant to this Agreement or incurred in connection with the Actions, or any other loss or liability, and MSU expressly reserves all rights, claims, positions, arguments, contentions, and defenses with respect to such matters.

(g)     Protective Order Remains In Effect. Except as altered by this Paragraph 12, all other provisions of the Protective Order shall remain in full force and effect indefinitely, and all Parties to this Agreement agree to be bound by its terms.

## 13.     Attorneys' Fees and Costs.

The Parties agree that all Parties shall be solely responsible for their own respective litigation fees, attorneys' fees, expenses, and other costs incurred in connection with the Actions, the Mediation, and this Agreement. Notwithstanding the foregoing, nothing in this Paragraph shall affect (a) any indemnification agreements between and among the MSU Defendants or any of them, (b) the obligations of any insurance carrier to reimburse such costs, or (c) MSU's ability to utilize the Litigation Reserve Amount in accordance with Paragraph 6(b)(i) of this Agreement.

## 14.     Acknowledgement of Mutual Compromise and Valuable Consideration.

The Parties hereby acknowledge and agree that the exchanges set forth in this Agreement reflect a mutual compromise and constitute an exchange of valuable consideration. The Derivative Plaintiffs hereby acknowledge and agree that the only benefit or consideration provided to each of them for granting the releases set forth herein to the MSU Defendants was the mutual release the MSU Defendants provided to the Derivative Plaintiffs.

## 15.     Additional Representations and Warranties of the Parties.

Each Party hereby represents and warrants that such Party: (a) is represented by competent counsel with respect to the Actions, the Mediation, and this Agreement; (b) has been fully advised by counsel with respect to his, her, or its rights and obligations and with respect to the execution of this Agreement; (c) has had ample and reasonable time to consider the terms of this Agreement and to confer with counsel regarding the same; (d) is not relying upon any statements, understandings, representations, expectations, inducements, or agreements other than

SETTLEMENT AGREEMENT & MUTUAL RELEASE
EXECUTION VERSION

those expressly set forth in this Agreement; (e) has made his, her, or its own investigation of the facts and is relying upon his, her, or its own knowledge and advice of his, her, or its own counsel; (f) understands this Agreement; and (g) is entering into this Agreement voluntarily and as of his, her, or its own choice and not under coercion or duress. Each Party represents and warrants that he, she, or it has the full right and authority to enter into this Agreement and to grant the releases contained herein, and the person or agent executing this Agreement on his, her, or its behalf has the full right and authority to do so, and fully commit and bind such Party to this Agreement. Each Party authorizes and directs his, her, or its respective counsel to execute such papers and to take such other action as is necessary and appropriate to effectuate the terms of this Agreement.

## 16.    Tax Consequences of the Agreement.

The MSU Defendants make no representation or warranty, and provide no advice, regarding the tax consequences, if any, of this Agreement. Plaintiffs are advised to consult with appropriate legal counsel regarding any tax implications of this Agreement.

## 17.    General Provisions.

(a)    Governing Law. This Agreement and all claims arising out of or relating to it or the rights and duties of the Parties hereunder will be governed by and construed, enforced, and performed in accordance with the law of the state of Michigan, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.

(b)    Entire Agreement and Integration Clause. This Agreement integrates the whole of all agreements and understandings of any sort or character between the Parties concerning the subject matter of the Agreement and supersedes all prior negotiations, discussions, or agreements of any sort whatsoever, whether oral or written, relating thereto. There are no unwritten, oral, or verbal understandings, agreements, or representations of any sort whatsoever, it being stipulated that the rights of the Parties shall be governed exclusively by this Agreement.

(c)    Amendments in Writing. This Agreement may only be amended or modified by a writing signed by all Parties. No waiver of any breach of this Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Agreement. Any notices required or contemplated herein shall also be in writing.

(d)    No Waiver. The failure by any Party to enforce at any time, or for any period of time, any one or more of the terms or conditions of this Agreement, or a course of dealing between the Parties, shall not be a waiver of such terms or conditions or of such Party's right thereafter to enforce each and every term and condition of this Agreement.

(e)    Dispute Resolution & Enforcement. Should any Party fail to satisfy his, her, or its obligations under this Agreement, any other Party shall, in his, her, or its sole discretion, have the option of taking action to enforce the terms of this Agreement. If any disputes arise under or relate to this Agreement, said disputes are to be submitted in the first instance to mediation before Hon. Layn R. Phillips or another mediator agreed upon by the relevant Parties. If mediation is unsuccessful then any Party may institute formal legal proceedings and the

SETTLEMENT AGREEMENT & MUTUAL RELEASE
EXECUTION VERSION

Michigan Court will have exclusive jurisdiction over any and all disputes between or among the Parties hereto, whether in law or in equity, arising out of or relating to this Agreement; provided, however, that if the Michigan Court is unwilling or unable hear any such dispute, the Michigan state court of competent jurisdiction will have sole jurisdiction over any and all disputes between or among the Parties, whether in law or equity, arising out of or relating to this Agreement.

(f)      Construction. In the event any court, arbitrator, or other adjudicative body of competent jurisdiction is called upon to interpret this Agreement, the language of this Agreement shall be construed as a whole, according to its fair meaning and intent, and not strictly for or against any Party, regardless of which Party drafted or was principally responsible for drafting the Agreement or any specific term or condition hereof. As such, the Agreement shall be deemed to have been drafted by all Parties jointly, and no Party or group of Parties shall be deemed to have drafted this Agreement, or any of its individual terms or conditions. No Party may offer in evidence or otherwise use, for purposes of suggesting any interpretation of this Agreement, any prior drafts of this Agreement.

(g)      Severability. If any provision of this Agreement is held to be void, illegal, or unenforceable by any court or other adjudicative body of competent jurisdiction, that provision shall be deemed severed and the Agreement shall be otherwise enforced and construed without reference to the severed provision; provided, however, that if Paragraph 8 is held to be void, illegal or unenforceable, such Paragraph will be reformed to effect the Parties' intent to the fullest extent possible consistent with the law.

(h)      Notices. All notices, requests, demands, and other communications hereunder shall be in writing and delivered personally, by mail, or by email to the recipient. Any notices specific to individual Plaintiffs shall be sent to the corresponding Plaintiff's attorney of record in the Michigan Court. Any notices specific to individual Defendants shall be sent to the corresponding Defendant's attorney of record in the Michigan Court. All other notices shall be sent to the appropriate Party at its address given below (or at such other address for such Party as shall be specified by notice given hereunder):

If to Plaintiffs to:

Manly, Stewart & Finaldi
19100 Von Karman Ave., Suite 800
Irvine, CA 92612
Attn:   John C. Manly, Esq.
Email: jmanly@manlystewart.com


Grewal Law PLLC
2290 Science Parkway
Okemos, MI 48864
Attn:   Mick Grewal, Esq.
Email: mgrewal@4grewal.com

14

SETTLEMENT AGREEMENT & MUTUAL RELEASE
EXECUTION VERSION

If to MSU to:

> Michigan State University
> Office of the General Counsel
> 426 Auditorium Road
> East Lansing, MI 48824
> Attn:   Robert P. Young, Jr., Esq.
> Email: youngjrr@msu.edu

> Miller, Canfield, Paddock & Stone PLC
> One Michigan Avenue, Suite 900
> Lansing, MI 48933
> Attn:   Scott R. Eldridge, Esq.
> Email: eldridge@millercanfield.com

> Skadden, Arps, Slate, Meagher & Flom LLP
> 155 N. Wacker Dr., Suite 2700
> Chicago, IL 60606
> Attn:   Patrick J. Fitzgerald, Esq.
>         Amy L. Van Gelder, Esq.
> Email: patrick.fitzgerald@skadden.com
>        amy.vangelder@skadden.com

(i)    <u>Privileges Retained.</u> Nothing in this Agreement, or the negotiations or proceedings relating hereto, is intended to be, or shall be deemed to constitute, a waiver of any applicable privileges or immunities, including, without limitation, the attorney-client privilege, the joint-defense privilege, the common interest privilege, and any attorney work product protections or immunities.

(j)    <u>Headings.</u> Headings are for convenience only and shall not limit, expand, affect, or alter the meaning of any text.

(k)    <u>Multiple Counterparts and Facsimile or Electronic Signatures.</u> This Agreement may be signed in multiple counterparts, and when each Party or his, her, or its authorized representative has signed a counterpart hereof, each such counterpart shall be a binding and enforceable agreement as an original. In addition, this Agreement may be executed by facsimile or electronic signatures, and such facsimile or electronic signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier, or mail.

(l)    <u>Binding on Successors and Assigns.</u> This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns and is enforceable against them in accordance with its terms.

SETTLEMENT AGREEMENT & MUTUAL RELEASE
EXECUTION VERSION

**THE UNDERSIGNED HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT, AND SIGN THE SAME AS HIS, HER, OR ITS OWN FREE ACT.**

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

SETTLEMENT AGREEMENT & MUTUAL RELEASE
EXECUTION VERSION
PLAINTIFF SIGNATURE PAGES

Dated: July 26, 2018

By: _____

Plaintiff McKayla Maroney

144

SETTLEMENT AGREEMENT & MUTUAL RELEASE
EXECUTION VERSION
DEFENDANT SIGNATURE PAGES

Dated: July 25, 2018

**MICHIGAN STATE UNIVERSITY**

By: _____

Name: Robert P. Young, Jr.
Position: Vice President for Legal Affairs
and General Counsel

Dated: July 25, 2018

**THE BOARD OF TRUSTEES OF
MICHIGAN STATE UNIVERSITY**

By: _____

Name: Robert P. Young, Jr.
Position: Vice President for Legal Affairs
and General Counsel

Dated: July 25, 2018

**MICHIGAN STATE UNIVERSITY
SPORTS MEDICINE CLINIC**

By: _____

Name: Robert P. Young, Jr.
Position: Vice President for Legal Affairs
and General Counsel

473