JOHN C. MANLY, Esq. (State Bar No. 149080)
VINCE W. FINALDI, Esq. (State Bar No. 238279)
ALEX E. CUNNY (State Bar No. 291567)
JANE E. REILLEY (State Bar No. 314766)
**MANLY, STEWART & FINALDI**
19100 Von Karman Ave., Suite 800
Irvine, CA 92612
Telephone: (949) 252-9990
Fax: (949) 252-9991

Attorneys for Plaintiff, MCKAYLA MARONEY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MCKAYLA MARONEY, an individual.<br><br>        Plaintiff,<br><br>    v.<br><br>MICHIGAN STATE UNIVERSITY, a Michigan Entity of Form Unknown; and UNITED STATES OLYMPIC COMMITTEE, a Business Entity of form unknown; USA GYMNASTICS, an Indiana Business Entity of Form Unknown; LARRY NASSAR, an individual and DOES 1 through 500.<br><br>        Defendants. | Civil Case No. 2:18:cv-03461-JLS-KESx<br><br>[The Honorable Josephine L Staton]<br><br>**DECLARATION OF ALEX E. CUNNY IN SUPPORT OF PLAINTIFF MCKAYLA MARONEY'S *EX PARTE* APPLICATION FOR AN ORDER ADVANCING PLAINTIFF'S DISCOVERY MOTION TO COMPEL DEPOSITION OF STEVE PENNY**<br><br>Complaint filed: December 20, 2017<br>Judge:        Honorable Karen E. Scott<br>Courtroom:  6D |

///
///
///
///
///
///

**MANLY, STEWART & FINALDI**
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

**1**

**[PROPOSED] ORDER GRANTING PLAINTIFF'S *EX PARTE* APPLICATION FOR AN ORDER ADVANCING PLAINTIFF'S MOTION TO COMPEL THE DEPOSITION OF STEVE PENNY**

### DECLARATION OF ALEX E. CUNNY

I, ALEX E. CUNNY, hereby declare:

1.     I am an attorney duly licensed to practice law in the State of California.  I am an attorney with Manly, Stewart & Finaldi, attorneys of record for MCKAYLA MARONEY (hereinafter, the "Plaintiff"), in the above-entitled matter. I am personally familiar with the facts of this case and the contents of this Declaration, and if called upon, could and would competently testify as to its contents.

2.     This Declaration is made in support of the Plaintiff's *Ex Parte* Application for an Order Advancing Plaintiff's Motion to Compel (Pursuant to Local Rule 37-1) the Deposition of Defendant Stephen "Steve" Penny ("Penny"), prior to November 21, 2018, such that the deposition can be used for the Oppositions to pending Motions to Dismiss by Defendants Penny and the United States Olympic Committee ("USOC")

3.     On October 31, 2018, Plaintiff's counsel sent a draft Joint Stipulation pursuant to *Local Rule* 37-2.2 to counsel for Penny, regarding the failure of Penny to appear for deposition, along with the documents that are believed to be attached to that Joint Stipulation. Plaintiff's counsel requested that Penny's portion of the Joint Stipulation be completed as soon as possible, in light of the extreme time constraints regarding the November 21, 2018 deadline to oppose Penny's and USOC's Motions to Dismiss under *FRCP* 12(b)(2). Subsequently, on November 1, 2018, counsel for Plaintiffs called counsel for Penny, regarding agreement that an informal discovery conference would not resolve the issues herein, and it was reiterated that time was of the essence in completing the Joint Stipulation. Upon receipt of Penny's portion of the Joint Statement, Plaintiff's counsel will finalize and file as soon as practicable, in order to have the discovery issue properly before the Court.

4.     Plaintiff's counsel met-and-conferred with counsel for Penny,

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

**2**
**[PROPOSED] ORDER GRANTING PLAINTIFF'S *EX PARTE* APPLICATION FOR AN ORDER ADVANCING PLAINTIFF'S MOTION TO COMPEL THE DEPOSITION OF STEVE PENNY**

regarding Penny's refusal to sit for deposition, on several occasions. First, on October 18, 2018, after Ms. Matthai indicated that Penny would not be produced for deposition on October 23, 2018, several emails ensued requesting that Penny appear at deposition. *See* Exhibit "1" *infra*. He did not. On October 23, 2018, a certificate of non-appearance was taken and Plaintiff's counsel placed the Plaintiff's position on-the-record, as did counsel for Penny. At that time, Penny's *ex parte* Application for a 5th Amendment Stay was still pending. On October 26, 2018, the Court denied the *ex parte* application for a stay without prejudice. Shortly thereafter, on the same day, Plaintiff's counsel, again, requested dates for Penny's deposition, to which counsel for Penny again refused to provide dates. On Monday October 29, 2018, Plaintiff's counsel sent an e-mail to counsel conferring about Penny's deposition, and yet again, requesting a date for the deposition to proceed (otherwise an *ex parte* application would have to be set). *See* Exhibit "2" *infra*. The next day, again, Penny's counsel refused to have Penny appear at deposition, and sent a letter mentioning his own *ex parte* Application to move out the due date of his 12(b)(2) motion. *See* Exhibit "3" *infra*. Plaintiff's counsel sent another, lengthy, meet-and-confer email on October 30, 2018, explaining Plaintiff's position, and indicating that Penny's counter-application (mentioned in the October 29, 2018 letter) was going to be opposed. As such, Plaintiff's counsel engaged in extensive meet-and-confer efforts which resulted in the parties having a genuine dispute. Thus, Plaintiff's counsel believes that *Local Rule* 37-1 has been fully satisfied.

5.      Plaintiff's counsel's assistance checked with the Court, and discovery matters are heard on Tuesdays. November 6, 2018 is currently unavailable, so the next regularly scheduled hearing on a discovery motion would be November 13, 2018, only about 8 days before Plaintiff's Oppositions to 12(b)(2) motions are due, and not within the 14-day period to provide supplemental briefs under *Local Rule* 37-2.2.

6.      Prior to it being stated by Penny's counsel that Penny would not

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

3

**[PROPOSED] ORDER GRANTING PLAINTIFF'S *EX PARTE* APPLICATION FOR AN ORDER ADVANCING PLAINTIFF'S MOTION TO COMPEL THE DEPOSITION OF STEVE PENNY**

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

appear for deposition, Plaintiff's counsel expected to obtain his testimony prior to the due date of the Plaintiff's Oppositions to 12(b)(2) Motions on November 21, 2018.

7.     Attached hereto as Exhibit "1" is a true and correct copy of e-mail chain between counsel from October 9, 2018 when Counsel for Penny agreed to produce Penny for deposition, until October 26, 2018, after the Court's Order regarding Penny's *ex parte* Application was served.

8.     Attached hereto as Exhibit "2" is a true and correct copy of the e-mail chain between counsel from October 29, 2018 to October 30, 2018, conferring about the deposition of Penny.

9.     Attached hereto as Exhibit "3" is a true and correct copy of the letter sent to Plaintiff's counsel on October 30, 2018 regarding the deposition of Steve Penny.

10.     Attached hereto as Exhibit "4" is a true and correct copy of the Court's August 2, 2018 Order regarding USOC's and the Karolyi Defendants' attempt to stay discovery.

11.     Attached hereto as Exhibit "5" is a true and correct copy of the Court's October 26, 2018 Order Denying Without Prejudice, Penny's *Ex Parte* Application for a 5th Amendment Stay.

12.     Attached hereto as Exhibit "6" is a true and correct copy of the e-mail communications between Steve Penny and Alan Ashley of the United States Olympic Committee, produced by USA Gymnastics.

13.     Attached hereto as Exhibit "7" is a true and correct copy of the indictment of Steve Penny.

14.     Attached hereto as Exhibit "8" is a true and correct copy of a screenshot from the website of USA Gymnastics regarding the Karolyi Ranch being a USOC Training Site. This screenshot was obtained on or around February 22, 2017.

**4**

**[PROPOSED] ORDER GRANTING PLAINTIFF'S *EX PARTE*
APPLICATION FOR AN ORDER ADVANCING PLAINTIFF'S MOTION
TO COMPEL THE DEPOSITION OF STEVE PENNY**

15.   Attached hereto as Exhibit "9" is a true and correct copy of the USOC Olympic Training Site Designation Plan.

16.   Attached hereto as Exhibit "10" is a true and correct copy of the Certificate of Non-Appearance obtained for the scheduled deposition of Steve Penny.

17.   Attached hereto as Exhibit "11" is a true and correct copy of the Stipulation to Continue Briefing and Hearing Dates on the USOC's and Penny's Motions to Dismiss.

I hereby declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Executed this November 2, 2018 at Irvine, California.

By:   _Alex E Cunny_____
ALEX E. CUNNY, Esq.,
Declarant

MANLY, STEWART & FINALDI
ATTORNEYS AT LAW
19100 Von Karman Ave., Suite 800
Irvine, California 92612
Telephone: (949) 252-9990

**[PROPOSED] ORDER GRANTING PLAINTIFF'S *EX PARTE* APPLICATION FOR AN ORDER ADVANCING PLAINTIFF'S MOTION TO COMPEL THE DEPOSITION OF STEVE PENNY**

# EXHIBIT "1"

## Alex Cunny

| | |
|---|---|
| **From:** | Vince Finaldi |
| **Sent:** | Friday, October 26, 2018 3:16 PM |
| **To:** | Leigh Robie; Edith Matthai; Alex Cunny; Holm, Margaret; Daniel White; Leos, Melissa |
| **Cc:** | John Manly; Kathy Frederiksen; Kamin, Mitchell A; Chen, Mark Y; Jolley, David; Victoria Mery; Tim Bucknell |
| **Subject:** | RE: USAG - Depositions - Steve Penny and Others |

The Court provided you leave to file a regularly noticed motion. The court did not make any order preventing his deposition from going forward. As such, please provide dates or we will unilaterally set it. Follow the rules that everyone is bound to please.

Vince William Finaldi, Esq.
**MANLY, STEWART & FINALDI**
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Phone: (949) 252-9990
Direct: (949) 943-8423
Fax: (949) 252-9991
vfinaldi@manlystewart.com



THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS PROTECTED BY THE ATTORNEY-CLIENT AND/OR THE ATTORNEY-WORK PRODUCT PRIVILEGES. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL NAMED ABOVE AND THE PRIVILEGES ARE NOT WAIVED BY VIRTUE OF THIS HAVING BEEN SENT BY E-MAIL. IF THE PERSON ACTUALLY RECEIVING THIS E-MAIL OR ANY OTHER READER OF THE E-MAIL IS NOT THE NAMED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE NAMED RECIPIENT, ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.

**From:** Leigh Robie [mailto:LRobie@romalaw.com]
**Sent:** Friday, October 26, 2018 3:12 PM
**To:** Vince Finaldi <vfinaldi@manlystewart.com>; Edith Matthai <EMatthai@romalaw.com>; Alex Cunny <acunny@manlystewart.com>; Holm, Margaret <Margaret.Holm@clydeco.us>; Daniel White <DWhite@WhiteAmundson.com>; Leos, Melissa <Melissa.Leos@clydeco.us>
**Cc:** John Manly <jmanly@manlystewart.com>; Kathy Frederiksen <kfrederiksen@manlystewart.com>; Kamin, Mitchell A <MKamin@cov.com>; Chen, Mark Y <MYChen@cov.com>; Jolley, David <djolley@cov.com>; Victoria Mery <VMery@bafirm.com>; Tim Bucknell <TBucknell@romalaw.com>
**Subject:** RE: USAG - Depositions - Steve Penny and Others

Vince,
We will not provide deposition dates. The court's order asked us to file a regularly noticed request for stay. We will be filing a regularly noticed motion and will be moving Penny's 12(b)(2) motion to a date after that.

*Leigh Robie*
Uraḥ⊦ #Powell
500 South Grand Ave.
Suite 1500
Los Angeles, CA 90071

EXHIBIT 1
001

213-706-8000
213-706-9913 (fax)

WARNING: This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and is legally privileged. It contains information from the law firm of Robie & Matthai, which may be privileged, confidential and exempt from disclosure under applicable law. Dissemination or copying of this by anyone other than the addressee or the addressee's agent is strictly prohibited. If this electronic transmission is received in error, please notify Robie & Matthai immediately at (213) 706-8000. Thank you.

**From:** Vince Finaldi [mailto:vfinaldi@manlystewart.com]
**Sent:** Friday, October 26, 2018 3:06 PM
**To:** Leigh Robie <LRobie@romalaw.com>; Edith Matthai <EMatthai@romalaw.com>; Alex Cunny <acunny@manlystewart.com>; Holm, Margaret <Margaret.Holm@clydeco.us>; Daniel White <DWhite@WhiteAmundson.com>; Leos, Melissa <Melissa.Leos@clydeco.us>
**Cc:** John Manly <jmanly@manlystewart.com>; Kathy Frederiksen <kfrederiksen@manlystewart.com>; Kamin, Mitchell A <MKamin@cov.com>; Chen, Mark Y <MYChen@cov.com>; Jolley, David <djolley@cov.com>; Victoria Mery <VMery@bafirm.com>
**Subject:** RE: USAG - Depositions - Steve Penny and Others

Leigh and Edith,

I trust you just received a copy of the Court's Order denying Mr. Penny's *ex-parte*? As such, please provide dates for his deposition forthwith. We have been informed that he is out on bail, thus, this is the perfect time to get his deposition out of the way.

Thanks,

Vince William Finaldi, Esq.
**MANLY, STEWART & FINALDI**
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Phone: (949) 252-9990
Direct: (949) 943-8423
Fax: (949) 252-9991
vfinaldi@manlystewart.com



THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS PROTECTED BY THE ATTORNEY-CLIENT AND/OR THE ATTORNEY-WORK PRODUCT PRIVILEGES. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL NAMED ABOVE AND THE PRIVILEGES ARE NOT WAIVED BY VIRTUE OF THIS HAVING BEEN SENT BY E-MAIL. IF THE PERSON ACTUALLY RECEIVING THIS E-MAIL OR ANY OTHER READER OF THE E-MAIL IS NOT THE NAMED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE NAMED RECIPIENT, ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.

**From:** Vince Finaldi
**Sent:** Thursday, October 18, 2018 4:24 PM
**To:** Leigh Robie <LRobie@romalaw.com>; Edith Matthai <EMatthai@romalaw.com>; Alex Cunny <acunny@manlystewart.com>; Holm, Margaret <Margaret.Holm@clydeco.us>; Daniel White <DWhite@WhiteAmundson.com>; Leos, Melissa <Melissa.Leos@clydeco.us>
**Cc:** John Manly <jmanly@manlystewart.com>; Kathy Frederiksen <kfrederiksen@manlystewart.com>; Kamin, Mitchell A <MKamin@cov.com>; Chen, Mark Y <MYChen@cov.com>; Jolley, David <djolley@cov.com>; Victoria Mery

EXHIBIT 1
002

<VMery@bafirm.com>
**Subject:** Re: USAG - Depositions - Steve Penny and Others

Leigh and Edith,

Are you going to provide me the professional courtesy of a substantive response? Or does Mr. Penny's arrest, in your opinion, ipso facto freeze time?

Please advise.

Vince William Finaldi, Esq.
**MANLY, STEWART & FINALDI**
19100 Von Karman Ave. Ste. 800
Irvine, CA 92613
P (949) 252-9990
F (949) 252-9991
vfinaldi@manlystewart.com

On Oct 18, 2018, at 9:26 AM, Vince Finaldi <vfinaldi@manlystewart.com> wrote:

> Mrs. Robie,
>
> If you have time to respond to that issue, you have time to respond to the substance of my email. I am eagerly awaiting such, so we know what to put into our motion for relief. In my opinion, the issues are clear cut. But, I will await your position.
>
> Thank you,
>
> Vince William Finaldi, Esq.
> **MANLY, STEWART & FINALDI**
> 19100 Von Karman Avenue, Suite 800
> Irvine, California 92612
> Phone: (949) 252-9990
> Direct: (949) 943-8423
> Fax: (949) 252-9991
> vfinaldi@manlystewart.com
> <image001.jpg>
> THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS PROTECTED BY THE ATTORNEY-CLIENT AND/OR THE ATTORNEY-WORK PRODUCT PRIVILEGES. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL NAMED ABOVE AND THE PRIVILEGES ARE NOT WAIVED BY VIRTUE OF THIS HAVING BEEN SENT BY E-MAIL. IF THE PERSON ACTUALLY RECEIVING THIS E-MAIL OR ANY OTHER READER OF THE E-MAIL IS NOT THE NAMED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE NAMED RECIPIENT, ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.

**From:** Leigh Robie [mailto:LRobie@romalaw.com]
**Sent:** Thursday, October 18, 2018 9:24 AM
**To:** Vince Finaldi <vfinaldi@manlystewart.com>; Edith Matthai <EMatthai@romalaw.com>; Alex Cunny <acunny@manlystewart.com>; Holm, Margaret <Margaret.Holm@clydeco.us>; Daniel White <DWhite@WhiteAmundson.com>; Leos, Melissa <Melissa.Leos@clydeco.us>
**Cc:** John Manly <jmanly@manlystewart.com>; Kathy Frederiksen <kfrederiksen@manlystewart.com>; Kamin, Mitchell A <MKamin@cov.com>; Chen, Mark Y <MYChen@cov.com>; Jolley, David <djolley@cov.com>; Victoria Mery <VMery@bafirm.com>
**Subject:** RE: USAG - Depositions - Steve Penny and Others

EXHIBIT 1
003

Mr. Finaldi,
Our firm did not unilaterally take Mr. Penny's deposition off calendar in August. Please see the attached correspondence between you and our office.

*Leigh Robie*
~~Legal Secretary~~
~~Robie & Matthai~~
500 South Grand Ave.
Suite 1500
Los Angeles, CA 90071
213-706-8000
213-706-9913 (fax)

WARNING: This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and is legally privileged. It contains information from the law firm of Robie & Matthai, which may be privileged, confidential and exempt from disclosure under applicable law. Dissemination or copying of this by anyone other than the addressee or the addressee's agent is strictly prohibited. If this electronic transmission is received in error, please notify Robie & Matthai immediately at (213) 706-8000. Thank you.

---

**From:** Vince Finaldi [mailto:vfinaldi@manlystewart.com]
**Sent:** Thursday, October 18, 2018 9:13 AM
**To:** Edith Matthai <EMatthai@romalaw.com>; Alex Cunny <acunny@manlystewart.com>; Holm, Margaret <Margaret.Holm@clydeco.us>; Daniel White <DWhite@WhiteAmundson.com>; Leos, Melissa <Melissa.Leos@clydeco.us>; Leigh Robie <LRobie@romalaw.com>
**Cc:** John Manly <jmanly@manlystewart.com>; Kathy Frederiksen <kfrederiksen@manlystewart.com>; Kamin, Mitchell A <MKamin@cov.com>; Chen, Mark Y <MYChen@cov.com>; Jolley, David <djolley@cov.com>; Victoria Mery <VMery@bafirm.com>
**Subject:** RE: USAG - Depositions - Steve Penny and Others

Edith,

You can't just unilaterally take his deposition off calendar after already agreeing to it. Especially since this is the second time you have done it. Talk about gamesmanship. Especially since you have not even attempted to provide any justification therefor. Not a single sentence. Please advise because we intend to proceed with this deposition, as scheduled. He has filed a dispositive motion and our clients are entitled to depose him regarding those issues so long as that motion is still on calendar.

Awaiting your timely response.

Vince William Finaldi, Esq.
**MANLY, STEWART & FINALDI**
19100 Von Karman Avenue, Suite 800
Irvine, California 92612
Phone: (949) 252-9990
Direct: (949) 943-8423
Fax: (949) 252-9991
vfinaldi@manlystewart.com
<image001.jpg>

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS PROTECTED BY THE ATTORNEY-CLIENT AND/OR THE ATTORNEY-WORK PRODUCT PRIVILEGES. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL NAMED ABOVE AND THE PRIVILEGES ARE NOT WAIVED BY VIRTUE OF THIS HAVING BEEN SENT BY E-MAIL. IF THE PERSON ACTUALLY RECEIVING THIS E-MAIL OR ANY OTHER READER OF THE E-MAIL IS NOT THE NAMED RECIPIENT, THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO

EXHIBIT 1
004

THE NAMED RECIPIENT, ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.

**From:** Edith Matthai [mailto:EMatthai@romalaw.com]
**Sent:** Thursday, October 18, 2018 8:09 AM
**To:** Alex Cunny <acunny@manlystewart.com>; Holm, Margaret <Margaret.Holm@clydeco.us>; Daniel White <DWhite@WhiteAmundson.com>; Leos, Melissa <Melissa.Leos@clydeco.us>; Leigh Robie <LRobie@romalaw.com>
**Cc:** John Manly <jmanly@manlystewart.com>; Vince Finaldi <vfinaldi@manlystewart.com>; Kathy Frederiksen <kfrederiksen@manlystewart.com>; Kamin, Mitchell A <MKamin@cov.com>; Chen, Mark Y <MYChen@cov.com>; Jolley, David <djolley@cov.com>; Victoria Mery <VMery@bafirm.com>
**Subject:** RE: USAG - Depositions - Steve Penny and Others

The deposition of Steve Penny is off calendar.

Edith R. Matthai
U̶R̶E̶I̶#̶ ̶#̶P̶D̶W̶K̶D̶L̶
500 South Grand Ave.
Suite 1500
Los Angeles, CA 90071
213-706-8000
213-706-9913 (fax)

WARNING: This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and is legally privileged. It contains information from the law firm of Robie & Matthai, which may be privileged, confidential and exempt from disclosure under applicable law. Dissemination or copying of this by anyone other than the addressee or the addressee's agent is strictly prohibited. If this electronic transmission is received in error, please notify Robie & Matthai immediately at (213) 706-8000. Thank you.

**From:** Alex Cunny [mailto:acunny@manlystewart.com]
**Sent:** Tuesday, October 9, 2018 11:12 AM
**To:** Holm, Margaret; Daniel White; Edith Matthai; Leos, Melissa; Leigh Robie
**Cc:** John Manly; Vince Finaldi; Kathy Frederiksen; Kamin, Mitchell A; Chen, Mark Y; Jolley, David; Victoria Mery
**Subject:** USAG - Depositions - Steve Penny and Others

All,

Per Edith's offer, we will be noticing the deposition of Steve Penny for October 23, 2018 in Indianapolis.
**Dan/Peggy**- We still have not gotten any dates for Leslie King or Bitsy Kelley. We still need them, asked a while back, and will be sending subpoenas today if we do not get any by the close of business tomorrow. Please advise of their availability.

Thank you,

Alex E. Cunny, Esq.
*Attorney*
**MANLY, STEWART & FINALDI**

EXHIBIT 1
005

19100 Von Karman Ave.
Suite 800
Irvine, CA 92612
P (949) 252-9990
F (949) 252-9991
acunny@manlystewart.com
<image001.jpg>

THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS PROTECTED BY THE ATTORNEY-CLIENT AND/OR THE ATTORNEY-WORK PRODUCT PRIVILEGES. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL NAMED ABOVE AND THE PRIVILEGES ARE NOT WAIVED BY VIRTUE OF THIS HAVING BEEN SENT BY E-MAIL. IF THE PERSON ACTUALLY RECEIVING THIS E-MAIL OR ANY OTHER READER OF THE E-MAIL IS NOT THE NAMED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE NAMED RECIPIENT, ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.

---

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

---

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

---

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

EXHIBIT 1
006

# EXHIBIT "2"

## Alex Cunny

| | |
|---|---|
| **From:** | Alex Cunny |
| **Sent:** | Tuesday, October 30, 2018 5:04 PM |
| **To:** | 'Leigh Robie'; Edith Matthai |
| **Cc:** | John Manly; Vince Finaldi; Kathy Frederiksen |
| **Subject:** | RE: Raisman v. USOC, et al. - Penny Deposition - Formal Meet and Confer Pursuant to LR 37-1 |

Ms. Robie,

I've reviewed your letter, and we disagree with a number of things:

First, Penny's testimony is relevant to other defendants (both on jurisdiction and the merits). Penny's testimony is relevant to both USOC and USAG's liability, as well as USOC's jurisdictional challenge. When he was CEO of USA Gymnastics, he "allegedly" took files from a United States Olympic Committee Training Site and concealed/ destroyed them. His conduct as the CEO of USA Gymnastics is directly relevant and imputable to USAG, some of which was conducted or directed at a USOC Training Site, thus, deprivation of his testimony is not only a deprivation of evidence in Penny's case, but a deprivation of evidence as to USOC and USAG as well.

Second, your letter is an end-run around the Court's ruling of last Friday, October 26, 2018, which denied the stay request. In essence, Penny is entitling himself to a *de facto* stay by pushing out his own motion, and creating a windfall for his co-defendants; whose challenges remain on-calendar, without the benefit of his testimony. Penny's *ex parte* Application was denied, and thus, again, **there is no stay.** Similar to your "disagreement" about the stay in *Raisman*, you, again, have no Court Order for a stay but are attempting to read one into a ruling to the contrary.

Third, and as to merits discovery proceeding in *Raisman*,  there is no stay, and you have continually failed to provide a court order of a stay. That is because there is no stay. The 26(f) conference was held, trial dates and pre-trial dates were set, and no jurisdictional discovery stay was discussed or acknowledged in that stipulated order. No stay exists and you have no order supporting your position.

Fourth, Mr. Harden, who is a Texas attorney, not licensed in California, and not an attorney in this case, appeared at deposition in lieu of Mr. Penny, stating, contrary to the representations made in the *ex parte* application, that he knew essentially nothing about the case. You cite this in your letter as if this representation of Mr. Harden reevaluating the case after "he was familiar with the facts" means something. It does not. Mr. Penny willfully failed to appear for a deposition, without an order staying the case, and now is attempting to obtain a *de facto* order staying the case, by continuing his Motion and refusing to sit for deposition in the meantime. Mr. Harden's beliefs about the case, are not any of my concern, or of any import. He, presumably, is an advocate for Penny, who is facing serious felony charges and whose non-appearance was not retroactively justified by the Court's denial of the *ex parte* application. Mr. Harden's guess at the duration of the criminal prosecution of Penny, is just that: a pure, speculative guess without regard for my client's rights or interests.

We oppose any application, as it is an end-run around the Court's order from last Friday.  Furthermore, your correspondence does nothing to address the discovery concern we presented. We will be seeking *ex parte* relief in order to set Penny's deposition before the due date of our 12(b)(2) Oppositions to Penny and other challenging defendants.

Thank you,

Alex E. Cunny, Esq.
*Attorney*
**MANLY, STEWART & FINALDI**

EXHIBIT 2
001

19100 Von Karman Ave.
Suite 800
Irvine, CA 92612
P (949) 252-9990
F (949) 252-9991
acunny@manlystewart.com



THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS PROTECTED BY THE ATTORNEY-CLIENT AND/OR THE ATTORNEY-WORK PRODUCT PRIVILEGES. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL NAMED ABOVE AND THE PRIVILEGES ARE NOT WAIVED BY VIRTUE OF THIS HAVING BEEN SENT BY E-MAIL. IF THE PERSON ACTUALLY RECEIVING THIS E-MAIL OR ANY OTHER READER OF THE E-MAIL IS NOT THE NAMED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE NAMED RECIPIENT, ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.

**From:** Leigh Robie <LRobie@romalaw.com>
**Sent:** Tuesday, October 30, 2018 9:31 AM
**To:** Alex Cunny <acunny@manlystewart.com>; Edith Matthai <EMatthai@romalaw.com>
**Cc:** John Manly <jmanly@manlystewart.com>; Vince Finaldi <vfinaldi@manlystewart.com>; Kathy Frederiksen <kfrederiksen@manlystewart.com>
**Subject:** RE: Raisman v. USOC, et al. - Penny Deposition - Formal Meet and Confer Pursuant to LR 37-1

Gentlemen,
Please see the attached letter in response to your meet and confer email below.

*Leigh Robie*
U̶r̶e̶l̶#̶ ̶#̶P̶w̶k̶d̶l̶
500 South Grand Ave.
Suite 1500
Los Angeles, CA 90071
213-706-8000
213-706-9913 (fax)

WARNING: This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and is legally privileged. It contains information from the law firm of Robie & Matthai, which may be privileged, confidential and exempt from disclosure under applicable law. Dissemination or copying of this by anyone other than the addressee or the addressee's agent is strictly prohibited. If this electronic transmission is received in error, please notify Robie & Matthai immediately at (213) 706-8000. Thank you.

**From:** Alex Cunny [mailto:acunny@manlystewart.com]
**Sent:** Monday, October 29, 2018 11:42 AM
**To:** Leigh Robie <LRobie@romalaw.com>; Edith Matthai <EMatthai@romalaw.com>
**Cc:** John Manly <jmanly@manlystewart.com>; Vince Finaldi <vfinaldi@manlystewart.com>; Kathy Frederiksen <kfrederiksen@manlystewart.com>
**Subject:** Raisman v. USOC, et al. - Penny Deposition - Formal Meet and Confer Pursuant to LR 37-1

Ms. Robie and Ms. Matthai,

In accord with Judge DeMarchi's Standing Order, and in light of the fact that the Plaintiff will be seeking sanctions pursuant to *FRCP* 37, we are meeting and conferring with respect to the deposition of Steve Penny and in accord with Local Rule 37-1. The informal letter briefing does not apply under these circumstances.

EXHIBIT 2
002

As you know, we attempted to take Mr. Penny's deposition last week, specifically, on October 23, 2018. He did not appear. Presumably, Mr. Penny was expecting his ex parte application for a stay to be granted. It was not, per last Friday's order from the Court. There is no stay, our client's oppositions to Mr. Penny's (as well as other defendants' motions whom his testimony is relevant to: USOC and USAG) are due in approximately three weeks, and his testimony is relevant for both jurisdictional and merits based discovery. Indeed, this was at the heart of our Rule 11 provided to you a little over a week ago.

In an effort to resolve this matter informally, please produce Mr. Penny for his deposition, especially in light of the denial of the ex parte application last week.

Thank you,

Alex E. Cunny, Esq.
*Attorney*
**MANLY, STEWART & FINALDI**
19100 Von Karman Ave.
Suite 800
Irvine, CA 92612
P (949) 252-9990
F (949) 252-9991
acunny@manlystewart.com



THE INFORMATION CONTAINED IN THIS E-MAIL MESSAGE IS PROTECTED BY THE ATTORNEY-CLIENT AND/OR THE ATTORNEY-WORK PRODUCT PRIVILEGES. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL NAMED ABOVE AND THE PRIVILEGES ARE NOT WAIVED BY VIRTUE OF THIS HAVING BEEN SENT BY E-MAIL. IF THE PERSON ACTUALLY RECEIVING THIS E-MAIL OR ANY OTHER READER OF THE E-MAIL IS NOT THE NAMED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE NAMED RECIPIENT, ANY USE, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

# EXHIBIT "3"

# ROBIE & MATTHAI

A PROFESSIONAL CORPORATION

James R. Robie (1949-2011)
Edith R. Matthai*
Kyle Kveton
Natalie A. Kouyoumdjian**
Gabrielle M. Jackson
Marta A. Alcumbrac
Leigh P. Robie
T. John Fitzgibbons
Timothy W. Bucknell

October 30, 2018

*Certified Specialist,
  Legal Malpractice Law
**Certified Specialist, Appellate Law
The State Bar of California Board
of Legal Specialization

**VIA ELECTRONIC MAIL**
John C. Manly, Esq.
Vince W. Finaldi, Esq.
Alex Cunny, Esq.
Manly, Stewart & Finaldi
19100 Von Karman Ave., Suite 800
Irvine, California 92612

> Re:   *Alexandra Rose Raisman v. United States Olympic Committee, et al.*;
>       *Jordyn Marie Wieber v. United States Olympic Committee, et al.; and*
>       *Jane LM Doe v. Dr. Larry Nassar, et al.*
>       Our Client:   Steve Penny

Messrs. Manly, Cunny, and Finaldi:

At Mr. Penny's deposition on October 23, 2018, Mr. Penny's Criminal Counsel, Rusty Hardin, requested you postpone Mr. Penny's deposition until he could become informed regarding both the criminal and civil actions so that he could be able to advise Mr. Penny as to how to proceed. Mr. Hardin assured you that once he was familiar with the facts he would objectively look at how to advise Mr. Penny.

Ms. Matthai made it clear at that deposition that she was amendable to adjusting the timing of the oppositions to Mr. Penny's 12(b)(2) motion in light of the pending criminal matters and Mr. Penny's ex parte request for stay.

The Ex Parte Request for Stay in the Raisman matter is still being briefed and no ruling has been issued.

The court in the Wieber and LM Doe Matters issued an order on October 26, 2018 allowing us to request to continue the hearing on Penny's 12(b)(2) motion until after the Court can hear a noticed and fully briefed Motion to Stay. We will be filing a Motion to Stay in accordance with that order.

500 South Grand Avenue, 15th Floor  |  Los Angeles, California 90071-2609   |   P 213.706.8000   |   F 213.706.9913   |   www.romalaw.com

STRAIGHTFORWARD   •   TO THE POINT

EXHIBIT 3
001

John C. Manly, Esq.
Vince W. Finaldi, Esq.
Alex Cunny, Esq.
Manly, Stewart & Finaldi
October 30, 2018
Page 2

In light of the court having no available civil hearing dates for the remainder of the year, we will be noticing the motion for January 2018. Therefore, Mr. Penny's 12(b)(2) motion will need to be continued.

Please advise whether you will stipulate to continue Mr. Penny's pending 12(b)(2) motion. As you are aware both sides have agreed to continue the hearing several times, the last two continuances at your request. If you will not agree to the continuance we will have to move ex parte for a continuance of the 12(b)(2) motion.  We believe another continuance will allow the Texas Criminal Proceedings against Mr. Penny to be addressed and for Mr. Hardin, to have adequate time to advise Mr. Penny of his rights. We will advise Mr. Penny in accordance with Mr. Hardin's advice if the matter is not stayed as to Mr. Penny as a result of the noticed motion.

As you are aware we disagree that merits discovery is available at this time. It is our position only jurisdictional discovery is allowed.

Very truly yours,

ROBIE & MATTHAI
A Professional Corporation

EDITH R, MATTHAI
LEIGH P. ROBIE

LPR:mem

EXHIBIT 3
002

# EXHIBIT "4"

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-01117-JLS-KESx                        Date:  August 2, 2018
             8:18-cv-01136-JLS-KESx
             2:18-cv-03461-JLS-KESx
             2:18-cv-03462-JLS-KESx
             2:18-cv-03464-JLS-KESx

Title:   JANE LM DOE v. DR. LARRY NASSAR, et al., and Related Cases

PRESENT:

THE HONORABLE KAREN E. SCOTT, U.S. MAGISTRATE JUDGE

        Jazmin Dorado                            Not Present
        Courtroom Clerk                          Court Reporter

ATTORNEYS PRESENT FOR            ATTORNEYS PRESENT FOR
        PLAINTIFF:                       DEFENDANT:
        None Present                     None Present

PROCEEDINGS (IN CHAMBERS):          **Order re Ex Parte Discovery Applications**
                                    **Filed by USOC and the Karolyis**

        In multiple related cases, Defendant United States Olympic Committee ("USOC") filed
an ex parte application pursuant to Federal Rule of Civil Procedure 26(d)(1) seeking (1) a
protective order to prevent Plaintiffs from engaging in any discovery prior to the parties' Rule
26(f) conference, except by leave of court, and (2) to quash all discovery already served by
Plaintiffs.  (See USOC Appl., Jolley Decl. and Exhibits.[1])  Defendants Bela Karolyi, Martha
Karolyi, and Karolyi Training Camps, LLC ("the Karolyis") have joined USOC's application in
the case which they are named as Defendants, Case 1117.  (See Karolyi Appl., Pfeiffer Decl. and
Exhibits.[2])  Plaintiffs timely opposed the applications.  (See Pl. Opp'n to USOC Appl., Cunny

_____

        [1] Doe v. Nassar, 8:18-cv-01117-JLS-KESx ("Case 1117"), Dkt. 57; Doe v. Doe, 8:18-cv-
01136-JLS-KESx ("Case 1136"), Dkt. 23; Maroney v. Michigan State University, 2:18-cv-
03461-JLS-KESx ("Case 3461"), Dkt. 30; Wieber v. United States Olympic Committee, 2:18-
cv-03462-JLS-KESx ("Case 3462"), Dkt. 38; Doe v. USA Gymnastics, 2:18-cv-03464-JLS-
KESx ("Case 3464"), Dkt. 32.

        [2] Case 1117, Dkt. 58.

EXHIBIT 6
001

Case 2:18-cv-03461-JLS-KES   Document 42-1   Filed 11/02/18   Page 22 of 45   Page ID
Case 8:18-cv-01117-JLS-KES   Document 61   Filed 08/02/18   Page 2 of 7   Page ID #:7537
#:631

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-01117-JLS-KESx and related cases               Date: August 2, 2018
                                                                                Page 2

Decl. and Exhibits[3]; Pl. Opp'n to Karolyi Appl., Cunny Decl. and Exhibits.[4])

## I.    BACKGROUND

### A.    <u>Procedural History</u>

Plaintiffs allege that USOC, the Karolyis, and the other Defendants are liable for the actions of Dr. Larry Nassar.  Nassar was convicted of sexually molesting minors while serving as a doctor for USA Gymnastics, and Plaintiffs are among his many victims.  Essentially, Plaintiffs allege that Defendants should have detected and/or prevented the abuse.

Plaintiffs initially filed all of these cases in state court, some as early as 2016.  In Case 1117, the Karolyis moved the state court to dismiss them for lack of personal jurisdiction.  The state court granted Plaintiff Jane LM Doe leave to conduct jurisdictional discovery.  The Karolyis were deposed in Texas in May 2017, and they also responded to written discovery, including 96 requests for production ("RFPs").  (<u>See</u> Karolyi Appl. at 1-2.)

In April and June of 2018, USOC removed the cases to federal court.

On July 2, 2018, counsel for the Plaintiffs and the Karolyis met-and-conferred and the Karolyis agreed "that jurisdictional discovery would proceed pursuant to the state judge's order…." (Karolyi Appl. at 2.)  In mid-July, both USOC and the Karolyis moved in federal court to dismiss the claims against them based on lack of personal jurisdiction (among other issues).

On July 13, 2018, while meeting and conferring over USOC's motions to dismiss, Plaintiffs asked USOC to stipulate to early jurisdictional discovery, and USOC refused.  (<u>See</u> Jolley Decl. ¶ 2.)  USOC took the position that such discovery was unwarranted because "the Complaint fail[ed] to make even a colorable showing of personal jurisdiction."  (<u>Id.</u>)

In late July, Plaintiffs served USOC with ten deposition notices and three sets of written discovery requests.  (USOC Appl. at 1-2.)  Plaintiff Jane LM Doe also propounded an additional set of RFPs on the Karolyis.  (Karolyi Appl. at 2, citing Pfeiffer Decl. ¶ 5 and Exs. 3 and 4.)

### B.    <u>The Instant Ex Parte Applications</u>

USOC contends that all jurisdictional discovery is inappropriate, because Plaintiffs have not even made "colorable" allegations that personal jurisdiction over USOC exists in California.

---

[3] Case 1117, Dkt. 60; Case 1136, Dkt. 24; Case 3461, Dkt. 31; Case 3462, Dkt. 39; Case 3464, Dkt. 39.

[4] Case 1117, Dkt. 59.

EXHIBIT 6
002

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:18-cv-01117-JLS-KESx and related cases          Date: August 2, 2018
                                                                              Page 3

(USOC Appl. at 4-5.)  Alternatively, USOC argues that even if the Court allows jurisdictional discovery to proceed prior to the Rule 26(f) conference, the discovery served by Plaintiffs exceeds what would be relevant to jurisdictional arguments.  (Id. at 5 [arguing that "it is clear from the sheer volume … that this is an effort to engage in early merits discovery" and giving two examples of requests they argue are unrelated to the jurisdictional arguments]).  The Karolyis make similar arguments and also argue that Plaintiff Jane LM Doe has already "completed extensive jurisdictional discovery [as to them] in the removed state court proceedings."  (Karolyi Appl. at 2.)

## II.    APPLICABLE LEGAL STANDARDS

### A.    Personal Jurisdiction

"California's long-arm statute permits a court to exercise personal jurisdiction over a defendant to the extent permitted by the Due Process Clause of the Constitution." Panavision Int'l v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998) (citing Cal. Code Civ. Proc. § 410.10). Due process requires that the defendant have certain minimum contacts with the forum state. See Daimler AG v. Bauman, 571 U.S. 117, 126 (2014).

Courts distinguish between general and specific jurisdiction.  Id. at 126-27.  General jurisdiction over a foreign corporation arises "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Id. at 127 (citation omitted).  Specific jurisdiction is analyzed under the following three-part test:

(1)  The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform (some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2)  the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3)  the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).  The plaintiff bears the burden on the first two prongs.  If the plaintiff establishes both prongs one and two, then the defendant must come forward with a compelling case that the exercise of jurisdiction would not be reasonable under the third prong.  Id.

### B.    Granting Early Jurisdictional Discovery

Rule 26(d)(1) provides, "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial

EXHIBIT 6
003

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-01117-JLS-KESx and related cases                          Date: August 2, 2018
                                                                                                    Page 4

disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." "A district court is vested with broad discretion to permit or deny discovery…." Laub v. U.S. Dep't of Interior, 342 F.3d 1080, 1093 (9th Cir. 2003).

Early jurisdictional discovery "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." Id. (reversing district court's denial of jurisdictional discovery "[b]ecause additional discovery would be useful to establish federal subject matter jurisdiction, and because the extent of federal involvement in the challenged transactions is contested"); see also Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1135 (9th Cir. 2003) (finding district court abused its discretion in denying motion for jurisdictional discovery where the record was "simply not sufficiently developed … to determine whether the alter ego or agency tests are met" and "[f]urther discovery on this issue might well demonstrate facts sufficient to constitute a basis for jurisdiction…."). On the other hand, "a refusal to grant discovery to establish jurisdiction is not an abuse of discretion when 'it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction….'" Laub, 342 F.3d at 1093; see also Terracom v. Valley Nat. Bank, 49 F.3d 555, 562 (9th Cir. 1995) ("'[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery….'"); Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008) (affirming denial of jurisdictional discovery where motion "was based on little more than a hunch that it might yield jurisdictionally relevant facts").

Interpreting the Ninth Circuit cases cited above, district courts have articulated the standard as follows: although "a plaintiff need not make out a prima facie case of personal jurisdiction before it can obtain jurisdictional discovery," the plaintiff "must present a 'colorable basis' for jurisdiction, or 'some evidence' constituting a lesser showing than a prima facie case." Calix Networks, Inc. v. Wi-Lan, Inc., No. 09-06038, 2010 WL 3515759 at *4 (N.D. Cal. Sept. 8, 2010) (collecting cases from the Northern District of California); see, e.g., Altitude Group, PLC v. Signarama, Inc., No. 18-00329-CAS-E, 2018 WL 3031527 at *1 (C.D. Cal. Apr. 13, 2018) (granting request for jurisdictional discovery where plaintiff made "a colorable showing that the Court may exercise specific jurisdiction over defendant based on its claim-related contacts with the forum"); Lang v. Morris, 823 F. Supp. 2d 966, 979 (N.D. Cal. 2011).

### III.    DISCUSSION

####       A.    **Procedural Arguments**

USOC and the Karolyis argue that the discovery should be quashed because Plaintiffs did not file a "formal motion" seeking such discovery before propounding it. However, the timing was complicated by the removal in the midst of jurisdictional discovery that had been ordered by the state court. Plaintiffs had already propounded written discovery requests and set some depositions pursuant to that order. (See Jolley Decl. Ex. 16 [email from Plaintiffs' counsel to

EXHIBIT 6
004

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:18-cv-01117-JLS-KESx and related cases                    Date: August 2, 2018
                                                                     Page 5

USOC, explaining, "[T]he Coordinated Matter in Orange County is proceeding, and
jurisdictional depositions are proceeding, which pertain to witnesses who we would have wanted
to depose in the Federal Matters as well.  Instead of attempting to get a second (or possibly even
third, fourth, fifth or sixth) deposition of those individuals … we decided it only made sense to
notice in the Federal Action…."].)  Compare Elite Lighting v. DMF, Inc., No. 13-1920, 2013
WL 12142840 at *3 (C.D. Cal. May 6, 2013) (quashing unauthorized discovery under Rule
26(d)(1) where the plaintiff "offer[ed] no explanation" for its failure to seek leave of court
"before issuing the subpoenas").

        In the interests of efficiency—and particularly to ensure that any jurisdictional discovery
can be completed prior to the hearings on the pending motions to dismiss—the Court will
consider whether jurisdictional discovery is appropriate, rather than forcing Plaintiffs to re-apply
for federal court permission and re-serve the disputed discovery.  See Fed. R. Civ. P. 1 (the
Federal Rules of Civil Procedure should be construed "to secure the just, speedy, and
inexpensive determination of every action and proceeding").

        Plaintiffs argue that the applications should not be considered on an ex parte basis but
instead should "be set for a regular briefing schedule," because the applications "seek[]
widespread, substantive relief," ex parte discovery motions are generally disfavored, and the
applications raise "an important issue, on matters that directly affect a dispositive motion…."
(See, e.g., Pl. Opp'n to Karolyi Appl. at iii-iv.)  The Court finds ex parte consideration
appropriate, given the time constraints imposed by the briefing schedule on the motions to
dismiss and the costs Defendants would likely incur in responding to the discovery.

    **B.**    **Propriety of Jurisdictional Discovery**

        Plaintiffs have made a colorable showing of personal jurisdiction as to the Karolyis and
USOC.  (See Pl. Opp'n to Karolyi Appl. at 12-13 [alleging that the Karolyis have
"acknowledged that they have travelled to California in order to conduct gymnastics business"
and that Martha Karolyi "was the National Team Coordinator for tournaments that occurred in
the State of California"]; Pl. Opp'n to USOC Appl. at 2 [alleging USOC "is believed to have
owned and operated one of three Olympic training centers in the nation, in Chula Vista,
California," has employees in California, has "partnered with StubHub Center in Carson,
California," and has "hosted countless events in California, including" multiple Olympics and
Olympic trials]; Jolley Decl. Ex. 16 [July 30, 2018 email from Plaintiffs' counsel asserting that
USOC "has held competitions in the state of California, is currently working on hosting the 2024
Olympics in California, derives income from California, derives athletes from California, and
even operated an Olympic Training Center in the State of California for about two decades."].)
Allowing jurisdictional discovery against the Karolyis to continue is also appropriate to give
Plaintiff Jane LM Doe an opportunity to challenge the declarations they submitted in support of
their motion to dismiss.  (See Pl. Opp'n to Karolyi App. at 12-13.)

        Because pertinent facts bearing on the question of personal jurisdiction are controverted,

EXHIBIT 6
005

Case 2:18-cv-03461-JLS-KES   Document 42-1   Filed 11/02/18   Page 26 of 45   Page ID
#:636
Case 8:18-cv-01117-JLS-KES   Document 61   Filed 08/02/18   Page 6 of 7   Page ID #:7541

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-01117-JLS-KESx and related cases                    Date: August 2, 2018
                                                                                                          Page 6

including the timing, nature, and/or scope of Defendants' activities in California and the nexus
between those activities and Plaintiffs' alleged injuries, jurisdictional discovery is appropriate.

    **C.**    <u>**Sanctions**</u>

      USOC and the Karolyis seek sanctions and/or an award of expenses against Plaintiffs for
violating Rule 26(d)(1). Some of the fairness concerns underlying Rule 26(d)(1) do not apply in
these cases, which have been pending since 2016 in state court prior to USOC's removal.
Moreover, the parties should have been able to reach an agreement to permit a reasonable
amount of jurisdictional discovery before the Rule 26(f) conference. The Court therefore
declines to award sanctions or expenses. <u>See</u> Fed. R. Civ. P. 26(c)(3) (incorporating Rule
37(a)(5)); Fed. R. Civ. P. 37(a)(5) (providing expenses should not be awarded if the opposing
party's behavior was "substantially justified" or "other circumstances make an award of
expenses unjust").

**IV.**    **DISPOSITION**

      Based on the foregoing, IT IS HEREBY ORDERED that USOC's and the Karolyis' Ex
Parte Applications are DENIED.

      IT IS FURTHER ORDERED that—in order to strike a balance between the need to
pursue and complete discovery promptly and the efficiency of not requiring parties who may be
dismissed for lack of jurisdiction to engage in extensive, merits-related discovery prior to a
ruling on their jurisdictional challenges—discovery shall proceed as follows:

      1.    Immediately, Plaintiffs may pursue discovery relevant to personal jurisdiction
over USOC and the Karolyis in California. If USOC, the Karolyis, or any responding party
contends that Plaintiffs' pending discovery (or any new discovery) exceeds the authorized scope,
then they shall meet and confer to narrow or delay the discovery. The Court expects the parties
to reach reasonable compromises, but if such disputes cannot be resolved, any party may
unilaterally request a telephonic conference with the Court using the procedure described on the
Court's website. <u>See</u> https://www.cacd.uscourts.gov/honorable-karen-e-scott.[5]

      2.    This limitation (limiting the parties to jurisdictional discovery only) shall remain
in place as to each Defendant until a ruling is issued on that Defendant's currently pending
motion to dismiss.

---

     [5] Disputes about the propriety of individual written requests are not properly before the
Court at this time. Although Defendants contend that some of Plaintiffs' written discovery has
no bearing on personal jurisdiction and give several examples of such overbroad requests, they
do not cite the full language of those requests and their responses. <u>Cf.</u> Local Rule 37-2.1
(requiring joint stipulations regarding discovery disputes to contain the language of the written
discovery requests and answers in dispute).

EXHIBIT 6
006

Case 2:18-cv-03461-JLS-KES   Document 42-1   Filed 11/02/18   Page 27 of 45   Page ID
#:636
Case 8:18-cv-01117-JLS-KES   Document 61   Filed 08/02/18   Page 7 of 7   Page ID #:7542

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-01117-JLS-KESx and related cases          Date: August 2, 2018
                                                            Page 7

        3.      If the Defendant's motion is denied or granted without leave to amend, then the restriction is lifted and the parties may proceed to merits discovery.

        4.      If the motion is granted with leave to amend, the restriction shall remain in place for thirty (30) days after Plaintiffs file an amended complaint.   After Plaintiffs amend their complaint, the parties may pursue general merits discovery.[6]

                                                   Initials of Deputy Clerk <u>JD</u>

---

[6] In either event, the parties need not wait until a Rule 26(f) conference is held to pursue general merits discovery.

EXHIBIT 6
007

# EXHIBIT "5"

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:18-cv-01117-JLS-KES                    Date:  October 26, 2018
Title:  Jane LM Doe v. Dr. Larry Nassar et al.

Case No. 2:18-cv-03462-JLS-KES
Title: Jordyn Marie Wieber v. United States Olympic Committee et al.

_____

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

  Terry Guerrero                                            N/A
  Deputy Clerk                                          Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:       ATTORNEYS PRESENT FOR DEFENDANT:

  Not Present                                          Not Present

**PROCEEDINGS:  (IN CHAMBERS)  ORDER DENYING WITHOUT PREJUDICE DEFENDANT STEPHEN PENNY'S EX PARTE APPLICATIONS (Docs. 107, 56)**

    Before the Court are Defendant Stephen Penny's Ex Parte Applications for a Stay.[1]  The Applications request a stay of the proceedings because of Penny's recent arrest in Texas.  The Court finds that Penny has failed to show that he will suffer any prejudice should his request be heard as a regularly noticed motion.  *See Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995) (finding that to "justify ex parte relief . . . the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures").  Here, the only prejudice arises from the hearing date scheduled on Penny's own motion.  A less drastic course would be a request to continue the hearing on Penny's 12(b)(2) motion until after the Court hears a noticed and fully briefed motion to stay.

    Accordingly, the Court DENIES Penny's Ex Parte Applications without prejudice to a regularly noticed motion.

_____

[1] Penny filed identical ex parte applications in *Doe v. Dr. Larry Nassar*, Case No.  8:18-cv-01117-JLS-KES (Doc. 107) and *Wieber v. United States Olympic Committee*, Case No. 2:18-cv-03462-JLS-KES (Doc 56).  In both cases, the Plaintiffs filed identical oppositions (Doc. 109; Doc. 57) and Penny filed identical replies (Doc. 112; Doc. 58).

_____

EXHIBIT 5
001

# EXHIBIT "6"

**To:** Alan Ashley[Alan.Ashley@usoc.org]
**From:** Steve Penny
Case 2:18-cv-03461-JLS-KES   Document 42-1   Filed 11/02/18   Page 31 of 45   Page ID
#:640
**Sent:** Tue 1/29/2013 6:11:05 PM
**Subject:** FW: Commitment to your Organization

Alan – I would like to discuss this with you.  It concerns me that St. V's has been working closely with 4 NGBs, and had over 60 athletes at the Olympic Games that they had served, and has made no progress with the USOC recently.  They have been at the door waiting for more feedback from the USOC and received nothing to the best of my knowledge. If Larry Nassar is the gate-keeper, then we have a real issue.

Steve

---

**From:** Ralph Reiff <RVReiff@stvincent.org>
**Date:** Tue, 29 Jan 2013 11:50:22 -0600
**To:** "spenny@usa-gymnastics.org" <spenny@usa-gymnastics.org>
**Cc:** Ralph Reiff <RVReiff@stvincent.org>
**Subject:** Commitment to your Organization

Steve

The USOC has apparently recruited and engaged three (3) geographically located medical providers to 'mimic' the current SVSP "no-barriers" program established specifically for our partners at USA Gymnastics.

http://www.teamusa.org/For-Athletes/Medical-Services/National-Medical-Network.aspx

Please know the leadership of our System as well as those of us providing the care within SVSP are very committed to providing specialized, comprehensive services for your athletes.

Ralph V. Reiff, MEd LAT ATC
Executive Director
St Vincent Sports Performance
Administrative Assistant: Christy L. Johnson cljohns2@stvincent.org
iPhone/text  (317) 514-9146

CONFIDENTIALITY NOTICE:
This email message and any accompanying data or files is confidential and may contain privileged information intended only for the named recipient(s). If you are not the intended recipient(s), you are hereby notified that the dissemination, distribution, and or copying of this message is strictly prohibited. If you receive this message in error, or are not the named recipient(s), please notify the sender at the email address above, delete this email from your computer, and destroy any copies in any form immediately. Receipt by anyone other than the named recipient(s) is not a waiver of any attorney-client, work product, or other applicable privilege.

EXHIBIT 6
001

# EXHIBIT "7"

ASSIGNED TO THE ___278th___ JUDICIAL DISTRICT COURT

INDICTMENT NO. __28849__

___ PER BOND SCHEDULE   ___ BOND RECOMMMMENDATION $ No Bond
HRR   9-28-18

STATE OF TEXAS VS.  STEPHEN D. PENNY, JR.

**CHARGE:  37.09 PC - TAMPER WITH  PHYSICAL EVIDENCE/THIRD DEGREE FELONY**
**OFF CODE: 73990280              TRN NO.:**
**PID NO.: 3326101 -                CONTROL NO.:  2018-01241**

**IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS,**

THE GRAND JURORS, duly selected, organized, sworn, and impaneled as such for the County of Walker, State of Texas, at the January Term, A.D. 2018, of the District Court for said County upon their oaths present in and to said Court, that on or about the 11th day of November, 2016, and anterior to the presentment of this indictment, in the County and State aforesaid Stephen D. Penny, Jr. did then and there, knowing that an investigation was in progress, to-wit: Texas Ranger investigation of allegations of sexual assault by Larry Nassar, intentionally or knowingly destroy or conceal records or documents, to-wit:  records and documents related to Larry Nassar kept at the Karolyi Ranch in Walker County, Texas, with intent to impair the availability as evidence in the investigation.

**AGAINST THE PEACE AND DIGNITY OF THE STATE.**

_____
Foreman of the Grand Jury

FILED
TIME 1:50
28 DAY OF SEPT 2018
ROBYN FLOWERS
District Clerk, Walker County
By _____ Deputy

EXHIBIT 7
001

**INDICTMENT NO.**_____

**STATE OF TEXAS VS.  Stephen D Penny**

**OFFENSE:   TAMPER FABRICATING PHYSICAL EVIDENCE**

**Race:**                **Gender:**  Male        **DOB:**  02/12/1964

**HT:**        **WT:**    Lbs.        **Hair Color:**

**Eye Color:**    **DL:**   TX-2340766714

**Agency:    Agency #:**         **State ID #:**

TRUE BILLED UPON THE INFORMATION OF

_____

_____

OTHER PENDING INDICTED CASES AGAINST DEFENDANT?

_____ YES        _____ NO

IF YES, CAUSE #'S _____

IS THIS A RE-INDICTMENT?

_____ YES        _____ NO

IF YES, PREVIOUS CAUSE # _____

NAME OF CO-DEFENDANT(S), IF ANY, *NOT* NAMED IN INDICTMENT.

|       |                          | CAUSE NO. | COURT |
|-------|--------------------------|-----------|-------|
| (1)   | _____    | _____  | _____ |
| (2)   | _____    | _____  | _____ |
| (3)   | _____    | _____  | _____ |
| (4)   | _____    | _____  | _____ |
| (5)   | _____    | _____  | _____ |

SIGNED on this  28th  day of September, 2018.

_____

Attorney for the State of Texas

EXHIBIT 7
002

# EXHIBIT "8"



EXHIBIT 8
001

# EXHIBIT "9"

# U.S. OLYMPIC AND/OR PARALYMPIC TRAINING SITE DESIGNATION PLAN

## ELITE ATHLETE TRAINING AND WORLD-CLASS COMPETITION FACILITIES

**An outline of the benefits of the U.S. Olympic and Paralympic Training Sites Designation and the necessary criteria for receiving the designation from the U.S. Olympic Committee**



**U.S. OLYMPIC**
TRAINING SITE

 

**U.S. OLYMPIC AND PARALYMPIC**
TRAINING SITE



**U.S. PARALYMPIC**
TRAINING SITE

Training Sites & Community Partnerships
U.S. Olympic Committee
1 Olympic Plaza
Colorado Springs, CO 80909
719-866-4868     [phone]
719-866-2169     [fax]



**U.S. Olympic Committee Training Sites & Community Partnerships**

v4/12/16/100

EXHIBIT 9
001

## U.S. OLYMPIC AND PARALYMPIC TRAINING SITE MISSION STATEMENT

Access additional resources, services and facilities for athletes, National Governing Bodies ("NGBs"), U.S. Paralympics and/or High Performance Management Organizations (HPMOs) while providing an elite athlete training environment which positively impacts performance.

## PURPOSE

Collaborate with the Local Operator and NGBs/HPMOs in high performance planning and programming to provide additional world-class training facilities for athletes, as well as, to expand the capability and capacity of the United States to accommodate elite athlete training environments, host World Class competitions and events and potentially to host Olympic and or Paralympic Trials.

## GOALS

1. Expand the base and network of world-class training facilities for NGBs/HPMOs and athletes in the United States

2. Support the training and preparation of Team USA athletes by developing opportunities for access to world class training facilities and having those facilities clearly defined in NGB/ HPMO High Performance Plans

3. Reward NGBs/HPMOs and communities across the nation which have existing world-class Olympic/Paralympic sport facilities and services

4. Empower communities and NGBs/HPMOs across the nation to develop world-class Olympic/Paralympic sport facilities and services

5. Provide access to additional facilities that include comprehensive athlete services, including sports science as well as low cost housing and meals

6. Expand the U.S. Olympic and Paralympic movement through sport education and outreach by bringing the movement to the local level

7. Provide facilities for education and training opportunities

8. Expand the number of World Cups and international competitions in the United States to provide additional opportunities for the US athletes to compete in America

## BENEFITS OF A SITE DESIGNATION

1. National Recognition as a part of the U.S. Olympic and Paralympic Movement

2. Partnership with the USOC and access to USOC resources and information

3. National Governing Body (NGB) and High Performance Management Organization (HPMO) Partnership

4. Open new doors and develop new partnerships in the community with Olympic/Paralympic terminology and marks

5. Attract top athletes and coaches

6. Attract world-class events to facility

7. Common goal for the community to focus on (commitment to America's elite athletes)

8. Leverage additional local funding opportunities



EXHIBIT 9
002

9.  Media exposure

10.  Annual Training Site Conference

11.  Olympic Training Center resources and materials

12.  References and recommendations from the Olympic/Paralympic Movement

13.  Website Recognition

14.  Promotional Materials from the USOC

15.  Volunteer Opportunities

16.  USOC Site Visits and community connections

17.  Adecco Career Services and ACE (Athlete Career and Education) program assistance for athletes

18.  Dedicated USOC Staff Liaisons

19.  Government Relations assistance

20.  Olympic Day hosting opportunities

21.  Job postings on teamusa.org

22.  Connection with U.S. Olympic and Paralympic Alumni Association

## USOC PROGRAM GUIDELINES

In order to receive the U.S. Olympic or Paralympic Training Site Designation, the USOC requires the following:

*Three- Year Business Plan* — The Local Operator must write a three year business plan based on the operating structure and background of the sports facility as well as the training partnership between the facility and NGB/HPMO.

**The Three-Year Business Plan should address and acknowledge the following areas of criteria:**

**1. NGB/HPMO Support** — The NGB/HPMO must be committed to running high level elite athlete programming at the selected facility as well as including the facility in the NGB/HPMO's High Performance Plan. The NGB/HPMO must execute the representation described in the contract.

**2. Local Operator** — The Local Operator must demonstrate its ability to work with NGB/HPMOs and the community and have competition management experience with NGB/HPMO events.

**3. Funding** — The Local Operator will hold the fiscal responsibility for the Training Site. The Local Operator must demonstrate ability to access community resources through foundation, government, corporate grants, as well as events and individual donations.

**4. Feeder Programs** — The Local Operator must be willing to develop or expand community youth programs. These community programs will help create or build an athlete pipeline in the community. Also, the Local Operator must be willing to host international exchanges for athlete development.

**5. Sponsorship** — The Local Operator cannot solicit or enter into any sponsorship with respect to the Site other than with existing USOC sponsors, as outlined in the contract. During contract negotiations, a list of current USOC sponsors will be provided. The Local Operator will have a limited right to use Olympic and/or Paralympic-related marks, as specified in the contract. All uses of Olympic and/or Paralympic-related marks, images or terminology must be pre-approved by the USOC.

**6. Support Services** — The Training Site is required to have an availability of support services, including sport science, strength and conditioning, nutrition, and sport psychology, in order to maximize the safety and quality of the programs. (Services required will be based on NGB and/or HPMO need). Additionally, the Local Operator must establish access points, preferred providers and fee structure in cooperation with USOC, the NGB and/or HPMO, including on site facilities to accommodate services.



EXHIBIT 9
003

**7. Additional Support Services —** It is highly recommended that athletes have access to healthy food options, discount community/entertainment activities, low cost housing, education possibilities, such as in-state tuition grants, and assistance with finding local employment opportunities.

**9. Transportation —** The Local Operator must use its best efforts to ensure accessible, safe and affordable transportation is available to athletes, so that they are able to access the Training Site at a reasonable cost and the program can continue to attract new athletes.

**10. High Level Coaches and Officials Recruitment, Training and Education —** The Local Operator must ensure that the Training Site provide these elements, including but not limited to top coaches who can train elite athletes as well as educate new local coaches.

**11. Reporting Structure —** The Local Operator is required to send quarterly reports and schedules outlining the measurable outcomes to the USOC for review and provide a copy of its Annual Report and financials to the USOC on a mutually agreeable annual basis.

**12. Measurable Outputs/Outcomes —** please refer to page 8

## APPLICATION OVERVIEW

In order to be considered for a U.S. Olympic and or Paralympic Training Site Designation, all interested facilities should provide a business plan with the following information in this order:

**Contact Information:**

- Facility Name
- Main Contact Person
- Address
- Phone
- Email
- Website

**Facility Information:**

- Facility Mission Statement

- Facility Description (which buildings, etc. are requested to be considered for the training site designation, i.e. where the athletic training is taking place)

- Executive Summary (provide a background on the facility, including the community's experience hosting NGB/HPMO and athlete events/programs)

- Vision (what the facility hopes to accomplish and provide to athletes in the next 5-10 years)

- Training information (provide an overview of the daily training activities, including sports, athletes, teams, coaches and any other information to give us a better understanding of your facility)

- Competition Information (provide an overview of all elite level competitions hosted at your facility over the past 3 years and any upcoming plans for the next 2 years)

- Feeder Programs (provide a list and explanation of all youth feeder programs, demonstrating the facility's commitment to develop or expand community youth sport programs and grow sport in the United States)

- Athlete Support Information (provide a list of all additional athlete support services provided by the facility and/or providers within the community. Indicate any reduced or waived fees for athletes. Examples include sports medicine, strength and conditioning, nutrition, sport psychology, massage, part-time jobs, and educational opportunities)



EXHIBIT 9
004

- Current Facility Access (what are the number of training days per athlete and per sport that are currently offered to NGB/HPMO National team athletes and at what cost to the athlete and NGB/HPMO)

- Proposed Facility Access (what additional access for athletes and NGB/HPMOs are you proposing to include in a potential partnership with the U.S. Olympic Committee and NGB/HPMO)

- Housing and Transportation (what housing and transportation options are available to athletes and at what cost to the athlete)

- Coaching and Support Staff (provide a list of all coaches including their NGB/HPMO certifications along with a breakdown of additional facility support staff)

- Roster of Facility Board Members

- Current Goals and Objectives of the Facility and Sport Program (may be part of your strategic plan or goals for the next two years)

- Do you perform background checks on those staff/coaches who have access to athletes? If so, what databases do you check and who is your background check provider?

- Athlete Safety Programs (Please provide an executive summary and description of your Athlete Safety Program and list where the policy can be found (i.e. code of conduct, employee handbook). Please also verify if your Athlete Safety Program meets the Minimum Standards Policy as included on page 9.)

**National Governing Body/High Performance Management Organization Partnership:**

- Please include a letter of recommendation/support from every National Governing Body/High Performance Management Organization your prospective site would like to have included in your plan/Training Site Designation in your application to become a U.S. Olympic and/or Paralympic Training Site. The recommendation should also reference the inclusion of the local operator/facility in the NGB/HPMO high performance plan and include the Training Site designation recommendation by both the NGB /HPMO Executive Director and High Performance Director/staff equivalent.

- NGB/HPMO Partnership Summary (please include a summary of how your facility works with a NGB/HPMO, including a list of all national team athletes and competitions hosted at your facility and any relevant information about the partnership). Please also include any data from an NGB/HPMO showing how your facility ties into the NGB/HPMO High Performance Plan, including elite training activity at the Training Site that facilitates scheduling, budgeting, and facility access (including access to any portions of the Local Operator's facilities that enhance athletic training (e.g., weight rooms, running trails, sports medicine clinics, etc.)

**Marketing and Development Information:**

- List all corporate sponsors of your facility and indicate what level of sponsorship they have, including signage and location of signage, website recognition, pouring rights, etc.

- List all sponsors of events at your facility (these may be corporate partners who sponsor individual events at your facility but are not considered sponsors of the facility itself)

- List any current or planned building naming rights at your facility

- Marketing Plan (please provide an overview of how your facility would plan to market and promote a U.S. Olympic and/or Paralympic Training Site Designation should you receive such a designation). Please be aware that there can be no third party association with the Olympic/Paralympic Designation nor may any USOC conflicting sponsors be associated in any way with the Olympic and or Paralympic Designation/Facility. For a complete list of USOC Corporate Partners, please visit http://www.teamusa.org/pages/sponsors



EXHIBIT 9
005

**Financial Information:**

- Training Sites are expected to be self-funded and operated. Please provide an audited facility budget for the previous two years , as well as the current year budget and future budget for next year. Your budget should be specific to the athlete facility/building where proposed Training Site/National Team training activity currently takes place.

**Insurance Information:**

Please provide a certificate of insurance verifying the following coverage:

- Commercial General Liability and Excess Liability Insurance with of not less than Five Million Dollars $5,000,000 per occurrence, which includes Bodily Injury and Property Damage, and Personal Injury and Advertising Liability coverages.
- Workers Compensation with statutory limits as applicable in any state in which the Local Operator conducts business and Employers Liability with limits of not less than One Million Dollars ($1,000,000).
- Automobile Liability Insurance with limits of not less than One Million Dollars ($1,000,000) Combined Single Limit per occurrence for all owned, non-owned, hired, and permissive use vehicles.

**Additional Information:**

- Letters of reference/recommendation from athletes and local community leaders
- Photos and/or video of facility

## ROLE OF EACH PARTNER

**The USOC will provide:**

a. A staff liaison from the Training Sites and Community Partnerships division to answer questions regarding the USOC and provide USOC information on best practices, opportunities and events;

b. Program review (in collaboration with NGB/HPMO);

c. An annual conference for all U.S. Olympic/Paralympic Training Site Managers to discuss best practices and provide additional resources, such as sport performance, marketing, and educational information;

d. Use of an Olympic and/or Paralympic Mark as outlined in the contract;

e. Acknowledgment on USOC Website with a link to your website/local operator information;

f. Recognition of U.S. Olympic/Paralympic Training status and Olympic/Paralympic family ties to local government, community leaders via letters of support, phone calls and meetings provided by USOC Representatives.

**The Local Operator will provide:**

a. Business plan, funding, feeder programs, support services, transportation, quarterly reports and other requirements set forth in "USOC Program Guidelines" above;

b. A plan for training activity at the Training Site, in conjunction with USOC and NGB/HPMO partner;

c. Facilities of international and world class caliber, including maintenance and upkeep;

d. Sufficient space and storage, parking, and indoor sport and weight training facilities;



EXHIBIT 9
006

e.  Adequate accessibility for persons with disabilities in compliance with Americans with Disabilities Act;

f.  Office facilities and office equipment sufficient to support NGB/HPMO personnel and coaches during peak training and competition periods;

g.  At least one full-time executive director, or comparable level executive whose responsibilities will include day-to-day operations of the Training Site;

h.  Ongoing liaison with the relevant parks commissions, sports commissions, educational institutions, and other authorities in order to maximize training and competition opportunities for the NGB/HPMO and its athletes;

i.  Letter of Understanding (LOU), or similar legal agreement, with the appropriate NGB/HPMO(s)

j.  Measurable Outcomes noted on page 8;

k.  Insurance in accordance with the contract.

**The NGB/HPMO will provide in agreement with the Local Operator:**

a.  Signed representation that the Training Site is operating to the satisfaction of the NGB/HPMO;

b.  Annual review of the Training Site;

c.  Inclusion of the Training Site in its High Performance Plan which should include detailed elite level athlete training at the Local Operator (resident athlete training, camps, competitions and athlete development);

d.  Coordination of shared use of office space, and equipment that the NGB/HPMO designates as necessary for training;

e.  A liaison to the Training Site to arrange for scheduling changes, coordination of events, and other activities requiring mutual cooperation with the Local Operator;

f.  Cooperation with the Local Operator in its efforts to raise funds for capital improvements which may be required for the use of the facility;

g.  Commitment to running high level elite athlete programming in the selected community.

## RECOMMENDATIONS FOR SUCCESS

What has made the existing Training Sites successful?

- NGB/HPMO high performance planning integration/collaboration

- Community support – financial and other resources (Sports Commission, Convention and Visitor's Bureau)

- Athlete Services (education, activities, career services)

- Low cost housing options

- Transportation

- Activities and entertainment options

- Strength and conditioning facilities

- Education opportunities and in-state grants

- Healthy food options

- Pre-existing elite-level coaches, preferably trained and certified by the NGB/HPMO

- Pre-existing sport culture



EXHIBIT 9
007

- Year-round, sport specific training program focused on long-term athlete development
- Young athletes feeding into the NGB/HPMO National Team systems from community
- International competitions/exchanges
- Grant writer
- Internships
- Strong volunteer base
- Inclusion of government officials in events/VIP Invites
- Support Services such as sport science
- Support from the local media
- Athlete role models
- Partnership with local sports organizations including community based organizations and Parks and Recreation

## MEASURABLE OUTPUTS/OUTCOMES

If all of the designation criteria are met and a contract is signed, the contract is based on a renewal process, including detailed and specific NGB/HPMO high performance plan inclusion and meeting certain performance requirements listed below. The performance requirements shall be included within each quarterly and annual report.

- Tracking athletes' competitions and results
- Number of venues utilized for events, programs and outreach if other than main Site
- Financial expenditures as related to Site designation
- Number of National team athletes and training days provided by Site
- Number of certifications and educational trainings for local coaches
- Number of clinics and events hosted
- Number of community partnerships for sport development and sport performance
- Number of athletes utilizing facility Senior Elite/Junior/development athletes



Training Site Designation Plan, December 2016 // 8

EXHIBIT 9
008